# Exhibit A

## RESTRUCTURING SUPPORT AGREEMENT

This RESTRUCTURING SUPPORT AGREEMENT is made and entered into as of June 17, 2016 (this "*Agreement*") by and among (i) iON America LLC, a Delaware corporation and iON Worldwide Inc., a New Jersey corporation (cumulatively referred to as either "*iON*" or the "*Company*"), (ii) Sky Light Holdings Limited*, a* Cayman Islands corporation ("*SKY*" or a "*Restructuring Supporter*") and Kim Pov LLC ("*KIM*") and (together with SKY the "*Restructuring Supporters*" and each a "*Restructuring Supporter*") (each of the foregoing, a "*Party,*" and collectively, the "*Parties*").

## RECITALS

**WHEREAS**, iON will be filing for chapter 11 case (the "*Bankruptcy Case*") in the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*").

**WHEREAS**, the Parties have agreed to undertake a financial restructuring of the Company which is anticipated to be effectuated through the terms and conditions in the Term Sheet attached as **Exhibit A** (the "*Term Sheet*").

**WHEREAS,** subject to the terms and conditions set forth in this Agreement and the Term Sheet, the Restructuring Supporters have agreed to provide the financial support as set forth in the Term Sheet, subject to the terms and conditions set forth therein and receipt of a written order of the Bankruptcy Court confirming its approval of the Plan (as defined below), which iON believes will be sufficient for it to confirm a plan of reorganization (the "*iON Plan*") in its Bankruptcy Case that provides for a recapitalization of iON's balance sheet and related transactions (collectively, the "*Transactions*"); and

**WHEREAS**, it is anticipated that the Transactions will be implemented through the promulgation of an iON Plan, which provides for a recapitalization of iON (the "*Restructuring*") and that iON shall solicit votes on the iON Plan pursuant to applicable law, including sections 1125, 1126 and 1145 of title 11 of the United States Bankruptcy Code (the "*Bankruptcy Code*").

**WHEREAS**, the Parties desire to express to each other their mutual support and commitment in respect of the matters to be set forth in the iON Plan and hereunder.

**NOW, THEREFORE**, in consideration of the premises, mutual covenants and agreements contained herein, and for other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound hereby, agree as follows:

## AGREEMENT

**Section 1.**    *Agreement Effective Date*.  This Agreement shall become effective and binding upon each of the Parties at 12:01 a.m. prevailing Eastern Time on the date on which the following conditions have been satisfied: (a) iON shall have executed and delivered counterpart signature pages of this Agreement to the Restructuring Supporters, and (b) the Restructuring Supporters shall have executed and delivered to iON counterpart signature pages of this Agreement (the "*Agreement Effective Date*").

**Section 2.**     *Term Sheet*.  The Term Sheet is expressly incorporated herein and is made part of this Agreement.  The general terms and conditions of the Restructuring are set forth in the Term Sheet; however, the Term Sheet is supplemented by the terms and conditions of this Agreement. In the event of any inconsistencies between the terms of this Agreement and the Term Sheet, this Agreement shall govern.

**Section 3.**     *Commitments Regarding the Transactions.*

         3.01.   Commitment of Restructuring Supporters.  Subject to the terms and conditions contained herein and in the Term Sheet (including, but not limited to, the negotiation and promulgation of the Restructuring and Restructuring Supporters' receipt of a written order of the Bankruptcy Court confirming its approval of the iON Plan), and so long as this Agreement has not been terminated in accordance with the terms herein, SKY and KIM shall (i) support the Restructuring and related transactions described in the Term Sheet, (ii) do all things necessary and appropriate in furtherance of the Restructuring and other transactions embodied in the Term Sheet, including the fundings described therein (for the avoidance of doubt, the Restructuring Supporters shall not be require to fund any amounts in excess of those expressly set forth in the Term Sheet), which iON believes constitutes the funding necessary to support the Transactions, and (iii) not take any action that is inconsistent with, or is intended or is likely to interfere with consummation of the Restructuring and other transactions described in the Term Sheet.

         3.02.   Commitment of iON.  Subject to its fiduciary duties as a debtor in possession based upon the advice of counsel, and on the terms and subject to the conditions set forth herein, iON shall (i) support and complete the Restructuring and related transactions described in the Term Sheet, (ii) do all things necessary and appropriate in furtherance of the Restructuring and other transactions embodied in the Term Sheet, including, without limitation complying with the dates set forth in Section 10.01, and (iii) not take any action that is inconsistent with, or is intended or is likely to interfere with consummation of the Restructuring and other transactions described in the Term Sheet.

