**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| iON Worldwide Inc., *et al.*, | ) Case No. 16-11543 (LSS) |
| | ) |
| Debtors.[1] | ) (Jointly Administered) |
| | ) |
| | ) **Re: D.I. 95, 102** |
| | ) |
| | ) **Hearing Date: September 21, 2016 at 11:00 a.m.(ET)** |
| | ) **Objections Due: September 14, 2016 at 4:00 p.m. (ET),** |
| | )     **extended to September 16, 2016 for the Committee** |
| | ) |

**OMNIBUS OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS TO DEBTORS' (I) MOTION TO APPROVE DISCLOSURE STATEMENT**
**AND SOLICITATION PROCEDURES; AND (II) MOTION TO ESTABLISH BAR DATE**

The official committee of unsecured creditors (the "Committee") appointed in the above-

captioned, jointly administered chapter 11 cases of iON Worldwide Inc. and iON America LLC

(the "Debtors") hereby submits this limited omnibus objection (the "Objection") to the

1. *Debtors' Motion for Order: (A) Approving the Disclosure Statement; (B) Fixing the Voting Record Date; (C) Approving the Solicitation Materials and Procedures for Distribution Thereof; (D) Approving the Forms of Ballots and Establishing Procedures for Voting on the Debtors' Plan of Reorganization; (E) Scheduling a Hearing and Establishing Notice and Objection Procedures in Respect of the Confirmation of Debtors' Plan of Reorganization; and (F) Granting Related Relief* (D.I. 95) (the "Disclosure Statement and Solicitation Procedures Motion," or "DS Motion"); and

2. *Debtors' Motion for an Order, Pursuant to Sections 501 and 502 of the Bankruptcy Code, Bankruptcy Rules 2002 and 3003(c)(3), and Local Rule 2002-1, (I) Establishing Bar Dates for Filing Proofs of Claims and (II) Approving the Form and Manner of Notice Thereof* (D.I. 102) (the "Bar Date Motion," and together with the Disclosure Statement and Solicitation Procedures Motion, the "Motions").[2]

In support of this Objection, the Committee respectfully states as follows:

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are iON Worldwide Inc. (3211); iON America LLC (2612).

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motions, as applicable.

## PRELIMINARY STATEMENT

1.      The Committee objects to the Motions because they seek to establish procedures that will undoubtedly deny legitimate, impaired creditors the opportunity to vote on the Debtors' proposed plan of reorganization.  The Debtors propose to solicit the votes of only those creditors that they scheduled or who filed a proof of claim as of the date of the hearing on the Motions—September 21.  But the Debtors did not provide notice to all creditors that September 21 is a *de facto* bar date for voting on the proposed plan.  Moreover, the Debtors simultaneously ask to establish Bar Dates that are at least 30 days *after* they commence solicitation.  The Bankruptcy Code, Bankruptcy Rules, due process, and common sense all dictate that the process should be inverted—first identify the creditors entitled to vote through the passage of a properly noticed and published bar date, and then solicit those creditors' votes.

2.      The Debtors' proposed disclosure statement is also lacking adequate information, such that the creditors who do receive it will not be able to rely on it to supply the information needed to allow them to cast an informed vote.  Substantial purported unsecured claims that the Debtors insist are part of the claims pool are not disclosed.  Substantial sources of potential recoveries are not discussed.  There is no discussion of the Debtors' value, financial projections, the substantial claims held by non-debtor affiliates, or potential causes of action.  Simply put, the proposed disclosure statement does not provide unsecured creditors with the information they need to determine whether the Debtors' take-it-or-leave-it proposal of an aggregate $2,505,000 to split on a *pro rata* basis is appropriate.

3.      The Committee will continue to work with the Debtors and the plan sponsor regarding the objections set forth herein until the time of hearing.   To the extent that the parties

are unable to reach a mutually agreeable resolution, the Committee respectfully requests that the Court sustain the Committee's objections for the reasons set forth herein.