**Section 4.**     *Mutual Representations, Warranties, and Covenants*.  Each of the Parties represents, warrants, and covenants to each other Party, as of the date of this Agreement, as follows:

         4.01.   Enforceability.  It is validly existing and in good standing under the laws of the state of its organization, and this Agreement is a legal, valid, and binding obligation of such Party, enforceable against it in accordance with its terms, except as enforcement may be limited by applicable laws relating to or limiting creditor's rights generally or by equitable principles relating to enforceability.

         4.02.   No Consent or Approval.  Except as expressly provided in this Agreement or in the Bankruptcy Code, no consent or approval is required by any other person or entity in order for it to carry out the transactions contemplated by, and perform the respective obligations under, this Agreement.

2

4.03.    <u>Power and Authority</u>.  Except as expressly provided in this Agreement, it has all requisite power and authority to enter into this Agreement and to carry out the transactions contemplated by, and perform its respective obligations under, this Agreement.

4.04.    <u>Authorization</u>.  The execution and delivery of this Agreement and the performance of its obligations hereunder have been duly authorized by all necessary action on its part.

**Section 5.**    *iON Plan.*  The terms and conditions of the Restructuring are agreed to and will be incorporated into the iON Plan; <u>provided</u> that the iON Plan is timely filed and if necessary may be supplemented by the terms and conditions of this Agreement.  In the event of any inconsistencies between the terms of this Agreement, the Term Sheet or iON Plan, the iON Plan shall govern.

**Section 6.**    *Bankruptcy Process; Plan of Reorganization.*

6.01.    <u>Commencement of the iON Cases</u>.  iON hereby agrees that, as soon as reasonably practicable, but in no event later than June 24, 2016 (the date on which such filing occurs, the "<u>Commencement Date</u>"), iON shall file with the Bankruptcy Court a voluntary petition for relief under chapter 11 of the Bankruptcy Code and any and all other documents necessary to commence the iON Case.

6.02.    <u>Filing of the iON Plan</u>.  Within seven (7) days of the Commencement Date, iON shall cause to be filed the iON Plan, in form and substance reasonably satisfactory to SKY, and the companion iON Disclosure Statement with the Bankruptcy Court.  For purposes of this Agreement, "<u>iON Disclosure Statement</u>" shall mean the disclosure statement of the Parties in respect to the iON Plan in form and substance reasonably satisfactory to the Restructuring Supporters.

6.03.    <u>Confirmation of the iON Plan</u>.  iON shall use its commercially reasonable efforts to obtain confirmation of the iON Plan as soon as reasonably practicable following the Commencement Date in accordance with the Bankruptcy Code and on terms consistent with this Agreement.

6.04.    <u>Amendments and Modifications of the iON Plan</u>.  The iON Plan may be amended from time to time following the date hereof by written approval of each of the Parties. Each of the Parties agrees to negotiate in good faith all amendments and modifications to the iON Plan as reasonably necessary and appropriate to obtain Bankruptcy Court confirmation of the iON Plan pursuant to an order of the Bankruptcy Court; provided that the Restructuring Supporters shall have no obligation to agree to any modification that (i) is inconsistent with the iON Plan in any material respect, (ii) creates any new material obligation on any such Party, or (iii) adversely changes or otherwise adversely affects the economic treatment of such Party.

**Section 7.**    *Agreements of SKY.*

7.01.    So long as this Agreement has not been terminated in accordance with the terms hereof, SKY agreed that it shall, subject to the receipt by SKY of the iON Disclosure Statement and other solicitation materials in respect of the iON Plan:

(a)      vote all of its claims against iON to accept the iON Plan and issue a release of its third party claims against any Released Party (as such term will be defined in the iON Plan, it being understood such parties shall include the Debtors and their current and former officers, directors, members, shareholders, employees, agents, and assigns), by delivering its duly executed and completed ballots accepting the iON Plan and granting the release on a timely basis following the commencement of the Solicitation; provided that such vote and release shall be immediately revoked and deemed void *ab initio* upon termination of this Agreement prior to the confirmation and effective date of the iON Plan pursuant to the terms hereof;

(b)      not change or withdraw (or cause to be changed or withdrawn) any such vote or release in clause (a) above;

(c)      not (i) object, delay, impede or take any other action to interfere with acceptance or implementation of the iON Plan, (ii) directly or indirectly solicit, encourage, propose, file, support, participate in the formulation of or vote for, any restructuring, sale of assets, merger, workout or plan of reorganization for iON other the iON Plan, or (iii) otherwise take any action that could in any material respect interfere with, delay or postpone the consummation of the Restructuring;

(d)      support and take all commercially reasonable actions necessary or reasonably requested by the Company to facilitate the Solicitation, consummate the Restructuring (including finalizing and providing, as set forth in the Term Sheet, the $1,500,000 Debtor-In-Possession Financing to iON (the "*DIP Facility*"), approval of the iON Disclosure Statement, and confirmation and consummation of the iON Plan (it being understood that the Restructuring Supporters shall not be required to incur any material costs, expense or liability in connection therewith).