## BACKGROUND

1.      The Debtors propose to use these cases to restructure into an entity wholly owned by Sky Light Holdings Limited ("Sky Light").  The terms of the restructuring were negotiated prepetition and are set forth in a restructuring support agreement (the "RSA") among the Debtors, Sky Light, and Kim POV, LLC ("Kim POV").  *See* RSA Term Sheet, attached as Ex. A to Oatway Declaration.[3]

2.      In addition to being the plan sponsor, Sky Light is the Debtors' senior secured prepetition lender, DIP Lender, and primary supplier and manufacturer of the Debtors' products.

3.      Under their proposed plan of reorganization (the "Proposed Plan"), the Debtors and Sky Light propose to pay general unsecured claims the lesser of (i) their *pro rata* share of $2,505,000 or (ii) 15% of the total allowed amount.[4]

4.      The record in these cases, however, is unclear and inconsistent as to the size and composition of the unsecured claim pool:

      a.      The Debtors' amended schedules list unsecured claims of **$15,153,547.31**. But:

            i.      This figure *includes* a $3,687,988.43 claim by a wholly owned non-debtor affiliate, World Wide Licenses Limited ("WWL").  Sky Light proposes to purchase WWL for $1.00 and the assumption of certain undisclosed liabilities under the Proposed Plan; and

---

[3]      The Committee understands that the deadlines set forth in the RSA have been informally extended by and between the parties to the RSA.

[4]      The Debtors and Sky Light also propose to pay secured and priority claims as follows: (i) repayment of Sky Light's DIP Facility in full; (ii) payment of allowed administrative claims in full (estimated at $325,000); (iii) payment of $3,195,000 in cash to Kim POV on account of its subordinated secured prepetition claims; (iv) payment of priority tax claims (estimated at $125,000); and (v) payment of other priority tax claims in full (estimated at $975,000).

    ii. This figure does *not include* an approximately $4.7 million unsecured claim purportedly held by either Kim POV or a principal of Sky Light that the Debtors insist is a valid unsecured claim (*See* D.I. 79, 105).

  b. The Debtors' proposed disclosure statement (the "<u>Disclosure Statement</u>") states that there are estimated aggregate general unsecured claims of **$15,700,000**. (*See* D.I. 94 § 2.02). The Disclosure Statement contains no explanation for why its estimate varies from the Debtors' schedules.

  c. The Oatway Declaration filed in support of the Debtors' petitions states that "[t]he Debtors have unsecured debt to unaffiliated creditors in an amount of approximately **$12.6 million**. The Debtors also owe approximately $7.8 million to non-debtor affiliate, WWL." (*See* D.I. 11 ¶ 31 (emphasis added)).

5. On August 17, 2016, the Debtors filed the Disclosure Statement and Solicitation Procedures Motion.

6. On August 31, 2016, the Debtors filed the Bar Date Motion.

7. Taken together, the Disclosure Statement and Solicitation Procedures Motion and the Bar Date Motion propose the following timeline and process for soliciting creditors' votes on the Proposed Plan and setting Bar Dates to identify all of the Debtors' creditors:

  a. September 21, 2016 – Record Date for determining the creditors entitled to receive Solicitation Materials and vote to accept or reject the Proposed Plan (*See* DS Motion ¶ 9).

  b. Approximately September 26, 2016 – the Debtors provide Solicitation Materials to (i) creditors with scheduled claims that are liquidated, noncontingent, and undisputed; and (ii) creditors that have filed proofs of claim as of the Record Date (i.e., September 21, 2016) (*See* Proposed Order Approving DS Motion (the "<u>DS Order</u>") ¶¶ 6, 8).

  c. The only creditors who can vote to accept or reject the Proposed Plan are creditors who have (i) filed a proof of claim *by the Record Date* (i.e., September 21, 2016); or (ii) are scheduled in amounts in excess of $0.00 (*See* Ex. C to DS Order, Solicitation Procedures § B).

  d. Approximately October 28, 2016 – General Bar Date for filing proofs of claim or otherwise be barred from, among other things, "voting upon" the Proposed Plan (*See* Bar Date Motion ¶ 20).

e.      All other material dates are currently "to be determined."[5]

f.      The Debtors intend to emerge from bankruptcy in "October 2016."