7.02.   Transfers.  (i) SKY agrees that, for the duration of the period commencing on the date herof and ending on the date on which this Agreement is terminated, SKY shall not sell, transfer, loan, issue, pledge, hypothecate, assign or otherwise dispose of (each, a "*Transfer*"), directly or indirectly, in whole or in part, any of its claims or any option thereon or any right or interest therein or any other claims against or interests in iON (collectively, the "*Claims*") (including grant any proxies, deposit any Claims into a voting trust or entry into a voting agreement with respect to any such Claims), unless the transferee thereof prior to such Transfer, agrees in writing for the benefit of the Parties to become a Restructuring Supporter and to be bound by all of the terms of this Agreement applicable to SKY in the Company or any other iON prior to the such Transfer) by executing a joinder agreement (a "*Joinder Agreement*"), and delivering an executed copy thereof within two (2) business days following such execution, to each of the other Parties and to counsel to each of the Other Parties, in which event (a) the transferee shall be deemed to be a Restructuring Supporter hereunder to the extent of such transferred rights and obligations and (b) the transferor shall be deemed to relinquish its rights (and be released from its obligations) under this Agreement to the extent of such transferred rights and obligations.  SKY agrees that any Transfer of any Claims that does not comply with the terms and procedures set forth herein shall be deemed void *ab initio*, and iON and KIM shall have the right to enforce the voiding of such transfer.

4

7.03.   <u>Additional Claims</u>.  SKY agrees that if it acquires additional Claims, then (i) such Claims shall be subject to this Agreement (including the obligations of SKY under this <u>Section 8</u>) and (ii) following such acquisition, SKY shall notify each of the other Parties hereto and to counsel to each of the Other Parties of the amount of type of claims it has acquired (a) on no less than a monthly basis and (b) additionally, upon the reasonable request of counsel to iON.

7.04.   <u>Forbearance</u>.  During the period commencing on the date hereof and ending on the termination of this Agreement in accordance with its terms, SKY and KIM hereby agree to forbear from the exercise of any rights or remedies it may have under the pre-petition first and second lien Credit Agreements, as amended and modified, with iON (the "*SKY Credit Agreement*" and "*KIM Pov Credit Agreement*") and under applicable United States or foreign law or otherwise with respect to any of the existing or anticipated Defaults or Events of Default. If the transactions contemplated hereby are not consummated, or if this Agreement is terminated for any reason, the Parties fully reserve any and all of their rights.  The Company hereby confirms that, except for the Specified Defaults, no Defaults or Events of Default exist as of the date hereof.

**Section 8.**     *Agreements of iON.*

8.01.   <u>Solicitation and Confirmation</u>.  iON agrees to (i) act in good faith and use commercially reasonable efforts to support and complete successfully the Solicitation in accordance with the terms of this Agreement and (ii) do all things reasonably necessary and appropriate in furtherance of confirming the iON Plan and consummating the Restructuring in accordance with, and within the time frames contemplated by, this Agreement, in each case to the extent consistent with, upon the advice of counsel, the fiduciary duties of the boards of directors, managers, members or partners, applicable, of iON; <u>provided</u> that iON shall not be obligated to agree to any modification of any documentation that is inconsistent with the iON Plan.

8.02.   <u>Certain Additional Chapter 11 Related Matters</u>.  iON shall provide draft copies of all material motions or applications and other documents relating to the iON Plan, iON Disclosure Statement, any proposed amended version of the iON Plan or iON Disclosure Statement, and all first day pleadings that iON intends to file with the Bankruptcy Court to the Restructuring Supporters' Counsel, if reasonably practicable, at least two (2) days prior to the date when iON intends to file any such pleading or other document (and, if not reasonably practicable, as soon as reasonably practicable prior to filing) and shall consult in good faith with such counsel regarding the form and substance of any such proposed filing.  Subject to <u>Section 8.01</u>, nothing in this Agreement shall restrict, limit, prohibit or preclude, in any manner not inconsistent with its obligations under this Agreement, SKY or KIM from appearing in the Bankruptcy Court with respect to any motion, application, or other documents filed by iON and objecting to, or commenting upon, the relief requested herein.