## OBJECTION

**I.      The Proposed Solicitation Procedures are Flawed.**

8.      The Debtors' proposed procedures are fundamentally flawed because they seek to establish a Record Date and solicit votes on the Proposed Plan more than 30 days *before* the Debtors will know the identity of all of the parties entitled to vote on the Proposed Plan.

9.      This backwards procedure is illogical.  Accurate claim information is essential to a proper plan process, and the Debtors admit as much:  in asking the Court to establish Bar Dates, the Debtors acknowledge that "[i]n order for the Debtors to fully administer their chapter 11 estates, the Debtors must obtain complete and accurate information regarding the nature, validity, and amount of *all* claims that will be asserted in these chapter 11 cases."  Bar Date Motion ¶ 9 (emphasis added).   The Committee agrees.[6]

10.      Contrary to their representations in the Bar Date Motion, however, the Debtors apparently have no desire to "obtain complete and accurate information" regarding "all claims" before soliciting votes on the Proposed Plan.  Specifically, the Debtors propose to solicit only those creditors with (i) claims scheduled as "liquidated, noncontingent, and undisputed," and (ii) those who have filed proofs of claim "*as of the close of business on the Record Date*."  DS Order ¶¶ 6, 8 (emphasis added).  Thus, if the Debtors dispute a claim, or a creditor has understandably not yet submitted a proof of claim by September 21 (because the notice of the Bar Dates will not

---

[5]      Given the lack of notice of these additional proposed dates, the Committee reserves all rights.

[6]      *See, e.g.*, *In re Energy Future Holdings Corp.*, 522 B.R. 520, 526 (Bankr. D. Del. 2015) ("A bar date serves the important purpose of enabling the parties to a bankruptcy case to identify with reasonable promptness the identity of those making claims against the bankruptcy estate, and the general amount of the claims, a *necessary step* in achieving the goal of successful reorganization." (internal quotation marks omitted; emphasis added)).

be mailed or published before then), the creditor will not receive solicitation materials.[7]    It is impossible to reconcile the unavoidable result that many claimants will not be solicited with the Debtors' contention that their process will purportedly "afford holders of claims entitled to vote on the Plan with more than ample time to review and analyze the solicitation materials." *See* DS Motion ¶ 34.[8]

11.    The Debtors' failure to transmit solicitation materials to all creditors entitled to vote on the Proposed Plan is inconsistent with the Bankruptcy Code, Bankruptcy Rules, and due process.  Section 1126 of the Bankruptcy Code provides that "[t]he holder of a claim or interest allowed under section 502…may accept or reject a plan." 11 U.S.C. § 1126(a).[9]  Section 1125 of the Bankruptcy Code provides that "[t]he same disclosure statement shall be transmitted to *each* holder of a claim or interest of a particular class."  11 U.S.C. § 1125(c) (emphasis added).  Similarly, Bankruptcy Rule 3017 provides—as the Debtors admit—that "all creditors" shall be provided with the solicitation materials by mail.  Fed. R. Bankr. P. 3017(d); *see* DS Motion ¶ 16; *see also* Fed. R. Bankr. P. 2002(b).  Further, due process in this context requires that known creditors receive notice of the General Bar Date, and that the Debtors provide publication notice to unknown creditors, before a creditor may be bound by bankruptcy proceedings.  *See, e.g.*, *In*

---

[7]    Notably, the notice of commencement that the Debtors served at the outset of these cases states that "if a deadline [for filing a proof of claim] is set, notice will be sent at a later time." *See* D.I. 34.  Creditors will likely be surprised to learn that, by the time they receive such notice via the Bar Date Notices, the deadline for filing a proof of claim for voting purposes has passed.

[8]    Although section B.2 of the Solicitation Procedures attached as Exhibit C to the DS Order provides that "[h]olders of Claims that are listed in the Schedules in amounts in excess of $0.00" are entitled to vote on the Proposed Plan, that provision is rendered meaningless by paragraphs 6 and 8 of the DS Order, which arguably allow the Debtors to provide solicitation materials to only those scheduled creditors with "liquidated, noncontingent, and undisputed claims."  Creditors entitled to vote—and who would be known to the Debtors had the applicable Bar Date passed—should not be forced to seek out solicitation materials.