**Section 9.**     *Termination of Agreement.*

This Agreement shall automatically terminate five (5) business days following the delivery of written notice to the other Parties from the Restructuring Supporters at any time after and during the continuance of any Creditor Termination Event. In addition, this Agreement shall

automatically terminate five (5) business days following delivery of notice from the Company to the Restructuring Supporters at any time after the occurrence and during the continuance of any Company Termination Event. This Agreement shall terminate automatically on the effective date of the iON Plan without any further required action or notice.

9.01.   A "*Creditor Termination Event*" shall mean any of the following:

(a)     The breach in any material respect by iON of any of the undertakings, representations, warranties or covenants of iON set forth herein which remains uncured for a period of five (5) business days after the receipt of written notice of such breach from the Restructuring Supporters.

(b)     The Restructuring Supporters shall not have entered into this Agreement prior to the Commencement Date;

(c)     The Cases shall not have been filed on or before the Commencement Date;

(d)     On the eighth (8th) day following the Commencement Date, unless iON has filed the iON Plan, the iON Disclosure Statement, the motion to schedule a hearing for approval of the iON Plan and the iON Disclosure Statement, and the motion for approval of the DIP Facility.

(e)     On the eighth (8th) day after the Commencement Date, if the Bankruptcy Court shall not have entered an order in form and substance satisfactory to SKY approving the DIP Facility on an interim basis.

(f)     On the date that is forty-five (45) days after the Commencement Date, if the Bankruptcy Court shall not have entered an order in form and substance satisfactory to SKY approving the DIP Facility on a final basis.

(g)     On the date that is ninety (90) days after the Commencement Date, if the Bankruptcy Court shall not have entered an order in form and substance reasonably satisfactory to iON and the Restructuring Supporters approving the iON Disclosure Statement and confirming the iON Plan.

(h)     One hundred twenty (120) days after the Commencement Date (the "Outside Date"), if the effective date for the iON Plan (the "Effective Date") has not occurred.

(i)     iON withdraws the iON Plan or iON Disclosure Statement or file any motion or pleading with the Bankruptcy Court that is not consistent with this Agreement or the iON Plan and such motion or pleading has not been withdrawn prior to the earlier of (i) two (2) business days after iON receives written notice from the Restructuring Supporters that such motion or pleading is inconsistent with this Agreement or the Term Sheet and (ii) entry of an order of the Bankruptcy Court approving such motion or pleading.

(j)     An examiner with expanded powers or a trustee shall have been appointed in the iON Case.

6

(k)     An order is entered by the Bankruptcy Court invalidating or disallowing, as applicable, the enforceability, priority or validity of the liens securing the obligations owed to SKY under the Credit Agreement or the claims in respect thereof.

(l)     The Bankruptcy Court grants relief that is inconsistent with this Agreement or the iON Plan in any materially adverse respect.

(m)     a default or event of default shall have occurred under the DIP Facility that has not been waived in accordance with the terms thereof.

(n)     If that certain Non-Exclusive License Agreement, dated as of June 10, 2016 between Contour IP Holding, LLC and iON Worldwide, Inc. is not able to be assumed and assigned to SKY or assumed by the reorganized debtors pursuant to the iON Plan.

(o)     Consummation of the iON Plan would require Skylight to fund more than $12,000,000 (inclusive of the purchase price of the Stablis loan) for distributions under the iON Plan;

(p)     iON's exclusive periods to file and/or solicit a plan of reorganization are modified or terminated.

(q)     iON files, propound or otherwise support any chapter 11 plan other than the iON Plan.

9.02.   A "*Company Termination Event*" shall mean any of the following:

(a)     The breach in any material respect by one or more of the Restructuring Supporters of any of the undertakings, representations, warranties or covenants of the Restructuring Supporters set forth herein which remains uncured for a period of five (5) business days after the receipt of written notice of such breach.

(b)     The board of directors of the Company reasonably determines in good faith based upon the advice of outside counsel that continued performance under this Agreement would be inconsistent with the exercise of its fiduciary duties under applicable law; provided that the Company provides notice of such determination to the Restructuring Supporters within five (5) business days after the date thereof.

(c)     The occurrence of the Outside Date or an Other Termination Event.

9.03.   Other Termination Events. An "*Other Termination Event*" shall mean the following:

(a)     The issuance by any governmental authority, including any regulatory authority or court of competent jurisdiction, of any ruling, judgment or order enjoining the consummation of or rendering illegal the Restructuring, which ruling, judgment or order has not been not stayed, reversed or vacated within twenty (20) business days after such issuance.