[9]    Under section 502 of the Bankruptcy Code, a proof of claim is deemed allowed once filed, until a party in interest objects to it.  11 U.S.C § 502(a).

*re Energy Future Holdings Corp.*, 522 B.R. at 529.  None of these requirements can be satisfied where the Debtors propose to solicit creditors without knowing who all of the creditors are.

12.     Rather than running the open and inclusive solicitation process envisioned by the Bankruptcy Code,[10] the Debtors have unilaterally determined that only certain scheduled creditors (and those especially proactive creditors who have filed an early proof of claim) will have an opportunity to vote on the Proposed Plan.

13.     The Debtors' proposed procedures would be less problematic if their schedules were a reliable indicator of the creditor body.  But they are not.  Most glaringly, the Debtors' schedules do not reflect an alleged $4.7 million unsecured note purportedly held by either Kim POV or a principal of Sky Light, yet the Debtors have insisted to the Committee that such alleged note is a valid unsecured claim.[11]  Such a claim could easily be the largest unsecured claim (comprising over 25% of the claim pool), yet there is no mention of it anywhere in the record of these cases.

14.     Additionally, of just the fifteen proofs of claim filed to date (excluding three duplicate claims), four of those potential creditors were not scheduled by the Debtors:

      a.     TRC Master Fund LLC (Claim No. 3 in the amount of $**119,557.16**);

      b.     Pepper Hamilton LLP (Claim Nos. 9 and 12 in the amount of $**10,690.00**);

      c.     Wildeboer Dellelce LLP (Claim Nos. 10 and 11 in the amount of $**126,226.24**); and

---

[10]     Courts have explained that

[w]hen sections 1124 and 1126(f) are read together and in light of the legislative history of Chapter 11 and 100 years of reorganization practice, the meaning is clear.  The expression of acceptance or rejection of a plan is not a meaningless exercise and the right to vote should not be abrogated in the interest of expediency.

*See, e.g., In re Jeppson*, 66 B.R. 269, 294 (Bankr. D. Utah 1986).

[11]     The Committee is still investigating the circumstances surrounding this purported note and the prepetition transactions in which it was purportedly transferred from the Sky Light principal to Kim POV.

        d.      Dorsey & Whitney LLP (Claim No. 16 in the amount of **$71,683.99**).

Thus, one-quarter of the proofs of claim filed to date were not scheduled by the Debtors, and they total in excess of $328,000 in the aggregate.[12]  Additional unscheduled creditors are certain to appear once notice of the Bar Dates is mailed and published.  The Debtors' procedures' reliance on the Debtors' schedules to achieve comprehensive solicitation is misplaced.

15.    In sum, there is a real likelihood that if the Debtors' procedures are approved, legitimate creditors will be excluded from the voting process.

16.    Aside from the fundamental unfairness of this result, the Debtors' procedures expose creditors to economic uncertainty and risk.  First, unsecured creditors bear the risk that their expected recovery of approximately 15%—calculated based upon the current estimates of the claims pool in the Disclosure Statement—will be substantially diluted in the event large, unknown and undisclosed claims come to light after the voting Record Date.  The emergence of such claims would materially alter the "deal" that the creditors were asked to accept or reject.  If the Debtors and Sky Light want to insist upon expedited procedures, they should bear this risk and guarantee a fixed percentage recovery to unsecured creditors.  Additionally, the creditors, as the beneficiaries of the Debtors' estates, should not bear the risk that the Plan may have to be resolicited should creditors holding significant claims emerge after the Record Date but prior to the General Bar Date.  And given the infirmities of the schedules discussed above, the risk of resolicitation is not merely speculative.

17.    For these reasons, delaying solicitation of the Proposed Plan until after the General Bar Date has run is the appropriate procedure.  Otherwise, the creditor constituency will be materially prejudiced.

---

[12]    Additionally, one scheduled creditor recently filed a proof of claim that in the amount of $944,600.85— approximately 27 times the amount the Debtors scheduled.  *See* Claim No. 17; D.I. 105.