7

(b)      On the date that the Bankruptcy Case shall have been converted to a case under chapter 7 of the Bankruptcy Code, or such case shall have been dismissed by order of the Bankruptcy Court (unless caused by a default by any Restructuring Supporter of its obligations hereunder, in which event the Restructuring Supporters shall not have the right to terminate under this clause (ii)).

(c)      On the date that an order is entered by the Bankruptcy Court or a court of competent jurisdiction denying confirmation of the iON Plan (unless caused by a default by the Restructuring Supporter of its obligations hereunder, in which event the Restructuring Supporters shall not have the right to terminate under this subsection) or refusing to approve the iON Disclosure Statement, provided that neither iON nor the Restructuring Supporters shall have the right to terminate this Agreement pursuant to this clause (c)(iii) if the Bankruptcy Court declines to approve the iON Disclosure Statement or denies confirmation of the iON Plan subject only to modifications to the iON Plan or iON Disclosure Statement that would not have a material adverse effect on the recovery or treatment that the Restructuring Supporters would receive as compared to the recovery they would have otherwise received pursuant to the iON Plan.

9.04.    Mutual Termination. This Agreement may be terminated by mutual agreement of the Company and each of the Restructuring Supporters upon the receipt of written notice.

9.05.    Effect of Termination. Upon termination of this Agreement in accordance with this Section 9, this Agreement shall become void and of no further force or effect and each Party shall, except as otherwise provided in this Agreement, be immediately released from its respective liabilities, obligations, commitments, undertakings and agreements under or related to this Agreement, shall have no further rights, benefits or privileges hereunder, and shall have all the rights and remedies that it would have had and shall be entitled to take all actions, whether with respect to the Restructuring or otherwise, that it would have been entitled to take had it not entered into this Agreement and no such rights or remedies shall be deemed waived pursuant to a claim of laches or estoppel; provided that in no event shall any such termination relieve a Party from liability for its breach or non-performance of its obligations under this Agreement prior to the date of such termination.

9.06.    Automatic Stay. iON acknowledges that after the commencement of the iON Case, the giving of notice of termination by any Party pursuant to this Agreement shall not be a violation of the automatic stay of section 362 of the Bankruptcy Code; provided that nothing herein shall prejudice any Party's rights to argue that the giving of notice of termination was not proper under the terms of this Agreement.

**Section 10.      *Definitive Documents; Good Faith Cooperation; Further Assurances.***

Each Party hereby covenants and agrees to cooperate with each other in good faith in connection with, and shall exercise commercially reasonable efforts with respect to, the pursuit, approval, implementation and consummation of the Restructuring, as well as the negotiation, drafting, execution and delivery of the Definitive Documents. Furthermore, subject to the terms hereof, each of the Parties shall take such action as may be reasonably necessary or

8

reasonably requested by the other Parties to carry out the purposes and intent of this Agreement, and shall refrain from taking any action that would frustrate the purposes and intent of this Agreement.

**Section 11.** *Amendments*.  This Agreement, including the Term Sheet, may not be modified, amended, or supplemented (except as expressly provided herein or therein) except in writing signed by iON and each of the Restructuring Supporters.

**Section 12.** *Specific Performance/Remedies.*  It is understood and agreed by the Parties that many damages would not be a sufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to specific performance and injunctive or other equitable relief (including attorney fees and costs) as a remedy of any such breach without the necessity of proving the inadequacy of many damages as a remedy.

**Section 13.** *Miscellaneous.*

13.01.  Complete Agreement.  This Agreement and the Term Sheet represent the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior agreements, oral or written, between the Parties with respect thereto.  No claim of waiver, modification, consent or acquiescence with respect to any provision of this Agreement shall be made against any Party, except on the basis of a written instrument executed by or on behalf of such Party.

13.02.  Parties.  This Agreement shall be binding upon, and inure to the benefit of, the Parties.  No rights or obligations of any Party under this Agreement may be assigned or transferred to any other person or entity; provided, however, that the Restructuring Supporter may assign its rights and obligation under this Agreement and the Term Sheet to its affiliated funds.  Nothing in this Agreement, express or implied, shall give to any person or entity, other than the Parties, any benefit or any legal or equitable right, remedy or claim under this Agreement.

13.03.  Headings.  The headings of all sections, paragraphs and subsections of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.