**II.    The Disclosure Statement Does Not Contain Adequate Information.**

18.    In addition to proposing a flawed process, the Debtors' proposed disclosure statement (the "<u>Disclosure Statement</u>") cannot be approved because it lacks "adequate information."  Critically, the information that the Disclosure Statement lacks is information that the Committee has repeatedly requested from the Debtors without success.

19.    A written disclosure statement accompanying a plan must contain "adequate information."   11 U.S.C. § 1125(b); *see Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 321 (3d Cir. 2003) (stating that debtor has an affirmative duty to provide creditors with a disclosure statement containing "adequate information" to "enable a creditor to make 'an informed judgment' about the Plan").

20.    "Adequate information" is defined in the Bankruptcy Code as:

> Information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan … and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

11 U.S.C. § 1125(a)(1).

21.    The "adequate information" requirement is designed to help creditors in their negotiations with debtors over the plan.  *See Century Glove, Inc. v. First Am. Bank*, 860 F.2d 94 (3d Cir. 1988).

22.    Courts have held that the information to be considered for inclusion in a disclosure statement includes, *inter alia*, (i) a complete description of the available assets and their value; (ii) the anticipated future of the debtors, with accompanying financial projections;

(iii) the accounting and valuation methods used to produce the financial information in the disclosure statement; and (iv) an estimate of all administrative expenses, including attorney's fees and accountant's fees. *See, e.g.*, *In re Oxford Homes, Inc.*, 204 B.R. 264 (Bankr. D. Me. 1997); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168 (Bankr. S.D. Ohio 1988); *In re Metrocraft Pub'l Servs., Inc.*, 39 B.R. 567 (Bankr. N.D. Ga. 1984).

23.     Where a disclosure statement fails to provide accurate and non-misleading information material to the proffered plan, courts will deny approval of the disclosure statement. *See, e.g.*, *Metrocraft*, 39 B.R. at 571 (denying approval of disclosure statement that omitted information relating to the value of the debtor's property, the amount of unsecured claims, the relationship and potential claims between the debtor and its affiliate, the ability to collect accounts receivable, and the estimated return to creditors in a chapter 7 liquidation); *In re New Haven Radio, Inc.*, 18 B.R. 977, 980 (Bankr. D. Conn. 1982) (striking disclosure statement because it failed to provide sufficient information concerning debtor's assets and liabilities and contained inaccurate, distorted, and misleading information); *In re Adana Mortg. Bankers, Inc.*, 14 B.R. 29 (Bankr. N.D. Ga. 1981) (denying disclosure statement that "provides no financial information, data, valuations, or projections relevant to the determination by the Creditors of whether to accept or reject the Debtor's Plan"); *In re McGrew*, 60 B.R. 276 (Bankr. W.D. Ark. 1986) (denying disclosure statement).

24.     In this case, the Disclosure Statement—in its current form—is missing the information described below that is necessary to provide creditors with the requisite "adequate information":[13]

---

[13]     The below enumerated disclosure deficiencies are by way of example, only, and intended to be a summary of the disclosure deficiencies.  They should not be viewed as a waiver of further objections by the Committee.

a.    As noted above, the Debtors contend that a $4.7 million unsecured note allegedly held by a Sky Light principal or Kim POV exists, but it is not disclosed.  This claim would represent over 25% of the general unsecured claims pool.  Creditors require a reasonable understanding of the claims pool in order to decide whether to accept or reject the Proposed Plan.

b.    The Disclosure Statement fails to provide any information regarding the Debtors' interest in their non-debtor affiliates.  The Debtors' schedules reflect substantial sums flowing between the Debtors and their non-debtor affiliates.  One of the non-debtor affiliates, WWL, is scheduled as having an unsecured claim of approximately $3.7 million.  Sky Light proposes to purchase these non-debtor affiliates under the Plan for $1.00 and the assumption of an undisclosed amount of liabilities.  Creditors require additional information about these matters to understand the Proposed Plan's allocation of the Debtors' value among the various parties.

c.    The Disclosure Statement states that the Debtors are entitled to a "modified amount" of proceeds from patent litigation with GoPro, yet there is no explanation of that amount, or the fact that any recovery would be enjoyed solely by Sky Light.[14]

d.    The Disclosure Statement contains no financial projections regarding the Reorganized Debtors.