13.04.  GOVERNING LAW; SUBMISSION TO JURISDICTION; SELECTION OF FORUM; WAIVER OF TRIAL BY JURY.  THIS AGREEMENT IS TO BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE APPLICABLE TO CONTRACTS MADE AND TO BE PERFORMED IN SUCH STATE, WITHOUT GIVING EFFECT TO THE CONFLICT OF LAWS PRINCIPLES THEREOF.  Each Party hereto agrees that it shall bring any action or proceeding in respect of any claim arising out of or related to this Agreement or the transactions contained in or contemplated by this Agreement, to the extent possible, in the Bankruptcy Court, and solely in connection with claims arising under this Agreement or the Transactions that are the subject of this Agreement (i) irrevocably submits to the exclusive jurisdiction of the Bankruptcy Court, (ii) waives any objection to laying venue in any such action or proceeding in the Bankruptcy Court

and (iii) waives any objection that the Bankruptcy Court is an inconvenient forum or does not have jurisdiction over any Party hereto.  Solely to the extent the Bankruptcy Court declines jurisdiction, each Party consents to the exclusive jurisdiction and venue of the state and federal courts located in New Castle County, Delaware.  EACH PARTY HERETO IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.

      13.05.  <u>Interpretation</u>.  This Agreement is the product of negotiations between iON and each of the Restructuring Supporters, and in the enforcement or interpretation hereof, is to be interpreted in a neutral manner, and any presumption with regard to interpretation for or against any Party by reason of that Party having drafted or caused to be drafted this Agreement, or any portion hereof, shall not be effective in regard to the interpretation hereof.

      13.06.  <u>Notices</u>.  All notices hereunder shall be deemed given if in writing and delivered, if sent by telecopy, e-mail, courier or by registered or certified mail (return receipt requested) to the following addresses and telecopier numbers (or at such other addresses or telecopier numbers as shall be specified by like notice):

(1)        if to iON, to:

iON Worldwide Inc.
513 S. Lenola Rd., Suite 101
Moorestown, NJ  08057
Attn:  Giovanni Tomaselli
Email address: giovanni@ion-worldwide.com

with copies (which shall not constitute notice) to:

Olshan Frome Wolosky LLP
1325 Avenue of the Americas
New York, NY 10019
Attention: Michael S. Fox
Email address: mfox@olshanlaw.com

(2)        if to Sky Light Holdings Limited, to:

Sky Light Holdings Limited
Room 1009
Kwong Sang Hong Centre
151-153 Hoi Bun Road
Kwun Tong, Hong Kong
Attn: Terry
Email address: terry@sky-light.com.hk

with copies (which shall not constitute notice) to:

Whiteford Taylor Preston LLP
The Renaissance Centre, Suite 500
405 North King Street
Wilmington, DE 19801-3700
Attn: Christopher M. Samis
Email address: csamis@wtplaw.com

(3)        if to Kim Pov LLC:

Attn: Kim Pennington
Email address: tyoneon@cox.net

with copy (which shall not constitute notice) to:

Sherman & Howard L.L.C.
633 Seventeenth Street
Suite 3000
Denver, Colorado 80202
Attn: Kelly Robinson
Email address: krobinson@shermanhoward.com

11

Any notice given by delivery, mail or courier shall be effective when received.  Any notice given by telecopier shall be effective upon oral or machine confirmation of transmission.

13.07.  <u>Counterparts</u>.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same Agreement.  Delivery of an executed signature page of this Agreement by facsimile or electronic mail shall be as effective as delivery of a manually executed signature page of this Agreement.

13.08.  <u>Remedies Cumulative</u>.  All rights, powers, and remedies provided under this Agreement or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any right, power, or remedy thereof by any Party shall not preclude the simultaneous or later exercise of any other such right, power, or remedy by such Party.

13.09.  <u>No Third-Party Beneficiaries</u>.  Unless expressly stated herein, this Agreement shall be solely for the benefit of the Parties, and no other person or entity shall be a third party beneficiary hereof.

**Section 14.**    *Disclosure*.  iON may publically disclose the existence of this Agreement and the material terms of the Term Sheet in connection with the Bankruptcy Case.  SKY may publically disclose the existence of this Agreement and the material terms of the Term Sheet in connection with any disclosures required of it as a publically traded company.

**Section 15.**    *No Solicitation; Adequate Information*.  This Agreement is not and shall not be deemed to be a solicitation for consents to the iON Plan.  The votes of the holders or claim against iON will not be solicited until such holders who are entitled to vote on the iON Plan have received the iON Plan, the iON Disclosure Statement and related ballots, and other required solicitation materials.  In addition, this Agreement does not constitute an offer to issue or sell securities to any person or entity, or the solicitation of an offer to acquire or buy securities, in any jurisdiction where such offer or solicitation would be unlawful.