e.    The Disclosure Statement contains no discussion of any valuation of the Debtors.  The Restructuring Support Agreement (the "RSA") that forms the basis of the Proposed Plan assumes that the Debtors have an enterprise value of $12 million.  The Disclosure Statement should explain how that value was determined.

f.    The Disclosure Statement contains no discussion of the Debtors' efforts to market themselves for sale in order to maximize value.

g.    The Disclosure Statement contains no discussion of the negotiations with Sky Light and Kim POV that led to the RSA and Proposed Plan.

h.    The Disclosure Statement contains no discussion of the value of potential avoidable transfers, notwithstanding that the Debtors' scheduled substantial transfers to parties that it designated as insiders within the year before the Petition.

i.    The Disclosure Statement contains no discussion regarding potential causes of action that the Debtors may possess, other than the currently pending patent litigation with GoPro.

---

[14]    The Committee and the Debtors are in discussions regarding appropriate language to resolve this issue.

    j.      The proposed ballots attached to the Disclosure Statement and Solicitation Procedures Motion should be revised to include an opt-out from the third-party releases.  This is especially important in this case where the Debtors seek non-consensual releases without full solicitation of the entire creditor body.[15]

    k.      The Disclosure Statement incorrectly states repeatedly that the Committee supports the Proposed Plan.  The Committee has not yet decided indicated whether it supports the Proposed Plan.

## III.    Objections to the Bar Date Motion.

25.    In addition to the foregoing, the Committee has identified various objectionable provisions to the Bar Date Motion.

26.    First, the Bar Date Notice that the Debtors propose to mail to creditors is materially misleading because a reasonable recipient would infer that creditors who file a proof of claim before the applicable Bar Date will be permitted to vote on the Proposed Plan.  The Bar Date Notice states that a creditor who fails to file a proof of claim "by the applicable Bar Date" "shall not be permitted to…vote to accept or reject any plan filed in these chapter 11 cases."  As discussed above, however, by the time creditors receive the Bar Date Notice, solicitation materials will already have been distributed.

27.    Second, the General Bar Date should be a date certain rather than thirty days after the unidentified Service Date.  *See* Bar Date Motion Proposed Order (the "Bar Date Order") ¶ 2.  This will support certainty and reduce confusion among creditors.

28.    Third, assuming *arguendo* that the General Bar Date is calculated based off of the Service Date, the Service Date should be the date when the Debtors *complete* solicitation of the Bar Date Notice Package, not when they *commence* service.  *See* Bar Date Order ¶    11

---

[15]    The Debtors have indicated that they are agreeable to this revision.  The Committee reserves all rights regarding the appropriate scope and effect of the Proposed Plan's release provisions.

(Moreover, this is yet another reason why a date certain for the General Bar Date is preferable to that proposed by the Debtors).

29.    Fourth, proofs of claim should be able to be filed electronically through the Court's electronic proof of claim system.  As currently proposed, proofs of claim may only be filed conventionally with the Clerk.  *See* Bar Date Order ¶ 5.  Allowing claims to be filed electronically will reduce creditor cost and inconvenience associated with mailing or hand delivering a proof of claim form.

## RESERVATION OF RIGHTS

30.    The Committee reserves all rights to supplement this Objection and raise additional objections to the Motions, Disclosure Statement, and Proposed Plan, as necessary.

WHEREFORE, for the reasons set forth above, the Committee requests that the Court deny the Motions unless the relief requested is modified as set forth herein.

Dated: September 16, 2016

**BENESCH, FRIEDLANDER,**
**COPLAN  & ARONOFF LLP**

_____*/s/  Jennifer R. Hoover*_____
Michael J. Barrie (No. 4684)
Jennifer R. Hoover (No. 5111)
William M. Alleman, Jr. (No. 5449)
222 Delaware Avenue, Suite 801
Wilmington, DE 19801
T: 302-442-7010
F: 302-442-7012
mbarrie@beneschlaw.com
jhoover@beneschlaw.com
walleman@beneschlaw.com

*Counsel to the Official Committee of*
*Unsecured Creditors*