*[signature pages follow]*

IN WITNESS WHEREOF, the Parties have executed this Agreement and delivered by their respective duly authorized officers, solely in the respective capacity as officers of the undersigned and not in any other capacity, as of the day and year first above written.

iON AMERICA LLC

By: _____

      Name:  Giovanni Tomaselli
      Title:  CEO


iON WORLDWIDE INC

By: _____

      Name:  Giovanni Tomaselli
      Title:  CEO


SKY LIGHT HOLDINGS LIMITED

By: _____

      Name:  TANG WING FONG TERAY
      Title:  CEO


KIM POV LLC

By: _____

      Name:
      Title:

13

## TERM SHEET

This term sheet presents the material terms of a restructuring of iON Worldwide Inc and iON America LLC (the "Debtors") and affiliated foreign subsidiaries (collectively with the Debtors, the "Company") through a plan of reorganization (the "Plan") under title 11 of the United States Code (the "Bankruptcy Code"). The terms discussed herein constitute an integrated offer, are not divisible except as described herein, are subject to the terms and conditions hereof, and are not binding. This term sheet is provided in confidence and, except as otherwise permitted by the express written consent of the Debtors, may not be distributed. This term sheet is being provided in furtherance of settlement discussions and is entitled to protection from any use or disclosure to any party or person pursuant to Fed. R. Evid. 408 or any similar rule of evidence. Nothing herein shall be considered an admission for any purpose.

| | |
|---|---|
| **Transaction Overview** | Sky Light Holdings Limited, a publicly traded company on the Hong Kong stock exchange ("Skylight") shall form a wholly owned subsidiary to acquire substantially all of the assets and 100% of the common stock (the "New Common Stock") of the reorganized equity of the Debtors (the "Reorganized Debtors"). In consideration for acquiring the New Common Stock of the Debtors under the Plan, Skylight shall fund distributions under the Debtors Plan in accordance with the terms hereof.<br><br>The total enterprise valuation of the Debtors is for purposes of the Plan shall be $12,000,000.<br><br>To fund distributions under the Plan, Skylight shall fund:<br><br>1) Up to $12,000,000 in cash for distributions to secured, administrative and priority creditors in the amounts set forth below;<br><br>2) The foregoing to part of and on account of Skylight's investment and receipt of 100% of the New Common Stock of the Debtors. |
| **Good Faith Deposit Agreement** | Skylight shall upon execution of this Term Sheet and as a sign of good faith advance the sum of $100,000. This deposit is non-refundable. It is being advanced to help in part to stabilize the cash flow needed by the Debtors. |
| **Supply Agreement** | Skylight shall agree to continue to manufacture and supply the Debtors with cameras and current product during the pendency |

|                                        |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                         |
|----------------------------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|                                        | of the chapter 11 case with credit up to $1,000,000 on net 60 day terms, secured with a purchase money security interest.                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                 |
| Debtor-in-possession Financing         | Skylight will provide up to an additional $500,000 in cash as part of debtor-in-possession ("DIP") financing to the Company during the Bankruptcy Case on terms acceptable to Skylight. The DIP is due in full in cash at the Effective Date or converted to stock at Skylight's election.  To the extent that Skylight acquires the Stabilis loan, it will consent and agree to the use of its cash collateral in accordance with a Budget to be approved by Skylight. The Budget will be updated and variances for each month will be 25% on a cumulative basis.                                                                |
| Administrative Claims [$325,000]       | Each holder of an Allowed[1] Administrative Claim will receive payment in full in cash of the unpaid portion of such Allowed Administrative Claim, at the discretion of the Debtors, either (a) on the Effective Date or as soon thereafter as reasonably practicable, (b) in the ordinary course or (c) in the case of professional fees, after court approval thereof.  Administrative Claims shall include claims for professional fees and any allowed claims under section 503(b) of the Bankruptcy Code. |
| Priority Tax Claims [$150,000]         | At the option of the Debtors, each holder of an Allowed Priority Tax Claim will receive either (a) payment of such claim in full in cash on the Effective Date or as soon thereafter as reasonably practicable or (b) payment of such claim in full over a six-year period from the date of assessment, as permitted by Bankruptcy Code section 1129(a)(9)(C), with interest payable at the lowest rate per annum permitted by law.                                                                                   |

---

[1]  "Allowed" shall mean any claim that is determined to be a valid claim in the Company's bankruptcy case based on the Company's schedules or through settlement, litigation or otherwise.

3696018-1

| Other Priority Claims<br>[$975,000] | On the Effective Date, or as soon thereafter as reasonably practicable, each holder of an Other Priority Claim will receive payment in full in cash of such Allowed Other Priority Claim. |

**Other Priority Claims**

[$975,000]

On the Effective Date, or as soon thereafter as reasonably practicable, each holder of an Other Priority Claim will receive payment in full in cash of such Allowed Other Priority Claim.

**Stabilis Secured Claim**

[$4,350,000]

Prior to filing Skylight will acquire the Stabilis loan and upon the Effective Date will convert same into stock the New Common Stock in full and final satisfaction of this claim.

**KIM POV Secured Claim**

[$4,195,000]

On the Effective Date, or as soon thereafter as reasonably practicable, in full and final satisfaction of its claims, KIM POV shall receive a cash payment in the amount of $3,195,000.

**General Unsecured Claims**

[Total: est. $16,700,000]

General Unsecured Claims will receive a pro rata distribution of Cash having a value of up to the lesser of 15% of the allowed claims or $2,505,000.

$11,000,000 General Unsecured Debt

$4,700,000  KIM POV Unsecured Note

$1,000,000 DeFrancesco Note

**Intercompany Claims**

Intercompany Claims will be cancelled and receive no distribution.

**Equity Interests**

The holders of existing Equity Interests will receive no distributions and such interests shall be extinguished and cancelled under the Plan. On the Effective Date, the New Common Stock shall be issued to Skylight.

**Executory Contracts**

All executory contracts and unexpired leases of the Debtors that are not listed on a schedule of assumed contracts to be served in connection with the Plan, or which are not the subject of a motion to assume as of the confirmation date, shall be rejected as of the Effective Date. Except as otherwise set forth herein, the Reorganized Debtor shall pay the cure amount with respect to each assumed executory contract or lease on or as soon as

-3-

3696018-1

reasonably practicable following the Effective Date (or earlier date of assumption).

**Stock of Reorganized Debtor**

The New Common Stock shall represent all of the equity interests in Reorganized Debtors as of the Effective Date.

**Corporate Governance**

The initial board of directors of the Reorganized Debtors will consist of three (3) directors. Two (2) of such directors shall be selected by Skylight; one (1) shall be selected by the Debtors. Subsequently, Reorganized Debtors board of directors shall be elected based on the ownership of Reorganized Debtors voting equity.

**Releases**

The Plan will contain releases and exculpations, to the fullest extent permitted by applicable law, in favor of the Debtors, Skylight and their respective officers, directors, employees, attorneys and other agents.

**Incentive Stock Option Plan**

The Reorganized Debtors will adopt an incentive stock option plan (the "Incentive Stock Option Plan") for employees, management. Participation in, and allocation of options under, the Incentive Stock Option Plan shall be determined by Reorganized Debtors' Board of Directors.

**Non-Debtor Affiliates**

On the Effective Date, Skylight shall also acquire all of the stock of Worldwide Licenses Ltd (Hong Kong); iON Cameras Limited (UK) and Summit Global Japan KK (Japan) for $1.00 and the assumption of all liabilities of such entities.

**Milestone and Timing**

Subject to its fiduciary duties as a Debtor and based upon the advice of Counsel and on the terms and conditions set forth herein, the Debtor shall be required to comply with the following:

(a)    File its Chapter 11 Case on or before May 31, 2016;

(b)    Obtain approval of the DIP Financing and Use of Cash Collateral on a Final basis on or before June 30, 2016;

(c)    Obtain execution of a "Plan Funding Agreement" approved and executed by Skylight (the "**Plan Funding Agreement**") shall be executed by Debtor, no

-4-

later than June 30, 2016:

(d)     File a plan ("Funding **Plan**") and companion disclosure statement ("**Disclosure Statement**"), the terms of which conform to the Plan Funding Agreement, shall be filed with the Bankruptcy Court on or before July 6, 2016;

(e)     Obtain Bankruptcy Court approval of the Disclosure Statement as expeditiously as practicable, but in any event no later than August 1, 2016; and

(f)     Obtain the Bankruptcy Court to confirm the Funding Plan as expeditiously as practicable under the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Bankruptcy Court's local rules, but in any event no later than September 8, 2016.

ACKNOWLEDGED
AGREED TO AND ACCEPTED
DATED       , 2016:

iON WORLDWIDE INC.

By: _____
Name: Giovanni Tomaselli
Title CEO

SKY LIGHT HOLDINGS LIMITED

By: _____
Name: TANG WING FONG TERRY
Title  CEO

iON AMERICA LLC

By: _____
Name: Giovanni Tomaselli
Title CEO

KIM POV LLC

By: _____
Name:  Kimberly C. Pennington
Title    Managing Member and Sole Member

3696018-1