**THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| iON Worldwide Inc., et al., | Case No. 16-11543 (LSS) |
| Debtors.[1] | (Jointly Administered) |

---

### DISCLOSURE STATEMENT WITH RESPECT TO FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF ION AMERICA LLC AND ION WORLDWIDE INC.

---

Dated: September 20, 2016
Wilmington, Delaware

**OLSHAN FROME WOLOSKY LLP**
Michael S. Fox
Jonathan T. Koevary
1325 Avenue of the Americas
New York, New York 10019
Telephone: (212) 451-2300
Facsimile: (212) 451-2222
mfox@olshanlaw.com
jkoevary@olshanlaw.com

-and-

**A. M. SACCULLO LEGAL, LLC**
Anthony M. Saccullo (Bar No. 4141)
Thomas H. Kovach (Bar No. 3964)
27 Crimson King Drive
Bear, Delaware 19701
(302) 836-8877
(302) 836-8787 (facsimile)
ams@saccullolegal.com
kovach@saccullolegal.com

*Counsel to the Debtors and Debtors-in-Possession*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, are: iON Worldwide Inc. (3211) and iON America LLC (2612). The Debtors' corporate headquarters is located at, and the mailing address for each Debtor is, 513 South Lenola Road, Suite 208, Moorestown, NJ 08057.

THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 4:00 P.M. [   ] 2016 PREVAILING EASTERN TIME UNLESS EXTENDED BY THE DEBTOR.  TO BE COUNTED, COUNSEL FOR THE DEBTOR MUST <u>ACTUALLY RECEIVE</u> YOUR BALLOT ON OR BEFORE THE VOTING DEADLINE.

CERTAIN INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT, THE PLAN AND ANY EXHIBITS ATTACHED HERETO IS <u>SPECULATIVE</u>, AND PERSONS SHOULD NOT RELY ON SUCH DOCUMENTS IN MAKING INVESTMENT DECISIONS WITH RESPECT TO (A) THE DEBTOR OR (B) ANY OTHER ENTITIES THAT MAY BE AFFECTED BY THE DEBTORS' CHAPTER 11 CASES.

(i)

iON WORLDWIDE INC AND iON AMERICA LLC AS DEBTORS AND DEBTORS IN POSSESSION, ARE  PROVIDING THE INFORMATION IN THE DISCLOSURE STATEMENT FOR THE FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION OF THE DEBTORS TO HOLDERS OF CLAIMS AND INTERESTS FOR PURPOSES OF SOLICITING VOTES TO ACCEPT OR REJECT THE PLAN.  YOU SHOULD NOT RELY UPON OR USE THE INFORMATION IN THE DISCLOSURE STATEMENT FOR ANY OTHER PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.

THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS 4:00 P.M. (PREVAILING EASTERN TIME) ON [    ], 2016, UNLESS EXTENDED BY THE DEBTORS (THE "VOTING DEADLINE").  TO BE COUNTED, BALLOTS MUST BE RECEIVED BY COUNSEL FOR THE DEBTOR ON OR BEFORE THE VOTING DEADLINE.

THE DISCLOSURE STATEMENT HAS BEEN PREPARED PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016(B) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS.  THE DEBTOR BELIEVES THAT THE SOLICITATION OF VOTES ON THE PLAN MADE BY THE DISCLOSURE STATEMENT, AND THE OFFER OF THE NEW SECURITIES THAT MAY BE DEEMED TO BE MADE PURSUANT TO THE SOLICITATION ARE EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT OF 1934, AS AMENDED (THE "SECURITIES ACT"), AND ANY SIMILAR FEDERAL, STATE OR LOCAL LAWS IN RELIANCE ON SECTION 1145(a)(1) OF THE BANKRUPTCY CODE.  TO THE EXTENT THAT SECTION 1145(a)(1) OF THE BANKRUPTCY CODE IS INAPPLICABLE, THE DEBTOR BELIEVES THAT THE NEW SECURITIES TO BE ISSUED UNDER THE PLAN WILL BE EXEMPT FROM REGISTRATION UNDER THE SECURITIES ACT AND ANY SIMILAR FEDERAL, STATE, OR LOCAL LAWS BY REASON OF THE EXEMPTION SET FORTH IN SECTION 4(2) OF THE SECURITIES ACT OR REGULATIONS PROMULGATED THEREUNDER.

THE DEBTORS WILL BE FILING A PLAN SUPPLEMENT NO LATER THAN THREE (3) DAYS PRIOR TO THE CONFIRMATION HEARING

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST, AND HOLDERS OF INTERESTS IN, THE DEBTORS (INCLUDING, WITHOUT LIMITATION, THOSE HOLDERS OF CLAIMS OR INTERESTS WHO DO NOT SUBMIT BALLOTS TO ACCEPT OR REJECT THE PLAN OR WHO ARE NOT ENTITLED TO VOTE ON THE PLAN) WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

THE DISCLOSURE STATEMENT MAY CONTAIN "FORWARD-LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995.  SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR

OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY.  THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS.  THE DISTRIBUTION PROJECTIONS AND OTHER INFORMATION CONTAINED HEREIN AND ATTACHED HERETO ARE ESTIMATES ONLY, AND THE TIMING AND AMOUNT OF ACTUAL DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS MAY BE AFFECTED BY MANY FACTORS THAT CANNOT BE PREDICTED.  THEREFORE, ANY ANALYSES, ESTIMATES OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.  DUE TO THESE UNCERTAINTIES, READERS CANNOT BE ASSURED THAT ANY FORWARD-LOOKING STATEMENTS WILL PROVE TO BE CORRECT.  THE DEBTOR IS UNDER NO OBLIGATION TO (AND EXPRESSLY DISCLAIMS ANY OBLIGATION TO) UPDATE OR ALTER ANY FORWARD-LOOKING STATEMENTS WHETHER AS A RESULT OF NEW INFORMATION, FUTURE EVENTS, OR OTHERWISE, UNLESS INSTRUCTED TO DO SO BY THE BANKRUPTCY COURT.

NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THE DISCLOSURE STATEMENT.  THE DEBTOR URGES EACH HOLDER OF A CLAIM OR AN INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THE DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY.  FURTHERMORE, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURE CONTAINED IN THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN.

IT IS THE DEBTORS' POSITION THAT THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION OR WAIVER.  RATHER, HOLDERS OF CLAIMS AND INTERESTS AND OTHER ENTITIES SHOULD CONSTRUE THE DISCLOSURE STATEMENT AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR CAUSE OF ACTION, CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT.  THE DEBTOR MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE CLAIMS AND MAY OBJECT TO CLAIMS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR OBJECTIONS TO CLAIMS.  THE PLAN RESERVES FOR THE DEBTORS THE RIGHT TO BRING CAUSES OF ACTION (DEFINED IN THE PLAN) AGAINST ANY ENTITY OR PARTY IN INTEREST EXCEPT THOSE SPECIFICALLY RELEASED.

THE DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTORS' CHAPTER 11 CASES AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE.  ALTHOUGH THE DEBTOR BELIEVES THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS.  IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THE DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN FOR ALL PURPOSES.  FACTUAL INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED.  THE DEBTORS DO NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

THE DEBTORS' MANAGEMENT HAS REVIEWED THE FINANCIAL INFORMATION PROVIDED IN THE DISCLOSURE STATEMENT.  ALTHOUGH THE DEBTORS HAVE USED REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THIS FINANCIAL INFORMATION, NO ENTITY HAS AUDITED THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THE DISCLOSURE STATEMENT.

THE DEBTORS ARE MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THE DISCLOSURE STATEMENT AS OF THE DATE HEREOF, UNLESS OTHERWISE SPECIFICALLY NOTED.  ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THE DISCLOSURE STATEMENT, THE DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO SO.  HOLDERS OF CLAIMS AND INTERESTS REVIEWING THE DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DEBTORS FILED THE DISCLOSURE STATEMENT. HOLDERS OF CLAIMS AND INTERESTS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN MUST RELY ON THEIR OWN EVALUATION OF THE DEBTORS AND THEIR OWN ANALYSIS OF THE TERMS OF THE PLAN, INCLUDING, WITHOUT LIMITATION, ANY RISK FACTORS CITED HEREIN, IN DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN.

THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THE DISCLOSURE STATEMENT.  THE DEBTOR HAS NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR ASSETS OTHER THAN AS SET FORTH IN THE DISCLOSURE STATEMENT.

(iv)

PRIOR TO DECIDING WHETHER AND HOW TO VOTE ON THE PLAN, EACH HOLDER OF A CLAIM IN A VOTING CLASS SHOULD CONSIDER CAREFULLY ALL OF THE INFORMATION IN THE DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL HEREIN.

ALL CAPITALIZED TERMS IN THE DISCLOSURE STATEMENT NOT OTHERWISE DEFINED HEREIN HAVE THE MEANINGS GIVEN TO THEM IN THE PLAN, ATTACHED TO THE DISCLOSURE STATEMENT AS EXHIBIT A.

**THE DEBTORS SUPPORT CONFIRMATION OF THE PLAN AND URGE ALL HOLDERS OF CLAIMS WHOSE VOTES ARE BEING SOLICITED TO ACCEPT THE PLAN.**

**IRS CIRCULAR 230 NOTICE: TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THE DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

TABLE OF CONTENTS

Page

**ARTICLE I INTRODUCTION AND OVERVIEW**....................................................................1

    Section 1.01.     General..............................................................................................1
    Section 1.02.     Classification of Claims and Interests .............................................5
    Section 1.03.     Voting; Holders of Claims Entitled to Vote ...................................5
    Section 1.04.     Solicitation Process .........................................................................8
    Section 1.05.     Confirmation Hearing ......................................................................9
    Section 1.06.     Important Matters ............................................................................9

**ARTICLE II BACKGROUND TO THIS CHAPTER 11 CASE** ...........................................10

    Section 2.01.     The Debtors' Business ...................................................................10
    Section 2.02.     Summary of Prepetition Indebtedness...........................................11
    Section 2.03.     The Debtors' Existing Equity Structure ........................................11
    Section 2.04.     Licenses and Trademarks...............................................................11
    Section 2.05.     Recent Financial Results................................................................11

**ARTICLE III EVENTS LEADING TO THIS CHAPTER 11 CASE**.....................................12

    Section 3.01.     Prepetition Events..........................................................................12

**ARTICLE IV ADMINISTRATION OF THE CHAPTER 11 CASE**.....................................14

    Section 4.01.     Overview of Chapter 11.................................................................14
    Section 4.02.     Relevant Case Background .............................................................14
    Section 4.03.     No Distributions to Interests. ........................................................18

**ARTICLE V SUMMARY OF THE PLAN** .........................................................................18

    Section 5.01.     Summary........................................................................................18
    Section 5.02.     Exit Funding..................................................................................19
    Section 5.03.     Provisions for Treatment of Unclassified Claims ........................19
    Section 5.04.     Provisions for Treatment of Classified Claims. ...........................21
    Section 5.05.     Acceptance or Rejection of the Plan .............................................22
    Section 5.06.     "Confirmation Pursuant to Section 1129(b) of the
                        Bankruptcy Code or "Cramdown" ...............................................22
    Section 5.07.     Voting Classes ...............................................................................23
    Section 5.08.     Confirmation of all Cases .............................................................23

**ARTICLE VI MEANS OF PLAN IMPLEMENTATION** ...................................................23

    Section 6.01.     Introduction...................................................................................23
    Section 6.02.     Corporate Action Non-Voting Securities. ....................................23
    Section 6.03.     Effective Date Transactions ..........................................................24
    Section 6.04.     Securities Registration Exemption ................................................25
    Section 6.05.     Corporate Governance ...................................................................25
    Section 6.06.     Cancellation of Existing Securities and Agreements ...................25
    Section 6.07.     Incentive Stock Option Plan ..........................................................25
    Section 6.08.     Intercompany Claims......................................................................25

Section 6.09.    Obligations Incurred After the Effective Date .........................................25
Section 6.10.    Post-Confirmation Operating Reports and United States
                 Trustee Fees. ..........................................................................................26

**ARTICLE VII PRESERVATION AND PROSECUTION OF CAUSES OF
          ACTION HELD BY THE DEBTORS.........................................................26**

Section 7.01.    Preservation and Prosecution of Causes of Action. .................................26

**ARTICLE VIII PROVISIONS FOR TREATMENT OF DISPUTED
          CLAIMS .......................................................................................................26**

Section 8.01.    Objections to Claims. ..............................................................................26
Section 8.02.    No Payment or Distribution Pending Allowance. .....................................27
Section 8.03.    Disputed Distributions .............................................................................27
Section 8.04.    Estimation. ..............................................................................................27
Section 8.05.    Reserve Account for Disputed Claims .....................................................27
Section 8.06.    Release of Funds from Claims Reserves ..................................................28

**ARTICLE IX DISTRIBUTIONS UNDER THE PLAN .........................................28**

Section 9.01.    Limitation to Full Recovery ....................................................................28
Section 9.02.    Timing of Distributions. ..........................................................................28
Section 9.03.    Saturdays, Sundays, or Legal Holidays. ..................................................28
Section 9.04.    Distribution Record Date. ........................................................................29
Section 9.05.    Delivery of Distributions. ........................................................................29
Section 9.06.    Method of Cash Distributions. .................................................................29
Section 9.07.    Unclaimed Property. ................................................................................29
Section 9.08.    Compliance with Tax Requirements. .......................................................30
Section 9.09.    Setoffs. ....................................................................................................30
Section 9.10.    Documentation Necessary to Release Lien. ..............................................30
Section 9.11.    Distributions Under Fifty Dollars ...........................................................30

**ARTICLE X EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
          INDEMNIFICATION OBLIGATIONS...................................................31**

Section 10.01.   General Treatment. ..................................................................................31
Section 10.02.   Bar Date for Filing Proofs of Claim Relating to Executory
                 Contracts and Unexpired Leases Rejected Pursuant to the
                 Plan .........................................................................................................31
Section 10.03.   Treatment of Rejection Claims. ...............................................................31
Section 10.04.   Reinstatement and Continuation of Insurance Policies. ...........................31

**ARTICLE XI EFFECT OF CONFIRMATION .......................................................32**

Section 11.01.   Binding Effect. ........................................................................................32
Section 11.02.   Continued Corporate Existence. ..............................................................32
Section 11.03.   Vesting of Property. .................................................................................32
Section 11.04.   Discharge of Claims Against and Interests in the Debtor.........................32
Section 11.05.   Injunction. ...............................................................................................32
Section 11.06.   Releases. .................................................................................................33
Section 11.07.   Injunction Related to Releases and Exculpation. .....................................35

(vii)

Section 11.08.   Retention of Causes of Action/Reservation of Rights..............................35
Section 11.09.   Term of Injunctions or Stays....................................................................35

**ARTICLE XII RETENTION OF JURISDICTION ...............................................................36**

Section 12.01.   Exclusive Jurisdiction of Bankruptcy Court. ...........................................36

**ARTICLE XIII CONFIRMATION AND EFFECTIVENESS OF THE PLAN...................38**

Section 13.01.   Conditions Precedent to Confirmation. ....................................................38
Section 13.02.   Conditions Precedent to the Effective Date. .............................................38
Section 13.03.   Dissolution of Creditors' Committee .......................................................39
Section 13.04.   Waiver of Conditions Precedent and Bankruptcy Rule
3020(e) Automatic Stay. ...........................................................................39
Section 13.05.   Statutory Confirmation Requirements ......................................................39

**ARTICLE XIV CERTAIN FEDERAL INCOME TAX CONSEQUENCES
OF THE PLAN...................................................................................42**

Section 14.02.   Consequences to the Debtors. ..................................................................45

**ARTICLE XV SECURITIES LAW MATTERS ..................................................................46**

Section 15.01.   General..........................................................................................46
Section 15.02.   New Common Stock..................................................................................46

**ARTICLE XVI SUMMARY OF VOTING PROCEDURES ................................................48**

**ARTICLE XVII CERTAIN FACTORS TO BE CONSIDERED
REGARDING THE PLAN ................................................................49**

Section 17.01.   Certain Bankruptcy Considerations...........................................................49
Section 17.02.   Certain Tax Consequences of the Plan Raise Unsettled and
Complex Legal Issues and Involve Factual Determinations.....................51
Section 17.03.   Risks Associated with the Business. .........................................................51

**ARTICLE XVIII MISCELLANEOUS PROVISIONS .........................................................52**

Section 18.01.   Binding Effect of Plan. .............................................................................52
Section 18.02.   Severability. .............................................................................................52
Section 18.03.   Governing Law..........................................................................................52
Section 18.04.   Notices .....................................................................................................53
Section 18.05.   Filing of Additional Documents................................................................53
Section 18.06.   Time..........................................................................................................53
Section 18.07.   Exhibits/Schedules. ..................................................................................54
Section 18.08.   Defenses with Respect to Impaired or Unimpaired Claims......................54
Section 18.09.   No Injunctive Relief. ................................................................................54
Section 18.10.   No Admissions. .........................................................................................54
Section 18.11.   Extension of Time .....................................................................................54
Section 18.12.   Payment of Statutory Fees .......................................................................54
Section 18.13.   Conflict .....................................................................................................54
Section 18.14.   Reservation of Rights ...............................................................................55
Section 18.15.   Modifications and Amendments ...............................................................55
Section 18.16.   Continuing Exclusivity and Solicitation Period .......................................55

Section 18.17.    Compromises and Settlements .............................................................55
Section 18.18.    Revocation, Withdrawal, or Non-Consummation .................................56

**ARTICLE XIX ALTERNATIVES TO CONFIRMATION OF THE PLAN** .......................**56**

**ARTICLE XX CONCLUSION** ...........................................................................................**57**

**ARTICLE XXI DEBTORS' RECOMMENDATION** ...........................................................**58**

(ix)

## EXHIBITS

EXHIBIT A          Plan of Reorganization

EXHIBIT B          Financial Projections

EXHIBIT C          Liquidation Analysis

---

**THE DEBTORS HEREBY ADOPT AND INCORPORATE EACH EXHIBIT ATTACHED TO THIS DISCLOSURE STATEMENT BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN.**

---

(x)

# ARTICLE I

# INTRODUCTION AND OVERVIEW

**Section 1.01.     General.**

iON Worldwide Inc. ("iON Worldwide") and iON America LLC "iON America" and together with iON Worldwide (the "Company" or the "Debtors") as debtors and debtors in possession, hereby transmit the Disclosure Statement (as may be amended, supplemented or otherwise modified from time to time, the "Disclosure Statement") pursuant to section 1125 of title 11 of the United States Code, 11 U.S.C. §§ 101- 1532, as amended (the "Bankruptcy Code"), in connection with the Debtors' solicitation of votes (the "Solicitation") to confirm the Chapter 11 Plan of Reorganization dated as of September [    ] 2016, a copy of which is attached to the Disclosure Statement as Exhibit A (as may be amended, the "Plan").[2]

The purpose of the Disclosure Statement is to set forth information concerning: (i) the history of the Debtors and their businesses; (ii) the Chapter 11 Cases; and (iii) the Plan and alternatives to the Plan.  The Disclosure Statement also notifies Holders of Claims and Interests of their rights under the Plan, and guides Holders of Claims entitled to vote on the Plan, so they may make an informed judgment regarding whether they should vote to accept or reject the Plan.

The Plan described in the Disclosure Statement provides for the Debtors' emergence from the Chapter 11 Cases, which the Company anticipates will occur in October 2016.  The Plan provides for the reorganization of the Company's capital structure with the Company's issued and outstanding equity interests being cancelled and new common stock being issued to SkyLight Holdings, LLC ("Sky Light") who is financing the distributions under the Plan and the Debtors' anticipated working capital needs.

On June 24, 2016, each of the Debtors filed for Chapter 11. The filings were made in the United States Bankruptcy Court in Delaware.

Prior to the Petition Date, and following careful consideration of all alternatives, the Debtors determined that the commencement of the Chapter 11 Cases were prudent and necessary steps to maximize the going concern value of the Debtors' businesses.  Through the commencement of the Chapter 11 Cases, the Debtors intended to restructure their debt obligations while continuing normal operations.  The Plan is premised on a Restructuring Support Agreement with funding of up to $12,000,000 to be provided by Sky Light.  Proceeds of the funding will be used to make Plan distributions to the claims of creditors when such claims become Allowed Claims.  Under the Plan, Sky Light will commit to invest an aggregate capital commitment of up to $12,000,000, and in exchange will receive 100% of the New Common Stock issued by the Company.  Existing equity interests of the Debtors will be cancelled.   Non-priority Claims are impaired, but Holders of such Claims will receive their pro rata portion of cash on account of such claims, each as set forth in the Plan.  Importantly, the proposed debt and equity restructuring pursuant to the proposed Plan will enhance the Debtors' liquidity and reduce its leverage.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in Section 1.01 of the Plan.

On September   ], 2016, after notice and a hearing, the Bankruptcy Court entered an order:  (i) Granting Approval of the Proposed Disclosure Statement to Accompany the Debtors' Chapter 11 Plan Of Reorganization; (ii) Scheduling a Hearing to Confirm the Chapter 11 Plan of Reorganization; (iii) Prescribing Notice and Solicitation Procedures; and (iv) Establishing Deadlines and Procedures for Filing Objections to the Confirmation of Plan.  **The Order establishes [   ], 2016 at 4:00 p.m. (prevailing Eastern Time) as the deadline for the return of Ballots accepting or rejecting the Plan (the "<u>Voting Deadline</u>").  APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT, HOWEVER, CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN.**

The Disclosure Statement Order sets forth in detail the deadlines, procedures and instructions for voting to accept or reject the Plan, and for filing objections to confirmation of the Plan, the record date for voting purposes and the applicable standards for tabulating Ballots.  In addition, detailed voting instructions accompany each Ballot.  Each Holder of a Claim entitled to vote on the Plan should read the Disclosure Statement and the Exhibits hereto, including the Plan and the Disclosure Statement Order, as well as the instructions accompanying the Ballot in their entirety before voting on the Plan.  These documents contain important information concerning the classification of Claims and Interests for voting purposes and the tabulation of votes.  No solicitation of votes may be made except pursuant to the Disclosure Statement and section 1125 of the Bankruptcy Code.  In voting on the Plan, Holders of Claims entitled to vote should not rely on any information relating to the Debtor and its business other than the information contained in the Disclosure Statement, the Plan and all Exhibits hereto and thereto.

Under the Plan, Holders of Allowed Class 4 General Unsecured Claims shall receive their Pro Rata Shares of $2,605,000 on the Effective Date and of the first $100,000 of the Go Pro litigation recoveries.

Based on the expected recoveries, the Creditors' Committee also supports the Plan.  The Debtors submit that, because Holders of Allowed General Unsecured Claims would receive no recoveries under a liquidation, the Plan presents the best options for such Holders.

THE DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL AND DETAILED REVIEW AND ANALYSIS OF THE PLAN.  THE DISCLOSURE STATEMENT IS INTENDED TO AID AND SUPPLEMENT THAT REVIEW.  THE DESCRIPTION OF THE PLAN HEREIN IS ONLY A SUMMARY.  HOLDERS OF CLAIMS AND INTERESTS AND OTHER PARTIES-IN-INTEREST ARE CAUTIONED TO REVIEW THE PLAN AND ANY RELATED EXHIBITS AND ATTACHMENTS FOR A FULL UNDERSTANDING OF THE PLAN'S PROVISIONS.  THE DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN.

Additional copies of the Disclosure Statement (including the Exhibits hereto) are available upon request made to the Debtors' balloting agent, iON Worldwide, Inc., et al., c/o Parcels, Inc., P.O. Box 646, Attn: Joseph King, New Castle, DE 19720.

In addition, a Ballot for voting to accept or reject the Plan is enclosed with the Disclosure Statement for the Holders of Claims that are entitled to vote to accept or reject the Plan. If you

are a Holder of a Claim entitled to vote on the Plan and did not receive a Ballot, received a damaged Ballot or lost your Ballot, or if you have any questions concerning the procedures for voting on the Plan, please contact the balloting agent for the Debtors at the address and phone number listed above.

Each Holder of a Claim entitled to vote on the Plan should read the Disclosure Statement, the Plan, the other Exhibits attached hereto and the instructions accompanying the Ballots in their entirety before voting on the Plan.  These documents contain important information concerning the classification of Claims and Interests for voting purposes and the tabulation of votes.

The Plan organizes the Debtors' creditor and equity constituencies into groups called "Classes."  For each Class, the Plan describes (a) the underlying "Claim" or "Interest," (b) the recovery available to the Holders of Claims or Interests in that Class under the Plan, (c) whether the Class is "Impaired" under the Plan, meaning that each Holder will receive less than the full value on account of its Claim or Interest or that the rights of Holders under law will be altered in some way (such as receiving stock instead of holding a Claim) and (d) the form of consideration (*e.g.*, Cash, stock or a combination thereof), if any, that such Holders will receive on account of their respective Claims or Interests.

The table below provides a summary of the classification, treatment and estimated recoveries of Claims and Interests under the Plan.  This information is provided in summary form below for illustrative purposes only, is subject to material change based on contingencies related to the claims reconciliation process, and is qualified in its entirety by reference to the provisions of the Plan.

**THE ESTIMATED PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND ARE THEREFORE SUBJECT TO CHANGE.**

3857001-2

**SUMMARY OF TREATMENT OF CLAIMS AND INTERESTS AND ESTIMATED RECOVERIES**

| Class | Treatment of Claims and Interests | Estimated Aggregate Claims | Estimated Percent Recovery |
|---|---|---|---|
| Class 1: Priority Non-Tax Claims | Except to the extent a Holder of a Priority Non-Tax Claim agrees to different treatment, each Holder of an Allowed Priority Non-Tax Claim will be paid, in full and complete satisfaction, settlement, and release of and in exchange for such Allowed Priority Non-Tax Claim, the Allowed Amount of such Allowed Priority Non-Tax Claim in full in Cash on later of the Effective Date and the first Distribution Date subsequent to the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim. | $150,000 | 100% |
| Class 2: Sky Light Secured Claim | Sky Light, on account of the Sky Light Secured Claim will receive, in full and complete extinguishment, satisfaction, settlement and release of such Claim and the Sky Light DIP Claim, 100% of the New Common Stock of the Reorganized Debtors on the Effective Date. | $4,896,753.37 | 100% |
| Class 3: Kim POV Secured Claim | The Holder of the Kim POV Secured Claim he Holder of the Kim POV Secured Claim shall be allowed in the amount of $4,615,237 and shall receive, a cash payment of $3,195,000 in full and complete satisfaction, settlement and release of such Secured Claim. | $4,615,237 | Approximately 69% |
| Class 4: General Unsecured Claims | Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to different treatment, each Holder of an Allowed General | Approximately $15,880,000 | Approximately 13-17% |

4

3857001-2

| | | | |
|---|---|---|---|
| | Unsecured Claim shall receive, in full and complete satisfaction, settlement and release of and in exchange for such Allowed General Unsecured Claim, its Pro Rata Share of (x) $2,605,000 on the Effective Date; and (y) the GoPro GUC Recovery, for a maximum total recovery for the Class of $2,705,000. | | |
| Class 5: Existing Interests | The Holders of existing Interests will receive no distributions and such interests shall be extinguished and cancelled under the Plan.  On the Effective Date, the New Common Stock shall be issued to Sky Light. | -- | -0- |

The Debtor and the Creditors' Committee believes that the Plan provides the best recoveries possible for Holders of Allowed Claims and Interests and strongly recommends that, if such Holders are entitled to vote, they vote to accept the Plan.

### Section 1.02.        Classification of Claims and Interests

The following table designates the Classes of Claims against and Interests in the Debtor, and specifies which Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, or (c) deemed to accept or reject the Plan.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | No | No (Deemed to accept) |
| Class 2 | Sky Light Claims | Yes | Yes |
| Class 3 | Kim POV Claims | Yes | Yes |
| Class 4 | General Unsecured Claims | Yes | Yes |
| Class 5 | Existing Interests | Yes | No (Deemed to reject) |

### Section 1.03.        Voting; Holders of Claims Entitled to Vote

Pursuant to the provisions of the Bankruptcy Code, only holders of allowed claims or equity interests in classes of claims or equity interests that are impaired and that are not deemed to have rejected a plan of reorganization are entitled to vote to accept or reject such proposed plan.  Generally, a claim or interest is impaired under a plan if the holder's legal, equitable or contractual rights are altered under such plan.  Classes of claims or equity interests under a chapter 11 plan in which the holders of claims or equity interests are unimpaired are deemed to have accepted such plan and are not entitled to vote to accept or reject the proposed plan.  In

5

addition, classes of claims or equity interests in which the holders of claims or equity interests will not receive or retain any property on account of their claims or equity interests are deemed to have rejected the plan and are not entitled to vote to accept or reject the plan.

In connection with the Plan:

- Claims in Classes 2, 3 and 4 are Impaired and the Holders of such Claims will receive distributions under the Plan. As a result, Holders of Claims in Classes 2, 3 and 4 are entitled to vote to accept or reject the Plan;

- Claims in Class 1 are Unimpaired. As a result, Holders of Claims in Class 1 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan; and

- Interests in Class 5 are Impaired and the Holders of such Interests will not receive any distribution on account of such Interests. As a result, the Holders of Interests in Class 5 are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

The Bankruptcy Code defines "acceptance" of a plan by a class of claims as acceptance by creditors in that class that hold at least two-thirds in dollar amount and more than one-half in number of the claims that cast ballots for acceptance or rejection of the plan. **Your vote on the Plan is important**. The Bankruptcy Code requires as a condition to confirmation of a plan of reorganization that each class that is impaired and entitled to vote under a plan vote to accept such plan, unless the provisions of section 1129(b) of the Bankruptcy Code are met.

Because the Plan is deemed rejected by at least one Class, the Debtors intend to request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code permits the confirmation of a plan of reorganization notwithstanding the non-acceptance of a plan by one or more impaired classes of claims or equity interests, so long as at least one impaired class of claims or interests votes to accept the plan. Under that section, a plan may be confirmed by a bankruptcy court if it does not "discriminate unfairly" and is "fair and equitable" with respect to each non-accepting class.

If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for the purpose of voting on the Plan. The Disclosure Statement, the Exhibits attached hereto, the Plan and the related documents are the only materials the Debtors are providing to creditors for their use in determining whether to vote to accept or reject the Plan, and such materials may not be relied upon or used for any purpose other than to vote to accept or reject the Plan.

Please complete, execute and return your Ballot(s) to the balloting agent for the Debtors at the address below:

BALLOTS MUST BE RETURNED TO PARCELS, INC BY FIRST CLASS MAIL TO:

iON Worldwide, Inc., et al
c/o Parcels, Inc.

3857001-2

       P.O. Box 646
       Attn: Joseph King
       New Castle, Delaware 19720

OR BY HAND DELIVERY OR OVERNIGHT MAIL TO:

       iON Worldwide, Inc., et al
       c/o Parcels, Inc.
       230 North Market Street
       Attn: Joseph King
       Wilmington, Delaware 19801

TO BE COUNTED, YOUR ORIGINAL BALLOT INDICATING ACCEPTANCE OR REJECTION OF THE PLAN MUST BE <u>ACTUALLY</u> RECEIVED BY COUNSEL FOR THE DEBTORS NO LATER THAN **4:00 P.M., PREVAILING EASTERN TIME**, ON [   ], 2016 UNLESS EXTENDED BY THE DEBTORS.  YOUR BALLOT MAY BE SENT VIA MAIL, OVERNIGHT COURIER OR MESSENGER.  ALL BALLOTS MUST BE SIGNED.

       The Ballots have been specifically designed for the purpose of soliciting votes on the Plan from the Classes entitled to vote with respect thereto.  Accordingly, in voting on the Plan, please use only the Ballots sent to you with the Disclosure Statement or provided by the Debtors' counsel.

       The Debtors have fixed **4:00 p.m. (prevailing Eastern Time) on [   ], 2016** (the "Voting Record Date"), as the time and date for the determination of Persons who are entitled to receive a copy of the Disclosure Statement and all of the related materials and to vote whether to accept or reject the Plan.  Accordingly, only Holders of record of Claims as of the Voting Record Date that are entitled to vote on the Plan, will receive a Ballot and may vote on the Plan.

       All properly completed Ballots received prior to the Voting Deadline will be counted for purposes of determining whether a voting Class of impaired Claims has accepted the Plan. Counsel for the Debtor swill prepare and file with the Bankruptcy Court a certification of the results of the balloting with respect to the Class entitled to vote.

       THE DEBTORS AND THE CREDITORS' COMMITTEE BELIEVE THAT CONFIRMATION OF THE PLAN IS IN THE BEST INTERESTS OF ALL HOLDERS OF CLAIMS AND RECOMMEND THAT ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.

       The Debtors' legal advisor is Olshan Frome Wolosky LLP, and can be contacted at:

    Olshan Frome Wolosky LLP
    Attention:  Michael S. Fox, Esq.       mfox@olshanlaw.com
              Jonathan T. Koevary, Esq.     jkoevary@olshanlaw.com

The Creditors' Committee legal advisor is Benesch, Friedlander, Coplan & Aronoff LLP, and can be contacted at:

> Benesch, Friedlander, Coplan & Aronoff LLP
> Attention: Michael J. Barrie, Esq.          mbarrie@beneschlaw.com
> Jennifer Hoover, Esq.          jhoover@beneschlaw.com

### Section 1.04.          Solicitation Process

The following documents and materials will constitute the Debtors' Solicitation Package which may be sent, at the Debtors' option, by hard copy book or CD-ROM:

- Plan;

- Disclosure Statement;

- Order approving the Disclosure Statement and related Solicitation Procedures ("Disclosure Statement Order");

- Notice of the hearing at which confirmation of the Plan will be considered ("Confirmation Hearing Notice");

- Appropriate ballot and voting instructions; and

- Pre-addressed, postage prepaid return envelope.

The Debtors intend to distribute the Solicitation Packages no fewer than twenty-eight (28) calendar days before the Voting Deadline or on such other schedule as is approved by the Bankruptcy Court.  The Debtors submit that distribution of the Solicitation Packages at least twenty-eight (28) calendar days prior to the Voting Deadline or on such other schedule as is approved by the Bankruptcy Court will provide the requisite materials to Holders of Claims entitled to vote on the Plan in compliance with Bankruptcy Rules 3017(d) and 2002(b).

The Solicitation Package will be distributed to Holders of Claims in Classes 2, 3 and 4 as of the Voting Record Date and in accordance with the Solicitation Procedures.  The Solicitation Package (except the Ballots) is also available by email at info-ionworldwide@parcelsinc.com or by writing iON Worldwide, Inc., et al., c/o Parcels, Inc., P.O. Box 646, Attn: Joseph King, New Castle, DE 19720.

Other parties entitled to receive the Solicitation Packages, including the IRS and other relevant taxing authorities, will be served paper or electronic copies of the order approving the Disclosure Statement, the Disclosure Statement and all exhibits to the Disclosure Statement, including the Plan, and the Confirmation Hearing Notice.

### Section 1.05.        Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan.  Section 1128(b) of the Bankruptcy Code provides that any party-in-interest may object to confirmation of the Plan.

**The Confirmation Hearing will commence on [      ], 2016 at [     ].m., prevailing Eastern Time**, before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware.  The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any adjournment thereof.

**The Plan Objection Deadline is 4:00 p.m. prevailing Eastern Time on [     ], 2016**.  All objections to the Plan must be filed with the Bankruptcy Court and served on the Debtors and certain other parties in accordance with the Disclosure Statement Order on or before the Plan Objection Deadline.  In accordance with the Confirmation Hearing Notice filed with the Bankruptcy Court, objections to the Plan or requests for modifications to the Plan, if any, must:

- Be in writing;

- Conform to the Bankruptcy Rules and the Local Bankruptcy Rules;

- State the name and address of the objecting Creditor and the amount and nature of the Claim or Interest of such Creditor;

- State with particularity the basis and nature of the objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and

- Be filed, contemporaneously with proof of service, with the Bankruptcy Court and served so that it is **actually received** by the notice parties identified in the Confirmation Hearing Notice on or prior to the Plan Objection Deadline.

**THE BANKRUPTCY COURT MAY NOT CONSIDER OBJECTIONS TO THE PLAN UNLESS THEY ARE TIMELY SERVED AND FILED IN COMPLIANCE WITH THE PROCEDURES SET FORTH IN THE DISCLOSURE STATEMENT ORDER.**

### Section 1.06.        Important Matters

The Disclosure Statement contains projected financial information and certain other forward-looking statements, all of which are based on various estimates and assumptions and will not be updated to reflect events occurring after the date hereof.  Such information and statements are subject to inherent uncertainties and to a wide variety of significant business, economic and competitive risks, including, among others, those described herein.  Consequently, actual events, circumstances, effects and results may vary significantly from those included in or

9

contemplated by such projected financial information and such other forward-looking statements. The projected financial information contained herein and in the Exhibits annexed hereto is, therefore, not necessarily indicative of the future financial condition or results of operations of the Debtors, which in each case may vary significantly from those set forth in such projected financial information. Consequently, the projected financial information and other forward-looking statements contained herein should not be regarded as representations by any of the Debtors, the Reorganized Debtors, their advisors, or any other Person that the projected financial conditions or results of operations can or will be achieved.

# ARTICLE II

# BACKGROUND TO THIS CHAPTER 11 CASE

### Section 2.01.        The Debtors' Business

### 1.        The Debtors' Operations

On June 24, 2016, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the stated intent of restructuring the Debtors and its outstanding indebtedness. The Debtors have operated and remained Debtors-In-Possession.

The Debtors are headquartered at 513 S. Lenola Road, Unit 101, Moorestown, New Jersey 08057.

Through these Chapter 11 Cases, the Debtors seek to reduce the substantial debt burden that hinders its ability to effectively compete in a competitive market that has been challenged by overall economic conditions. A successful restructuring will allow the Debtors to concentrate their resources on generating revenue and expanding market share. To this end, the Debtors and their advisors have been negotiating with the Debtors' key pre-petition secured creditor and unsecured constituencies to ensure its business continues to operate as a going concern.

Ultimately, these arms-length negotiations have been successful, and have culminated in the Restructuring Support Agreement and a new 5 year non-exclusive license with Contour IP Holding LLC. The Debtors and the Creditors' Committee firmly believe that the Plan will maximize the value of the Debtors' Estates and provides the best recovery to the Debtors' stakeholders.

### 2.        Employees

As of the Petition Date, the Debtor employed five people. None of the employees are represented by a collective bargaining unit.

### 3.        Officers

As of the date hereof, the Debtor has two individuals comprising the Debtors' senior management. These individuals are Giovanni Tomaselli and Chris Oatway.

10

### 4.     Board Members

As of the Date hereof, the Debtor has one individual comprising the Debtors' board.  This individual is Giovanni Tomaselli.

### 5.     Corporate Structure

The Debtors consist of a holding company and its wholly owned operating subsidiary.

## Section 2.02.     Summary of Prepetition Indebtedness

The Debtors are highly leveraged, with a total in excess of $10 million in prepetition secured debt, and another $15.7 million in general unsecured debt as of the Petition Date, as more fully described below:

Secured Lender Sky Light: $4,896,753.37; Secured Lender Kim POV: $4,615,237; general unsecured debt: (approximately) $15,700,000.

## Section 2.03.     The Debtors' Existing Equity Structure

Debtor iON Worldwide Inc. is a Delaware corporation, with approximately 65 million shares of common stock outstanding.  Debtor iON America LLC is a New Jersey limited liability company that is wholly owned by Debtor iON Worldwide Inc.

## Section 2.04.     Licenses and Trademarks

Currently, the Debtors design, develop, manufacture and sell wearable point of view action cameras that utilize some of the Intellectual Property owned by Contour IP Holding LLC. They operate under a Non-Exclusive License Agreement with Contour IP Holding LLC.

## Section 2.05.     Recent Financial Results.

In 2014, the Debtors achieved over $25 million in revenues and became the one of the leaders in the POV camera market.  In 2015, sales declined to under $15 million due to many factors.  First, while the company raised approximately 10 million in equity in 2015, these amounts were not sufficient to continue to support the growth of the business and their capital intensive needs.  The Debtors require liquidity and capital for their business, including in connection with the manufacturing of products, investment in significant "point of sale" expenses required by retailers, and replenishment inventory needed to sell to their customers. After the Debtors raised equity capital in 2015, they were unable to timely secure a needed line of credit which was required to grow the business and support these expenses.  In an effort to address their liquidity constraints, the Debtors implemented a number of cost cutting measures, including termination of personnel, salary reductions for certain senior level executives, and other reductions in overhead.  However, due to the continuing deterioration of the current economy, the Debtors' liquidity continued to be negatively impacted.  As a consequence of such events, amounts payable by the Debtors to their suppliers were not paid in full, even by their extended due dates.

Through the year ending December 2015, the Debtors generated revenues of $12.4 million and an EBITDA loss of $15.5 million.

# ARTICLE III

# EVENTS LEADING TO THIS CHAPTER 11 CASE

**Section 3.01.        Prepetition Events**

A.        **Contour IP Holding LLC and Contour LLC**

iON was previously a party to an exclusive license agreement with Contour for the use of Contour's Intellectual Property in some of its cameras.  Because iON was unable to make certain required payments, the prior exclusive license agreement was terminated and converted to a limited non-exclusive license agreement.

By notice dated February 2, 2016, as a result of certain alleged defaults, Contour (i) terminated the License Agreement and (ii) redeemed all of the ownership interests held by iON Worldwide in Contour IP Holding.  The Debtors initially disputed the termination and do not believe the License Agreement was lawfully or properly terminated.

On February 19, 2016, the Contour parties commenced an action in the United States District Court for the District of Utah-Central Division, seeking, inter alia, a declaration that the License Agreement was terminated, alleging patent infringement, and fraud. Absent a resolution, the Debtors would have used the automatic stay to stabilize their businesses and thereafter, in the appropriate forum, vigorously defend the lawsuit.

On June 10, 2016, following many months of negotiation to resolve the disputes between Contour and the Debtors, an integrated and comprehensive series of agreements were executed that resolved the disputes between the parties.  The result of these agreements provided the Debtors with a clear path for the Debtors to return its attention to the health of the core "iON" model business.  While the agreements provided for the return of the "Contour" name and other assets, they provided the Debtors' with a new contractual agreement (including a new license agreement and a modified interest in the funds to be paid to the Debtors on account of a sale of the IP or from the realization of funds flowing from the Go Pro lawsuit) that should enable the Debtors to move forward.

The Settlement Agreement between the Debtors and Contour further resolved the monetary[3] interests that the Debtors own with regard to the GoPro Patent Inferences Lawsuit

---

[3] The Debtors were able to negotiate a sharing in the proceeds from the GoPro Patent Lawsuit.  Under the Settlement Agreement reached with Contour, the sharing can provide the Debtors with proceeds realized above a Liquidation Preference of approximately $35 million (maybe be more depending on the funding of the legal costs), and, of course, a function of the realization.  The precise timing of this sharing is unknown as well as the amount.  However, the maximum that the Debtors could receive under the waterfall would be up to $28 million.  Further, depending on when any realization occurs, the 5-year, non-exclusive licenses that the Debtors have may be terminated and subject to a 6-month run off.

12

(*Contour IP Holding LLC v. GoPro Inc., et al*., Civil No.: 1:15-CV-01108-LPS-CJB) pending in the United States District Court for the District of Delaware.

### B.        Restructuring Support Agreement

The Debtors were party to a loan agreement with SF IV iON, LLC ("Stabilis").  The loan was secured by all the Debtors Assets.  A note dated May 1, 2015 in the original principal amount of $5,000,000 was executed by the Debtors. Following a default and prior to the Petition Date, Stabilis assigned its note to Sky Light.

On December 18, 2015, Stabilis noticed the default on its loan.  Thereafter on February 5, 2016, Stabilis accelerated the note and made a demand for payment to the Debtors.  The Debtors could not pay and operated on very little cash thereafter.   During the winter and spring of 2016, the Debtors, with the assistance of counsel, reached out to and entered into negotiations with a many parties world-wide seeking a solution for its business.

Sky Light expressed interest in purchasing the entire first-lien credit agreement and position from Stabilis.  Prior to the purchase, Sky Light discussed with Stabilis the terms and conditions on which they would forbear on the default to allow their time to further due diligence.

Ultimately, in mid-June 2016, Stabilis assigned all of its rights as a lender under the Credit Agreement to Sky Light.  Sky Light immediately funded the Debtors with much needed capital to bridge the financing until a chapter 11 filing.

Prior to the Petition Date on June 17, 2016, the Debtors entered into a Restructuring Support Agreement that was negotiated with Sky Light, who remained committed to provide the funding to the business and to fund a plan or reorganization.  Sky Light is a public company and is a leading digital imaging device and solution provider for the action camera industry.  Sky Light is the second largest action camera manufacturer worldwide with a market share of 31% in terms of global action camera shipments. Sky Light is headquartered in Hong Kong and in 2013, the Guangdong Manufacturers Association accredited as a "Guangdong Provide Top 500 Manufacturing Enterprise" and "Guangdong Provide Manufacturing Enterprise with Outstanding Contribution."  For 2014, Sky Light reported gross revenue of over HK$2 billion.  Sky Light was one of two main entities that the Debtors used to manufacture its cameras.

Under the Restructuring Support Agreement, Sky Light has agreed to fund a plan of reorganization that will permit the Debtors to continue their operations and to develop iON branded products. The proposed restructuring reflected in Restructuring Support Agreement will: (i) reduce the Debtors existing debt by over $12 million; (ii) provide creditors a meaningful distribution; and (iii) provide much needed working capital to the operations.

The Debtors believe that, absent the transactions contemplated in the Plan Term Sheet, including the new equity commitments; Holders of General Unsecured Claims would not be able to recover any value in this case.

Non-Debtor affiliates are not contributing to or receiving recoveries under the Plan.

13

**ADMINISTRATION OF THE CHAPTER 11 CASE**

**Section 3.02.      Overview of Chapter 11**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under chapter 11, a debtor is authorized to reorganize its business for the benefit of itself, its creditors and its equity interest holders.  In addition to permitting the rehabilitation of a debtor, another goal of chapter 11 is to promote equality of treatment for similarly situated creditors and similarly situated equity interest holders with respect to the distribution of a debtor's assets.

The commencement of a chapter 11 case creates an estate that is comprised of all of the legal and equitable interests of the debtor as of the Commencement Date.  The Bankruptcy Code provides that the debtor may continue to operate its business and remain in possession of its property as a "debtor in possession."

The consummation of a plan of reorganization is the principal objective of a chapter 11 reorganization case.  A plan of reorganization sets forth the means for satisfying claims against and interests in a debtor.  Confirmation of a plan of reorganization by the bankruptcy court makes the plan binding upon the debtor, any issuer of securities under the plan, any person acquiring property under the plan and any creditor or equity interest holder of a debtor.  Subject to certain limited exceptions, the order approving confirmation of a plan discharges a debtor from any debt that arose prior to the date of confirmation of the plan and substitutes the obligations specified under the confirmed plan.

In general, a chapter 11 plan of reorganization (a) divides claims and equity interests into separate classes, (b) specifies the property, if any, that each class is to receive under the plan, and (c) contains other provisions necessary to the reorganization of the debtor and that are required or permitted by the Bankruptcy Code.

Pursuant to section 1125 of the Bankruptcy Code, acceptance or rejection of a plan may not be solicited after the commencement of the Chapter 11 Cases until such time as the court has approved the Disclosure Statement as containing adequate information.  Pursuant to section 1125(a) of the Bankruptcy Code, "adequate information" is information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding the plan.  To satisfy applicable disclosure requirements, the Debtors submit the Disclosure Statement to holders of Claims that are impaired and not deemed to have rejected the Plan.

**Section 3.03.      Relevant Case Background**

On June 24, 2016 the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Honorable Laurie Selber Silverstein is presiding over the Chapter 11 Cases.  The Debtors continue to operate their businesses and manage their properties as debtor

14

and debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  As of the date hereof, no request has been made for the appointment of a trustee or examiner in these cases.  The Creditors Committee was appointed on July 6, 2016.

The following is a brief description of certain significant events that have occurred during the pendency of the Chapter 11 Cases.

### 1.    Joint Administration

On June 24, 2016 the Debtors filed a motion seeking an order seeking joint administration of the Debtors' two bankruptcy cases. On June 28, 2016 the Bankruptcy Court entered an (Docket No. 24) approving the motion.

### 2.    Retention of Professionals.

To assist in carrying out its duties as a debtor in possession, and to otherwise represent their interests in the Chapter 11 Cases, the Debtors, on June 24, 2016, filed with the Bankruptcy Court applications seeking entry of orders authorizing the Debtors to retain a number of professionals, *nunc pro tunc* to the Petition Date, including Olshan Frome Wolosky LLP ("Olshan") as counsel and A.M. Saccullo Legal, LLC ("Saccullo Legal") as co-counsel and Willamette Management Associates ("WMA") as financial consultants.

On July 19, 2016 the Bankruptcy Court entered an order approving the Debtors' retention of Olshan (Docket No. 58) and Saccullo Legal (Docket No. 59) and on July 20, 2016, the Bankruptcy Court entered an order approving the Debtors' retention of WMA (Docket No. 65).

On July 22, 2016, the Creditors' Committee also filed with the Bankruptcy Court its application to employ Benesch, Friedlander, Coplan & Aronoff LLP ("Benesch") as legal counsel to the Creditors' Committee.

On August 17, 2016, the Bankruptcy Court entered an order approving the Creditor Committee's retention of Benesch (Docket No, 92).

### 3.    Employment Obligations.

The Debtors believe it has a valuable asset in its workforce, and that the efforts of the Debtors' employees are critical to a successful reorganization.  On June 24, 2016, the Debtors filed with the Bankruptcy Court a motion for an order authorizing the Debtor to pay certain prepetition employee wage and benefit obligations.  On June 28, 2016 the Bankruptcy Court entered an order (Dkt. No. 29) approving the motion.

### 4.    Cash Management

The Debtors believe it would have been disruptive to its operations if it was forced to change significantly its cash management system upon the commencement of the Chapter 11 Case.  Accordingly, on June 24, 2016 the Debtors filed with the Bankruptcy Court a motion seeking entry of an order authorizing the Debtors to maintain its current cash management system.  On June 28, 2016, the Bankruptcy Court entered an order [Dkt. No. 31] approving the

Motion.  Thus the Debtor operates under the cash management system that existed as of the
Petition Date.

### 5.    Insurance

On June 24, 2016 the Debtors filed a motion authorizing the Debtors to continue payment
of its insurance programs in the ordinary course.  On June 28, 2016, the Bankruptcy Court
entered an interim order (Docket No. 27) approving the motion, and on July 20, 2016, the
Bankruptcy Court entered a final order (Docket No. 67) approving the motion on a final basis.

### 6.    Freight Carriers

On June 24, 2016 the Debtors filed a motion seeking entry of an order authorizing, but
not requiring, the Debtors to pay certain prepetition claims of certain of its freight carriers.  On
June 28, 2016 the Bankruptcy Court entered an (Docket No. 25) approving the motion.

### 7.    Prepetition Taxes

On June 24, 2016, the Debtor filed a motion seeking entry of an order authorizing, but
not requiring, the Debtors to pay certain prepetition taxes.  On June 28, 2016, the Bankruptcy
Court entered an order (Docket No. 28) approving the motion.

### 8.    Schedules and Statements

On July 25, 2016, the Debtors filed with the Bankruptcy Court the Schedules and
Statement of Financial Affairs (collectively, the "Schedules").

### 9.    Section 341 Meeting

A meeting of creditors pursuant to section 341(a) of the Bankruptcy Code was originally
held on July 20, 2016.  Because the Debtor had not yet filed its schedules and statements, that
meeting was continued to and took place on August 18, 2016.

### 10.    Post-Petition DIP Financing

On June 28, 2016, the Debtors filed the *Motion For Entry Of Interim and Final Orders
(1) Authorizing Postpetition Financing, (2) Granting Liens and Providing Super Priority Liens
and Administrative Claims (3) Authorizing Use of Cash Collateral and Providing for Adequate
Protection, and (4) Modifying Automatic Stay and Pursuant To 11 U.S.C. §§ 105(a), 361 362,
364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) And 364(e),* (the "DIP Motion") (Docket No. [  ]).  By
the DIP Motion, the Debtor sought entry of interim and final orders granting the following relief:

a.    authorizing the Debtors to enter into the post-petition Senior Secured, Super Priority
Debtor-in-Possession Credit Agreement (the "DIP Credit Agreement"), in order that the
Debtor can access the facilities through post-petition advances thereunder, which
advances are secured by a senior superpriority, lien in substantially all of the Debtors'
collateral pursuant to section 364(c)(3) of the Bankruptcy Code and subject to a

16

superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code senior to all other superpriority administrative expense claims;

b.  authorizing the Debtors' use of "cash collateral," as such term is defined in section 363(a) of the Bankruptcy Code;

c.  granting Adequate Protection Liens, Adequate Protection Superpriority Claims, and Adequate Protection Payments (each as defined in the DIP Motion) as adequate protection for the use of the secured lenders' prepetition collateral;

d.  vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the interim and final orders; and

e.  scheduling a final hearing (the "Final Hearing") to consider the relief requested in the DIP Motion and the entry of a Final Order, and approving the form of notice with respect to the Final Hearing.

On June 29, 2016, the Bankruptcy Court entered an order approving the relief requested in the DIP Motion on an interim basis (Docket No. 33), and on July 20, 2016, the Bankruptcy Court entered an order (Docket No. 68) approving the motion on a final basis.

### 11.    The Creditors' Committee

Pursuant to section 1102(a)(1) of the Bankruptcy Code, on July 6, 2016, the United States Trustee for Region 3 (the "U.S. Trustee") appointed the Creditors' Committee.  The current members of the Creditors' Committee are set forth below:

> IMG – Trans World International, LLC;
> Active Marketing, Inc.; and
> Delta Millennium, Inc.

The Creditors' Committee retained the law firm of Benesch Friedlander Coplan & Aronoff LLP

### 12.    Class 4 General Unsecured Claims

The Debtors' Class 4 General Unsecured Claims are comprised as follows: (a) approximately $10.2 million of trade; (b) approximately $4.7 million unsecured note held by KIM POV granted by Debtor iON Worldwide and guaranteed by Debtor iON America on account of goods provided to the Debtors; and (c) approximately $970,000 note by the Debtors on account of unpaid bridge financing extended in 2015.

### 13.    Preference Actions

The Debtors do not believe that any material preference actions exist.

17

**Section 3.04.        No Distributions to Interests.**

No Plan Distributions shall be made on account of any Interests in the Debtors regardless of whether such Interests are held by a Person which is not a Debtor.

## ARTICLE IV

## SUMMARY OF THE PLAN

**Section 4.01.        Summary**

**THE FOLLOWING IS A SUMMARY OF SOME OF THE SIGNIFICANT ELEMENTS OF THE PLAN.  THE DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED INFORMATION SET FORTH IN THE PLAN AND THE EXHIBITS AND SCHEDULES THERETO.**

The Plan classifies Claims and Interests separately in accordance with the Bankruptcy Code and provides different treatment for different Classes of Claims and Interests. Claims and Interests shall be included in a particular Class only to the extent such Claims or Interests qualify for inclusion within such Class.  The Plan separates the various Claims (other than those that do not need to be classified) into five separate Classes.  These Classes take into account the differing nature and priority of Claims against, and Interests in, the Debtor.  Unless otherwise indicated, the characteristics and amounts of the Claims or Interests in the following Classes are based on the books and records of the Debtors.

The Plan is intended to enable the Debtors to continue its present operations without the likelihood of a subsequent liquidation or the need for further financial reorganization.  The Debtors believe that they will be able to perform all of its obligations under the Plan and meet their expenses after the Effective Date without further financial reorganization.  Also, the Debtors believe that the Plan permits fair and equitable recoveries, while expediting the reorganization of the Debtors.

The Confirmation Date will be the date that the Confirmation Order is entered by the Clerk of the Bankruptcy Court.  The Effective Date will be the first Business Day on or after the Confirmation Date on which all of the conditions to the Effective Date specified in Section 12.02 of the Plan have been satisfied or waived and the parties have consummated the transactions contemplated by the Plan.

The Debtors anticipates that the Effective Date will occur in October, 2016.  Resolution of any challenges to the Plan may take time and, therefore, the actual Effective Date cannot be predicted with certainty.

Other than as specifically provided in the Plan, the treatment under the Plan of each Claim and Interest will be in full satisfaction, settlement, release and discharge of all Claims or Interests.  The Reorganized Debtor will make all payments and other distributions to be made under the Plan unless otherwise specified.

18

All Claims and Interests, except Administrative Expense Claims, DIP Claims, Fee Claims, United States Trustee Fees, and Priority Tax Claims, are placed in the Classes set forth in Article II of the Plan.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Fee Claims, Dip Claims, U. S. Trustee Fees and Priority Tax Claims have not been classified, and the holders thereof are not entitled to vote on the Plan.  A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

### Section 4.02.    Exit Funding

Pursuant to the Restructuring Support Agreement, on the Effective Date Sky Light will fund all distributions under the Plan up to $12,000,000.

### Section 4.03.    Provisions for Treatment of Unclassified Claims

### 1.    Administrative Expense Claims.

Except to the extent that a Holder of an Allowed Administrative Claim agrees to less favorable treatment, or as otherwise provided for in the Plan, the Debtors shall pay to each Holder of an Allowed Administrative Claim Cash in an amount equal to the amount of such Allowed Administrative Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, and (ii) the first Business Day after the date that is thirty (30) calendar days after the date an Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is reasonably practicable; *provided, however*, that Allowed Ordinary Course Administrative Claims may be paid by the Debtors in the ordinary course of business of the Reorganized Debtors consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

The Confirmation Order or separate bankruptcy court order will establish the Administrative Claims Bar Date for filing applications for the allowance of Administrative Claims (except for Fee Claims, claims pursuant to section 503(b)(9) of the Bankruptcy Code, Ordinary Course Administrative Claims, and any fees or charges assessed against the Estates under section 1930 of title 28 of the United States Code and any applicable interest thereon).  A notice setting forth the Administrative Claim Bar Date shall be filed on the Bankruptcy Court's docket.  Any requests for payment of an Administrative Claim that are not properly filed and served by the Administrative Claim Bar Date shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors or any action by the Bankruptcy Court.  The Reorganized Debtors shall have until 120 days after the Administrative Claims Bar Date (or such longer period as may be allowed by order of the Bankruptcy Court) to review and object to all applications for the allowance of Administrative Claims.  Unless the Debtors or the Reorganized Debtors object to a properly served Administrative Claim, such Administrative Claim shall be deemed Allowed in the amount requested.

Notwithstanding anything to the contrary herein, the Sky Light DIP Claim will receive the treatment described in Section 3.02 b.2.B of the Plan without need to file any request for

payment of an Administrative Claim, provided further Sky Light DIP Claims that arise on account of goods advanced will be satisfied in the ordinary course by the Reorganized Debtors.

## 2.    Fee Claims.

Any entity seeking an award by the Bankruptcy Court of compensation or reimbursement of Fee Claims pursuant to sections 327, 328, 330, 331, 503 or 1103 of the Bankruptcy Code for services rendered prior to the Effective Date file and serve on the Reorganized Debtors and their counsel, the United States Trustee, counsel to the Creditors' Committee, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or any other order(s) of the Court, its final application for allowance of such compensation and/or reimbursement by no later than sixty (60) days after the Effective Date or such other date as may be fixed by the Bankruptcy Court.  Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Fee Claims against the Debtors, the Reorganized Debtors or their respective properties, and such Fee Claims shall be deemed discharged as of the Effective Date.  Objections to any Fee Claims must be filed and served on the Reorganized Debtors and their counsel and the requesting party no later than thirty (30) days (or such longer period as may be allowed by order of the Bankruptcy Court) after the date on which an application for final allowance of such Fee Claims was filed and served.

The Reorganized Debtors shall pay each Holder of an Allowed Fee Claim Cash in an amount equal to the amount of such Allowed Fee Claim on the date such Fee Claim becomes an Allowed Fee Claim or as soon thereafter as is reasonably practicable.

## 3.    United States Trustee Fees

On the Effective Date or as soon as practicable thereafter, the Debtors or the Reorganized Debtors shall pay all United States Trustee Fees.

## 4.    Priority Tax Claims.

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment, or the Bankruptcy Court has previously ordered otherwise, each Holder of an Allowed Priority Tax Claim shall receive, in full and complete satisfaction, settlement, and release of, and in exchange for such Allowed Priority Tax Claim, at the sole option of the Reorganized Debtors, (a) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Allowed Priority Tax Claim, or (b) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled to be calculated in accordance with section 511 of the Bankruptcy Code).  All Allowed Priority Tax Claims which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business.  The Reorganized Debtors

20

shall retain the right to pay any Allowed Priority Tax Claim, or any remaining balance of such claim, in full at any time without premium or penalty.

### Section 4.04.    Provisions for Treatment of Classified Claims.

**1.    Class 1 – Priority Non-Tax Claims.**

A.    <u>Treatment</u>.   The legal, equitable and contractual rights of the holders of Class 1 Claims are unaltered by the Plan.  Except to the extent a Holder of a Priority Non-Tax Claim agrees to different treatment, each Holder of an Allowed Priority Non-Tax Claim will be paid, in full and complete satisfaction, settlement, and release of and in exchange for such Allowed Priority Non-Tax Claim, the Allowed Amount of such Allowed Priority Non-Tax Claim in full in Cash on later of the Effective Date and the first Distribution Date subsequent to the date such Priority Non-Tax Claim becomes an Allowed Priority Non-Tax Claim.

B.    <u>Voting</u>.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed Priority Non-Tax Claims are conclusively presumed to accept the Plan and the votes of such holders will not be solicited with respect to such Allowed Priority Non-Tax Claims.

**2.    Class 2 – Sky Light Secured Claim**

A.    <u>Allowance</u>.  On the Effective Date, the Sky Light Secured Claim shall be deemed Allowed in the aggregate amount of $4,896,753.37.

B.    <u>Treatment</u>.  Sky Light, on account of the Sky Light Secured Claim will receive, in full and complete extinguishment, satisfaction, settlement and release of such Claim and the Sky Light DIP Claim, 100% of the New Common Stock of the Reorganized Debtors on the Effective Date.

C.    <u>Voting</u>. The Sky Light Secured Claim is an Impaired Claim, and the Holder of such Claim is entitled to vote to accept or reject the Plan.

**3.    Class 3 – Kim POV Secured Claim**

A.    Allowance.  On the Effective Date, the Kim POV Secured Claim shall be deemed Allowed in the aggregate amount of $4,615,237.

B.    <u>Treatment</u>.  On the Effective Date, the Holder of the Kim POV Secured Claim shall receive a cash payment of $3,195,000 in full and complete satisfaction, settlement and release of such Secured Claim, and any deficiency arising on account of such claim is deemed waived.

C.    <u>Voting</u>. Class 3 is impaired.  The Kim POV Secured Claim is an Impaired Claim, and the Holder of such Claim is entitled to vote to accept or reject the Plan.

21

###### 4.    Class 4 – General Unsecured Claims

A.    <u>Treatment</u>.  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to different treatment, each Holder of an Allowed General Unsecured Claim shall receive, in full and complete satisfaction, settlement and release of and in exchange for such Allowed General Unsecured Claim, its Pro Rata Share of (x) $2,605,000 on the Effective Date; and (y) the GoPro GUC Recovery.

B.    <u>Voting</u>. The General Unsecured Claims are Impaired Claims, and holders of such Claims are entitled to vote to accept or reject the Plan.

###### 5.    Class 5 – Existing Interests.

A.    <u>Treatment</u>.  The Holders of existing Interests will receive no distributions and such interests shall be extinguished and cancelled under the Plan.  On the Effective Date, the New Common Stock shall be issued to Sky Light.

B.    <u>Voting</u>. In accordance with section 1126(g) of the Bankruptcy Code, the holders of Interests are conclusively presumed to reject the Plan and are not entitled to vote to accept or reject the Plan.

##### Section 4.05.    Acceptance or Rejection of the Plan

###### 1.    Each Impaired Class Entitled to Vote Separately

Each Impaired Class of Claims that is to receive a Distribution under the Plan will be entitled to vote separately to accept or reject the Plan.  Except as provided herein, each Person that, as of the Voting Record Date, holds a Claim in an Impaired Class will receive a Ballot that will be used to cast its vote to accept or reject the Plan.  In the event of a controversy as to whether any Class of Claims or Interests is Impaired under the Plan, the Bankruptcy Court shall, after notice and a hearing, determine such controversy.

###### 2.    Acceptance by a Class of Claims

In accordance with section 1126(c) of the Bankruptcy Code, and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims will be deemed to accept the Plan if the Plan is accepted by the Holders of Claims in such Class that hold at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

##### Section 4.06.    "Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown"

Because certain Classes are deemed to have rejected the Plan, the Debtors will seek confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan or any Plan Document in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

3857001-2

**Section 4.07.      Voting Classes**

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the Holders of such Claims or Interests in such Class.

**Section 4.08.      Confirmation of all Cases**

Except as otherwise specified herein, the Plan shall not be deemed to have been confirmed unless and until the Plan has been confirmed as to each of the Debtors.

**ARTICLE V**

**MEANS OF PLAN IMPLEMENTATION**

**Section 5.01.      Introduction**

The Plan will be implemented through a restructuring of the Debtors' debt obligations by virtue of a cash contribution by Sky Light and by the conversion of Sky Light's Secured Claim and DIP obligation into equity. The Interests will be canceled and New Common Stock will be issued to Sky Light in exchange for certain capital, funding and distribution commitments. General Unsecured Creditors will each receive a distribution on account of their Allowed Claims, as discussed in Article III. The following discussion outlines the general terms of the contemplated reorganization of the Debtors and certain actions that will be taken to close the transactions contemplated by the Plan.

**Section 5.02.      Corporate Action Non-Voting Securities.**

On and after the Effective Date, the Reorganized Debtors shall have full authority and are authorized to take such actions and execute such documents as may be necessary to effectuate the transactions provided for in the Plan. The Reorganized Debtors' post-Effective Date authority shall include the right to operate their business as a going concern to purchase and/or sell assets; to commence and prosecute actions and proceedings; to open, maintain and close bank accounts and/or other investments on behalf of the Estates; to make and File Objections to, or otherwise contest the amount, validity and/or priority of, all Claims; to calculate and make Distributions consistent with the Plan; to prosecute and resolve Objections regarding all Claims; to engage in arbitration or mediation; to engage or retain Professionals and to pay the fees and disbursements thereof; to file tax information and returns as required and, in connection therewith, to make such determinations of tax liability, challenge assessments, make tax elections, pay taxes and take other, related actions; to hold and dispose of any unclaimed Distributions; and to close the case and any related proceedings. Subsequent to the Effective Date, the Debtors' charter shall be amended to prohibit the issuance of non-voting securities and to otherwise comply with the terms and conditions of section 1123(a)(6) of the Bankruptcy Code.

On and after the Effective Date, the members of the Board of Directors of the Reorganized Debtors are authorized to, and may direct an officer to, issue, execute, deliver, file,

23

or record such contracts, securities, instruments, releases, and other agreements or documents and take such action as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of, and on behalf of the Reorganized Debtors, without the need for any approvals, authorizations, or consents except for those required pursuant to the Plan.

The adoption of the Amended Certificate and Bylaws, the selection of directors and officers of Reorganized Debtors, and all other actions contemplated by the Plan shall be authorized and approved in all respects (subject to the provisions of the Plan) by the Confirmation Order.  All matters provided for in the Plan involving the corporate structure of the Debtors or the Reorganized Debtors, and any corporate action required by the Debtors of the Reorganized Debtors in connection with the Plan, shall be deemed to have timely occurred in accordance with applicable law and shall be in effect, without any requirements or further action by the security holders, directors, or managers of the Debtors or Reorganized Debtors.  On the Effective Date, as applicable, the appropriate officers of the Debtors and /or Reorganized Debtors and members of the boards of directors or managers of the Debtors and/or Reorganized Debtors are authorized and directed to issue, execute and deliver, and cause the Reorganized Debtors to perform, the agreements, documents, securities and instruments contemplated by the Plan in the name of and on behalf of the Debtors and/or Reorganized Debtors.

### Section 5.03.    Effective Date Transactions

### 1.    Issuance of New Common Stock

On the Effective Date or as soon as reasonably practicable thereafter, the Reorganized Debtors shall authorize 1,000 shares of New Common Stock.   The issuance of the New Common Stock to Sky Light is authorized without the need for any further corporate action or without any further action by any Holder of Claims or Interests.  The New Common Stock issued under the Plan shall be subject to dilution based upon any other shares of New Common Stock issued after the consummation of the Plan.  The Reorganized Debtors shall be authorized to enter into and adopt an incentive stock option plan for employees and management, as may be determined by the Reorganized Debtors' Board of Directors

All of the shares of New Common Stock issued pursuant to the Plan shall be duly authorized, validly issued and, if applicable, fully paid and non-assessable.

### 2.    Effective Date Funding

On the Effective Date, Sky Light as Plan Sponsor shall (x) cancel and extinguish all of its debt owing from the Debtors and (y) fund into escrow the sums necessary to fund up to the aggregate of the Sky Light Funding Amount.  The proceeds of the Sky Light Funding Amount will be used to, among other things to repay all obligations and distributions under the Plan and to provide working capital to the Reorganized Debtors.

The Reorganized Debtors may execute all documents and enter into all agreements as may be necessary and appropriate in connection with the Sky Light Funding Amount.

24

On the Effective Date, Sky Light shall also acquire all of the stock of non-Debtor affiliates Worldwide Licenses Ltd (Hong Kong); iON Cameras Limited (UK) and Summit Global KK (Japan) for $1.00 and the assumption of all liabilities of such entities.

### Section 5.04.    Securities Registration Exemption

The securities to be issued pursuant to the Plan are to be issued without registration under the Securities Act or any similar federal, state or local law in reliance upon the exemptions set forth in section 1145 of the Bankruptcy Code.  To the extent section 1145 of the Bankruptcy Code is inapplicable, these issuances are exempt from registration under the Securities Act or any similar federal, state or local law in reliance on the exemption set forth in section 4(2) of the Securities Act or Regulation D promulgated thereunder.

### Section 5.05.    Corporate Governance

On the Effective Date, the Boards of Directors of the Reorganized Debtors shall consist of those individuals set forth in the Plan Supplement.

### Section 5.06.    Cancellation of Existing Securities and Agreements

On the Effective Date, the Interests in the Debtors, shall be deemed, and shall be, cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise.  Similarly, on the Effective Date, except (a) as otherwise specifically provided for in the Plan, (b) with respect to Executory Contracts or unexpired leases that have been assumed by the Debtors, (c) for purposes of evidencing a right to Distributions under the Plan, or (d) with respect to any Claim that is Allowed under the Plan, on the Effective Date, any instruments or documents evidencing any Claims or Interests shall be deemed automatically canceled and deemed surrendered without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of the Debtors under the agreements, instruments, and other documents, indentures, and certificates of designations governing such Claims and Interests, as the case may be, shall be discharged.

### Section 5.07.    Incentive Stock Option Plan

On the Effective Date, or as soon as practicable thereafter, the Reorganized Debtors will adopt an incentive stock option plan for employees and management.  Participation in and allocation of options under such plan shall be determined by the Reorganized Debtors' Board of Directors.

### Section 5.08.    Intercompany Claims

On the Effective Date, all Intercompany Claims shall be deemed cancelled and there shall be no distribution made on account of such Claims.

### Section 5.09.    Obligations Incurred After the Effective Date

Payment obligations incurred after the Effective Date, including, without limitation, the professional fees of the Debtors, will not be subject to application or proof of claim and may be

3857001-2

paid by the Reorganized Debtors in the ordinary course of business and without further Bankruptcy Court approval.

**Section 5.10.     Post-Confirmation Operating Reports and United States Trustee Fees.**

The Reorganized Debtor shall be responsible for the preparation and filing of operating reports until entry of a final decree in this case through October 2011.  Quarterly fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930 and any applicable interest thereon shall be paid by the Reorganized Debtor until the entry of an order converting, dismissing or granting a final decree in this case.

# ARTICLE VI

## PRESERVATION AND PROSECUTION OF CAUSES OF ACTION HELD BY THE DEBTORS

**Section 6.01.     Preservation and Prosecution of Causes of Action.**

In accordance with section 1123(b) of the Bankruptcy Code, all claims and causes of action of the Reorganized Debtors are retained and preserved.  The Reorganized Debtors shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action.  The Reorganized Debtors' right to commence, prosecute, settle, or abandon their Causes of Action shall be preserved, notwithstanding the occurrence of the Effective Date.  No entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Reorganized Debtors, as applicable, will not pursue any and all available Causes of Action against them.  Unless any Causes of Action against an entity are expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Reorganized Debtors expressly reserve all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation Order.  In accordance with section 1123(b)(3) of the Bankruptcy Code, any Causes of Action against any entity shall vest in the Reorganized Debtors.

# ARTICLE VII

## PROVISIONS FOR TREATMENT OF DISPUTED CLAIMS

**Section 7.01.     Objections to Claims.**

The Reorganized Debtors shall have the right to object to the allowance of any Claims or Interests with respect to which they dispute liability, priority, and/or amount.  Any Objections to Claims that have been filed on or before the Confirmation Date, shall be served and filed as soon

as practicable, but, in each instance, no later than: (a) 180 days after the Effective Date; or (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) hereof.  The Filing of a motion to extend such objection deadline shall automatically extend such deadline until a Final Order is entered on such motion.  In the event that such a motion to extend the objection deadline is denied by the Bankruptcy Court, or approved by the Bankruptcy Court and reversed on appeal, such objection deadline shall be the later of the current deadline (as previously extended, as applicable) or 30 days after entry of a Final Order denying the motion to extend the objection deadline.

**Section 7.02.**       **No Payment or Distribution Pending Allowance.**

Notwithstanding any other provision in the Plan, if any portion of a Claim is a Disputed Claim, no payment or Distribution of Property provided for hereunder shall be made on account of such Claim unless and until the Disputed Claim becomes an Allowed Claim.  To the extent a Disputed Claim is Disallowed in whole or in part, the Holder of such Claim will not receive any Distribution on account of the portion of such Claim (including the whole, if applicable) that is Disallowed.

**Section 7.03.**       **Disputed Distributions**

If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any Distribution, in lieu of making a distribution to such Person, the Disbursing Agent may reserve or deposit the Distribution at issue (or the disputed portion thereof into a segregated account for Disputed Distributions until the disposition thereof is determined by a Final Order or by written agreement among the interested parties to such dispute.

**Section 7.04.**       **Estimation.**

The Reorganized Debtors shall have the right, but not the obligation, at any time to seek an order of the Bankruptcy Court, after notice and a hearing (which notice may be limited to the Holder of a Disputed Claim and the United States Trustee, and which hearing may be held on an expedited basis), estimating for final Distribution purposes any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors, the Reorganized Debtors previously objected to such Claim.  If the Bankruptcy Court estimates any contingent, Disputed or unliquidated Claim, the estimated amount shall constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court, including for purposes of the Disputed Claims Reserve; *provided*, *however*, that if the estimate constitutes the maximum limitation on such Claim, the Debtors or the Reorganized Debtors as the case may be, may elect to pursue supplemental proceedings to object to any ultimate allowance of such Claim.  On or after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved subsequently, without further order of the Bankruptcy Court.

**Section 7.05.**       **Reserve Account for Disputed Claims**

On or after the Effective Date, the Disbursing Agent shall hold in their respective Disputed Claims Reserves, Cash or other consideration in an aggregate amount sufficient to

27

compensate each Holder of a Disputed Claim, which the Disbursing Agent is ultimately responsible for disbursing, with (i) the amount that such Holder would have been entitled to receive under the Plan if such Claim had been an Allowed Claim on the Effective Date, (ii) to the extent the value of a Disputed Claim has been estimated in accordance with Section 7.04 of the Plan, the estimated value of such Disputed Claim, or (iii) such other amount as may be agreed upon by the Holder of such Disputed Claim and the Reorganized Debtor.  The Disbursing Agent may pool funds in the Disputed Claims Reserves with other funds; *provided, however,* the Disbursing Agent shall treat all such funds as segregated accounts in their respective books and records.

### Section 7.06. Release of Funds from Claims Reserves

At such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Disbursing Agent, shall distribute to the Holder thereof the distribution, if any, to which such Holder is then entitled under the Plan.  To the extent a Disputed Claim is Disallowed or Allowed in a lesser amount than has been reserved for such Disputed Claim, the Cash reserved for such Disputed Claim or the difference between the amount reserved for such Disputed Claim and the lesser amount at which such Disputed Claim is ultimately Allowed, as applicable, be returned from the Disputed Claims Reserve to the Reorganized Debtors.

## ARTICLE VIII

## DISTRIBUTIONS UNDER THE PLAN

### Section 8.01. Limitation to Full Recovery

Notwithstanding anything herein to the contrary, no Holder of any Claim will be entitled to a Distribution in excess of 100% of the Allowed amount of its Claims.

### Section 8.02. Timing of Distributions.

Distributions under the Plan shall be made (i) as set forth in the Plan or as soon as reasonably practicable thereafter; or (ii) as agreed between the Debtors or the Reorganized Debtors, as applicable, and the particular Creditor, or as soon as reasonably practicable thereafter. The GoPro GUC Recovery (or any portion thereof) shall be distributed in accordance with the terms of the Plan as soon as reasonably practicable upon the Debtors' receipt of proceeds from the GoPro Action, but in no event later than the Distribution Date immediately following the Debtors' receipt of proceeds from the GoPro Action.   If a Claim is not an Allowed Claim as of the Effective Date, Distributions will be made only if and when the Claim is Allowed and, to the extent a Disputed Claim is the subject of estimation in accordance with Section 7.04 of the Plan, in an amount no greater than the amount reserved in the Disputed Claims Reserve.

### Section 8.03. Saturdays, Sundays, or Legal Holidays.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be

completed on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.

### Section 8.04.    Distribution Record Date.

Except as otherwise provided in a Final Order that is not subject to any stay, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 and Filed with the Bankruptcy Court on or prior to the Distribution Record Date will be treated as the Holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer may not have expired by the Distribution Record Date. As of the close of business on the Distribution Record Date, any transfer ledgers, transfer books, registers and any other records will be closed and, for purposes of the Plan, there shall be no further changes in the record Holders of such Claims. The Debtors shall have no obligation to recognize the transfer of any Claim occurring after the Distribution Record Date, and will be entitled for all purposes to recognize and deal only with those Holders of Claims and Interests as of the close of business on the Distribution Record Date, as reflected on the ledgers, books, registers or records of the Debtors and the Bankruptcy Court.

### Section 8.05.    Delivery of Distributions.

Subject to the treatment of Disputed Distributions as set forth in Section 7.03 of the Plan, Distributions shall be made to Holders of Allowed Claims at the addresses set forth on the Debtors' books and records or the Proofs of Claim, if any, Filed by such Creditors or at the last known addresses of such Creditors or, in the case of transferred Claims, on the notice of transfer Filed with the Bankruptcy Court pursuant to Bankruptcy Rule 3001, each as of the Distribution Record Date. If any such Creditor's Distribution is returned as undeliverable, no further Distribution shall be made to such Creditor unless and until the Debtors are notified of such Creditor's then-current address, at which time any missed Distribution shall be made to such Creditor to the extent of available Cash; *provided* that in no event are the Debtors required to make Distributions to a Creditor whose Distribution is returned as undeliverable and becomes Unclaimed Property.

### Section 8.06.    Method of Cash Distributions.

The Disbursing Agent shall make all Distributions contemplated by the Plan. Any Cash payment to be made pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, at the option of the Disbursing Agent. If a Creditor holds more than one Claim in any one Class, all Allowed Claims of the Creditor in that Class may, at the Debtors' option, be aggregated and one Distribution may be made with respect thereto.

### Section 8.07.    Unclaimed Property.

All Property distributed on account of Claims must be claimed within the later of ninety (90) days after (i) the Distribution Date and (ii) the date such Distribution is made to such Holder *provided, however*, in the case of a Distribution made in the form of a check, must be negotiated or a request for reissuance made directly to the Debtors by the Creditor that was originally issued such check and shall be made within ninety (90) days after the date the Distribution is made to

the applicable Creditor.  Nothing contained in the Plan shall require the Debtors to attempt to locate any Holder of an Allowed Claim, other than as provided herein.  Pursuant to Bankruptcy Code sections 347(b) and 1143, all Claims in respect of Unclaimed Property shall be deemed Disallowed and the Holder of any Claim Disallowed is forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtors or the Estates.

**Section 8.08.        Compliance with Tax Requirements.**

In connection with each Distribution with respect to which the filing of an information return (such as an IRS Form 1099 or 1042) or withholding is required, the Debtors shall file such information return with the IRS and provide any required statements in connection therewith to the recipients of such Distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Debtors within thirty (30) days from the date of any such request, the Debtors may, at their option, withhold the amount required and distribute the balance to such Person or decline to make such Distribution until the information is received.

**Section 8.09.        Setoffs.**

Except as otherwise provided in the Plan, the Confirmation Order, or in an agreement approved by a Final Order of the Bankruptcy Court, the Debtors or the Reorganized Debtors, as applicable, may, pursuant to applicable law (including section 553 of the Bankruptcy Code), setoff against any Distribution amounts related to any Claim before any Distribution is made on account of such Claim, any and all of the Claims, rights and causes of action of any nature that the Debtors, the Estates or the Reorganized Debtors may hold against the Holder of such Claim, *provided, however,* that neither the failure to effect such a setoff, the allowance of any Claim hereunder, any other act or omission of the Debtors or the Disbursing Agent, nor any provision of the Plan (other than Article X of the Plan) will constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims, rights or causes of action that the Debtors or the Reorganized Debtors may possess against such Holder.

**Section 8.10.        Documentation Necessary to Release Lien.**

Each Creditor who is a Holder of a Lien satisfied, discharged and released under the Plan and who is to receive a Distribution under the Plan shall not receive such Distribution until such Creditor executes and delivers any documents necessary to release all Liens arising under any applicable security agreement or non-bankruptcy law (in recordable form, if appropriate) in connection with such Claim and such other documents as the Debtors may reasonably request to document satisfaction of the Lien.

**Section 8.11.        Distributions Under Fifty Dollars**

No Distribution of Cash in an amount less than fifty dollars ($50.00) will be made by the Disbursing Agent to any Holder of an allowed Claim unless a request is made in writing to the Disbursing Agent.  If no such request is made, all such Distributions will be treated as Unclaimed Property.

# ARTICLE IX

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES; INDEMNIFICATION OBLIGATIONS

### Section 9.01.    General Treatment.

Unless otherwise provided in the Plan, prior to the Effective Date, the Debtor will have rejected or filed a motion to assume or reject tall executory contracts or unexpired leases of the Debtor not previously (a) assumed or (b) terminated or expired by their terms.  Any executory contracts that were not expressly assumed, terminated or expired by their terms or rejected shall be deemed rejected upon entry of the Confirmation Order.

### Section 9.02.    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan

Claims arising out of the rejection of an Executory Contract or unexpired lease pursuant to Section 9.01 of the Plan must be filed with the Bankruptcy Court and served upon the Debtors (or, on and after the Effective Date, Reorganized Debtors) no later than thirty (30) days after the later of (i) notice of entry of an order approving the rejection of such Executory Contract or unexpired lease, and (ii) notice of entry of the Confirmation Order.  All such Claims not filed within such time will be forever barred from assertion against the Debtors and their estates or the Reorganized Debtors and their Property.

### Section 9.03.    Treatment of Rejection Claims.

Any Allowed Claim arising out of the rejection of an Executory Contract or unexpired lease pursuant to the Plan (as opposed to a separate order of the Bankruptcy Court) shall, pursuant to section 502(g) of the Bankruptcy Code, be a General Unsecured Claim.

### Section 9.04.    Reinstatement and Continuation of Insurance Policies.

Unless otherwise assumed during the pendency of the Chapter 11 Cases, from and after the Effective Date, and notwithstanding Section 9.01 of the Plan, each of the Debtors' insurance policies in existence on and as of the Confirmation Date shall be reinstated and continued in accordance with its terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtors pursuant to section 365 of the Bankruptcy Code.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors may hold against any entity, including, without limitation, the insurer under any of the Debtors' insurance policies.

The Debtors' discharge and release from all Claims and Interests, as provided herein, shall not diminish or impair the enforceability of any insurance policy that may cover Claims against the Debtors (including, without limitation, their officers and directors), the Reorganized Debtors (including, without limitation, their officers and directors) or any other person or entity.

31

# ARTICLE X

# EFFECT OF CONFIRMATION

**Section 10.01.    Binding Effect.**

The Plan shall be binding and inure to the benefit of the Debtors, all Holders of Claims and Interests, and their respective successors and assigns.

**Section 10.02.    Continued Corporate Existence.**

Except as otherwise provided in the Plan, each Debtor shall continue to exist after the Effective Date as a separate corporate entity, with all the powers of a corporation, pursuant to the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation or bylaws (or other formation documents) in effect prior to the Effective Date, except to the extent such Amended Certificate and Bylaws (or other formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

**Section 10.03.    Vesting of Property.**

On the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and except as otherwise provided in the Plan, the Property of each Estate shall vest in the applicable Reorganized Debtor as the case may be, free and clear of all Claims, Liens, encumbrances, charges, and other Interests, except as provided herein or in the Confirmation Order. From and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided herein.

**Section 10.04.    Discharge of Claims Against and Interests in the Debtor.**

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise provided herein or in the Confirmation Order, each Person that is a Holder (as well as any trustees and agents on behalf of such Person) of a Claim or Interest and any affiliate of such Holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights, and liabilities that arose prior to the Effective Date. Except as otherwise provided herein, upon the Effective Date, all such Holders of Claims and Interests and their affiliates shall be forever precluded and enjoined, pursuant to sections 105, 524, 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in any Debtor.

**Section 10.05.    Injunction.**

**EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, THE CONFIRMATION ORDER, OR SUCH OTHER ORDER OF THE BANKRUPTCY COURT THAT MAY BE**

APPLICABLE, AS OF THE EFFECTIVE DATE, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS AGAINST OR INTERESTS IN THE DEBTORS OR THEIR ESTATES THAT ARE DISCHARGED PURSUANT TO THE PLAN ARE, WITH RESPECT TO ANY SUCH CLAIMS OR INTERESTS, PERMANENTLY ENJOINED FROM AND AFTER THE EFFECTIVE DATE FROM: (I) COMMENCING, CONDUCTING OR CONTINUING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY SUIT, ACTION OR OTHER PROCEEDING OF ANY KIND (INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING IN A JUDICIAL, ARBITRAL, ADMINISTRATIVE OR OTHER FORUM) ON ANY SUCH CLAIM OR INTEREST AGAINST OR AFFECTING THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES OR ANY OF THEIR PROPERTY, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR DIRECT OR INDIRECT SUCCESSOR IN INTEREST TO, ANY OF THE FOREGOING PERSONS OR ANY PROPERTY OF ANY SUCH TRANSFEREE OR SUCCESSOR; (II) ENFORCING, LEVYING, ATTACHING (INCLUDING, WITHOUT LIMITATION, ANY PRE-JUDGMENT ATTACHMENT), COLLECTING OR OTHERWISE RECOVERING BY ANY MANNER OR MEANS, WHETHER DIRECTLY OR INDIRECTLY, ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES OR ANY OF THE DEBTORS' PROPERTY, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR DIRECT OR INDIRECT SUCCESSOR IN INTEREST TO, ANY OF THE FOREGOING PERSONS, OR ANY PROPERTY OF ANY SUCH TRANSFEREE OR SUCCESSOR; (III) CREATING, PERFECTING OR OTHERWISE ENFORCING IN ANY MANNER, DIRECTLY OR INDIRECTLY, ANY ENCUMBRANCE OF ANY KIND AGAINST THE DEBTORS, THE REORGANIZED DEBTORS, THE ESTATES, OR ANY OF THEIR PROPERTY, OR ANY DIRECT OR INDIRECT TRANSFEREE OF ANY PROPERTY OF, OR SUCCESSOR IN INTEREST TO, ANY OF THE FOREGOING PERSONS; (IV) ACTING OR PROCEEDING IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN TO THE FULL EXTENT PERMITTED BY APPLICABLE LAW; AND (V) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THE PLAN; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT NOTHING CONTAINED HEREIN SHALL PRECLUDE SUCH PERSONS FROM EXERCISING THEIR RIGHTS, OR OBTAINING BENEFITS, PURSUANT TO AND CONSISTENT WITH THE TERMS OF THE PLAN.

        Section 10.06.    Releases.

                (a) <u>RELEASES BY THE DEBTORS.</u>  EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, AS OF THE EFFECTIVE DATE, EACH DEBTOR, IN ITS INDIVIDUAL CAPACITY AND AS A DEBTOR IN POSSESSION, SHALL BE DEEMED TO FOREVER RELEASE, WAIVE AND DISCHARGE ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION AND LIABILITIES (OTHER THAN THE RIGHTS OF THE DEBTORS TO ENFORCE THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, INDENTURES AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED THEREUNDER) WHETHER

LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO THE DEBTORS, THE PARTIES RELEASED PURSUANT TO THIS SECTION, THE CHAPTER 11 CASES, THE PLAN OR THE DISCLOSURE STATEMENT, AND THAT COULD HAVE BEEN ASSERTED BY OR ON BEHALF OF THE DEBTORS OR THEIR ESTATES, WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR IN ANY REPRESENTATIVE OR ANY OTHER CAPACITY, AGAINST THE PLAN SPONSOR OR ANY DEBTOR RELEASED PARTIES.  IN NO EVENT SHALL ANYTHING IN THIS SECTION BE CONSTRUED AS A RELEASE OF ANY PERSON'S FRAUD, GROSS NEGLIGENCE OR WILLFUL MISCONDUCT FOR MATTERS WITH RESPECT TO THE DEBTORS, THE PLAN SPONSORS, AND THEIR RESPECTIVE SUBSIDIARIES AND/OR AFFILIATES.

        **(b)**    **RELEASES BY HOLDERS OF CLAIMS AND INTERESTS.** EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ON THE EFFECTIVE DATE, TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW, AS SUCH LAW MAY BE EXTENDED OR INTERPRETED SUBSEQUENT TO THE EFFECTIVE DATE, EACH HOLDER OF A CLAIM THAT DOES NOT VOTE TO REJECT THE PLAN AND ANY PERSON WHO RECEIVES A DISTRIBUTION UNDER THE PLAN, IN CONSIDERATION FOR THE OBLIGATIONS OF THE DEBTORS AND THE OTHER RELEASED PARTIES UNDER THE PLAN, THE PLAN DISTRIBUTIONS, THE NEW COMMON STOCK AND OTHER CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS OR DOCUMENTS EXECUTED AND DELIVERED IN CONNECTION WITH THE PLAN, WILL BE DEEMED TO CONSENSUALLY FOREVER RELEASE, WAIVE AND DISCHARGE ALL CLAIMS, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION OR LIABILITIES (OTHER THAN THE RIGHT TO ENFORCE THE OBLIGATIONS OF ANY PARTY UNDER THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AGREEMENTS AND DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN), INCLUDING, WITHOUT LIMITATION, ANY CLAIMS FOR ANY SUCH LOSS SUCH HOLDER MAY SUFFER, HAVE SUFFERED OR BE ALLEGED TO SUFFER AS A RESULT OF THE DEBTORS COMMENCING THE CHAPTER 11 CASES OR AS A RESULT OF THE PLAN BEING CONSUMMATED, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE THAT ARE BASED IN WHOLE OR IN PART ON ANY ACT OR OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE IN ANY WAY RELATING TO THE DEBTORS, THE CHAPTER 11 CASES, THE PLAN OR THE DISCLOSURE STATEMENT AGAINST ANY RELEASED PARTY (WHICH INCLUDES THE

34

DEBTOR-RELEASED PARTIES AND SKY LIGHT, THE "THIRD PARTY RELEASE").

**Exculpation and Limitation of Liability.**

NONE OF THE DEBTORS, THE REORGANIZED DEBTORS, THE DISBURSING AGENT, THE CREDITORS' COMMITTEE AND ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, MEMBERS, ATTORNEYS, CONSULTANTS, ADVISORS, AND AGENTS (BUT SOLELY IN THEIR CAPACITIES AS SUCH) SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF ANY CLAIM OR INTEREST FOR ANY ACT OR OMISSION UP TO AND INCLUDING THE EFFECTIVE DATE IN CONNECTION WITH, RELATED TO, OR ARISING OUT OF THE DEBTORS' RESTRUCTURING AND THE CHAPTER 11 CASES, INCLUDING WITHOUT LIMITATION THE NEGOTIATION AND EXECUTION OF THE PLAN, THE CHAPTER 11 CASES, THE DISCLOSURE STATEMENT, THE SOLICITATION OF VOTES FOR AND THE PURSUIT OF THE PLAN, THE CONSUMMATION OF THE PLAN, OR THE ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN, INCLUDING, WITHOUT LIMITATION, ALL DOCUMENTS ANCILLARY THERETO, ALL DECISIONS, ACTIONS, INACTIONS AND ALLEGED NEGLIGENCE OR MISCONDUCT RELATING THERETO AND ALL PREPETITION ACTIVITIES LEADING TO THE PROMULGATION AND CONFIRMATION OF THE PLAN EXCEPT FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY A FINAL ORDER OF THE BANKRUPTCY COURT.

Section 10.07.    **Injunction Related to Releases and Exculpation.**

EXCEPT AS PROVIDED IN THE PLAN, THE CONFIRMATION ORDER SHALL PERMANENTLY ENJOIN THE COMMENCEMENT OR PROSECUTION BY ANY PERSON OR ENTITY, WHETHER DIRECTLY, DERIVATIVELY OR OTHERWISE, OF ANY CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION OR LIABILITIES RELEASED PURSUANT TO THE PLAN, INCLUDING BUT NOT LIMITED TO THE CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, DEMANDS, DEBTS, RIGHTS, CAUSES OF ACTION OR LIABILITIES RELEASED IN ARTICLE X OF THE PLAN.

Section 10.08.    **Retention of Causes of Action/Reservation of Rights.**

Administrative Expense Claims incurred by the Reorganized Debtor after the Confirmation Date, including (without limitation) Claims for Professionals' fees and expenses incurred after such date, may be paid by the Reorganized Debtor in the ordinary course of business and without the need for approval of the Bankruptcy Court.

Section 10.09.    **Term of Injunctions or Stays.**

(a)    Except as explicitly provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver, release, or relinquishment of any rights,

35

claims or causes of action, rights of setoff, or other legal or equitable defenses (including, for avoidance of doubt, any cause of action to avoid a transfer under sections 303(c), 544, 547, 548, or 553(b) of the Bankruptcy Code, of any similar state law) that the Debtors or the Reorganized Debtors, or which the Reorganized Debtors may choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Claims against any Person or entity, to the extent such Person or entity asserts a cross-claim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors or the Reorganized Debtors, (ii) the turnover of any property of the Debtors' Estates, and (iii) Causes of Action against current of former directors, officers, professionals, agents, financial advisors, underwriters, lenders or auditors relating to act or omissions occurring prior to the Petition Date, subject to the limitations set forth in the Plan.

(b)     Except as explicitly provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver, release or relinquishment of any rights, claims or causes of action, rights of setoff, or other legal or equitable defenses (including, for avoidance of doubt, any cause of action to avoid a transfer under sections 303(c), 544, 547, 548, or 553(b) of the Bankruptcy Code, of any similar state law) that the Debtors had immediately prior to the Petition Date against or with respect to any Claim left Unimpaired.  The Reorganized Debtors as the case may be, shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses which they had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced.

## ARTICLE XI

## RETENTION OF JURISDICTION

**Section 11.01.     Exclusive Jurisdiction of Bankruptcy Court.**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising out of, arising in or related to, the Chapter 11 Cases, the Plan and the Confirmation Order to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(i) Allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim (whether Filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated), including the compromise, settlement and resolution of any request for payment of any Claim, the resolution of any Objections to the allowance or priority of any Claim and the resolution of any dispute as to the treatment necessary to reinstate a Claim pursuant to the Plan and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim;

(ii) Grant or deny any applications for allowance of compensation or reimbursement of expenses for Professionals authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(iii) Hear and determine motions, applications, adversary proceedings, contested matters and other litigated matters pending on, Filed on or commenced after the Effective Date, including proceedings with respect to the rights of the Estate to recover Property under sections 542 or 543 of the Bankruptcy Code;

(iv) Determine and resolve any matters related to the assumption, assumption and assignment or rejection of any Executory Contract or unexpired lease to which the Debtors are a party or with respect to which the Debtors may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(v) Ensure that all payments due under the Plan and performance of the provisions of the Plan are accomplished as provided herein and resolve any issues relating to Distributions to Holders of Allowed Claims pursuant to the provisions of the Plan;

(vi) Following the Effective Date and consistent with section 1142 of the Bankruptcy Code, construe, take any action and issue such orders as may be necessary for the enforcement, implementation, execution and consummation of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan and the Confirmation Order, for the maintenance of the integrity of the Plan and protection of the Estates following consummation in accordance with sections 524 and 1141 of the Bankruptcy Code;

(vii) Determine and resolve any case, controversy, suit or dispute that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan or the Confirmation Order, including the indemnification, release and injunction provisions set forth in the Plan, or any Person's rights arising under or obligations incurred in connection therewith;

(viii) Modify the Plan after the Effective Date pursuant to section 1127 of the Bankruptcy Code and the Plan or modify the Plan Summary, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Plan Summary or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Plan Summary, the Confirmation Order;

(ix) Issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(x) Enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(xi) Determine any other matters that may arise in connection with or relating to the Plan, the Plan Summary, the Confirmation Order and the Bankruptcy Code;

(xii) Determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(xiii) Continue to enforce the automatic stay through the Effective Date;

37

(xiv) Hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, and issues presented or arising under the Plan, including but not limited to disputes among Holders or with the Reorganized Debtor and arising under agreements, documents or instruments executed in connection with or governed by the Plan;

(xv) Hear and determine any other matter relating to the Plan, its interpretation or enforcement; and

(xvi) Enter a final decree and close the Chapter 11 Cases.

## ARTICLE XII

## CONFIRMATION AND EFFECTIVENESS OF THE PLAN

**Section 12.01.**      **Conditions Precedent to Confirmation.**

Confirmation of the Plan is subject to:

(a)      the Disclosure Statement having been approved by the Bankruptcy Court as having adequate information in accordance with section 1125 of the Bankruptcy Code; and

(b)      entry of the Confirmation Order in form and substance reasonably satisfactory to the Debtors and the Plan Sponsor.

**Section 12.02.**      **Conditions Precedent to the Effective Date.**

The occurrence of the Effective Date is subject to:

(a)      the Confirmation Order, in form and substance satisfactory to the Debtors and the Plan Sponsor, having become a Final Order;

(b)      the Plan and related documents, in form and substance satisfactory to the Debtors, and the Plan Sponsor, being executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtors that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith;

(c)      the Debtors and Sky Light having executed all documents and entered into all agreements as may be necessary and appropriate in connection with the Sky Light Funding Amount, which shall be fixed or the Effective Date;

(d)      the Cash or the consummation of the transaction contemplated hereby shall be funded by the Plan Sponsor and be sufficient to fund the Distributions under the Plan.

(e)      the Board of Directors of the Reorganized Debtors shall have been selected and shall have agreed to serve.

(f)       all other actions and documents necessary to implement the Plan shall have been effected or executed and shall be reasonably acceptable to the Debtors and the Plan Sponsor.


### Section 12.03.       Dissolution of Creditors' Committee

Except to the extent provided herein, upon the Effective Date, the current and former members of the Creditors' Committee and any other creditor, equity or other committee appointed pursuant to section 1102 of the Bankruptcy Code in the Chapter 11 Cases, and their respective officers, employees, counsel, advisors and agents, shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Chapter 11 Cases; provided, however, that following the Effective Date the Creditors' Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (1) Claims and/or applications for compensation by Professionals and request for allowance of Administrative Claims for substantial contribution pursuant to section 503(b)(3)(D) of the Bankruptcy Code; (2) any appeals to which the Creditors' Committee is a party; and (3) any adversary proceedings or contested matters as of the Effective Date to which the Creditors' Committee is a party.  Following the completion of the Creditors' Committee's remaining duties set forth above, the Creditors' Committee shall be dissolved, and the retention or employment of the Creditors' Committee's respective attorneys, financial advisors and any other agent shall terminate.

### Section 12.04.       Waiver of Conditions Precedent and Bankruptcy Rule 3020(e) Automatic Stay.

The Debtors, subject to receipt of consent from the Plan Sponsor which consent shall not be unreasonably withheld, and to the extent not prohibited by applicable law, shall have the right to waive one or more of the conditions precedent set forth above at any time without leave of or notice to the Bankruptcy Court and without formal action other than proceeding with confirmation of the Plan.

If any condition precedent to the Effective Date is waived pursuant to this Section and the Effective Date occurs, the waiver of such condition shall benefit from the "mootness doctrine", and the act of consummation of the Plan shall foreclose any ability to challenge the Plan in any court.

### Section 12.05.       Statutory Confirmation Requirements

Set forth below is a summary of the relevant statutory confirmation requirements.

### 1.       Best Interests Test

Each Holder of a Claim or Interest in an Impaired Class must either (i) accept the Plan or (ii) receive or retain under the Plan Cash or property of a value, as of the Effective Date of the Plan, that is not less than the value such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  The Bankruptcy Court will determine whether the Cash and property issued under the Plan to each Holder of a Claim or Interest equals

39

or exceeds the value that would be allocated to such Holders in a liquidation under chapter 7 of the Bankruptcy Code (the "Best Interests Test"). The Debtors' Liquidation Analysis is attached as Exhibit C hereto. The Debtors believe the Holders of Claims against and Interests in the Debtors will have an equal or greater recovery as a result of an orderly chapter 11 reorganization as discussed herein and under the Plan than could be realized in a chapter 7 liquidation for the following reasons:

To determine the value that a Holder of a Claim or Interest in an Impaired Class would receive if the Debtors were liquidated under chapter 7, the Bankruptcy Court must determine the aggregate dollar amount that would be generated from the liquidation of the Debtors' Property if the Debtors' Chapter 11 Cases had been converted to chapter 7 liquidation cases and the Debtors' Property were liquidated by a chapter 7 trustee (the "Liquidation Value"). The Liquidation value would consist of the net proceeds from the disposition of the Debtors' Property, augmented by Cash held by the Debtors and reduced by certain increased costs and Claims that arise in a chapter 7 liquidation case that do not arise in a chapter 11 reorganization case.

As explained below, the Liquidation value available for satisfaction of Claims and Interests in the Debtors would be reduced by: (a) the costs, fees and expenses of the liquidation under chapter 7, which would include disposition expenses and the compensation of a trustee and his or her counsel and other professionals retained, (b) the fees of the chapter 7 trustee, and (c) certain other costs arising from conversion of the Chapter 11 Cases to chapter 7.

The Debtor believes that Holders of Allowed General Unsecured Claims have benefited and will continue to clearly benefit from the reorganization of the Debtors under the terms of the Plan. If the Debtors' Property were liquidated by a chapter 7 trustee, the Debtors projects that the maximum recovery for Holders of Allowed General Unsecured Claims would be zero. Under the Plan, the Debtors projects a recovery of approximately fifteen percent.

Moreover, under the Plan the Debtors will avoid the increased costs and expenses of a chapter 7 liquidation, including the fees payable to a chapter 7 trustee and his or her professionals. The Cash to be distributed to Creditors would be reduced by the chapter 7 trustee's statutory fee, which is calculated on a sliding scale from which the maximum compensation is determined based on the total amount of moneys disbursed or turned over by the chapter 7 trustee. Bankruptcy Code § 326(a) permits reasonable compensation not to exceed 3% of the proceeds in excess of $1 million distributable to creditors.[4] The chapter 7 trustee's professionals, including legal counsel and accountants, would add substantial administrative expenses that would be entitled to be paid ahead of Allowed Claims and Interests against the Debtor. Moreover, these chapter 7 trustee fees would reduce the funds available for distribution to the Debtors' Creditors from additional recoveries such as preferential payments, expunged Administrative Expense Claims and the proceeds of successful Estate litigation or settlement.

---

[4] Bankruptcy Code § 326(a) permits a chapter 7 trustee to receive 25% of the first $5,000 distributed to creditors, 10% of additional amounts up to $50,000, 5% of additional distributions up to $1 million and reasonable compensation up to 3% of distributions in excess of $1 million.

40

It is also anticipated that a chapter 7 liquidation would result in a significant delay in payments being made to Creditors.  Bankruptcy Rule 3002(c) provides that conversion of a chapter 11 case to chapter 7 will trigger a new bar date for filing claims against the Debtor, and that the new bar date will be 90 days after the first date set for the meeting of creditors called under section 341 of the Bankruptcy Code.  Not only would a chapter 7 liquidation delay distribution to Creditors, but it is possible that additional claims that were not asserted in the Chapter 11 Case, or were late-filed, could be filed against the Debtors.  Reopening the bar date in connection with conversion to chapter 7 would provide these and other claimants an additional opportunity to file claims against the Estates.

For the reasons set forth above, the Debtors believe that the Plan provides a superior recovery for Holders of Claims and Interests, and the Plan meets the requirements of the Best Interests Test.

## 2.    Financial Feasibility Test

Even if the Plan is accepted by each Class of Claims and Interests voting on the Plan, and even if the Bankruptcy Court determines that the Plan satisfies the Best Interests Test, the Bankruptcy Code requires that, in order for the Plan to be confirmed by the Bankruptcy Court, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor.

As part of this analysis, the Debtors have prepared projections of the financial performance of the Reorganized Debtors (the "Financial Projections").  The Financial Projections, and the assumptions on which they are based, are set forth in Exhibit B hereto.

The Debtors believe that it will be able to make all payments required pursuant to the Plan while conducting ongoing business operations and, therefore, that confirmation of the Plan is not likely to be followed by liquidation or the need for further reorganization.

## 3.    Acceptance by Impaired Classes

Bankruptcy Code § 1129(b) provides that a plan can be confirmed even if it has not been accepted by all impaired classes as long as at least one impaired class of claims has accepted it. The process by which nonaccepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown."  The Bankruptcy Court may confirm the Plan at the request of the Debtor notwithstanding the Plan's rejection (or deemed rejection) by impaired classes as long as the Plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted it.  A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to classes of equal rank.

A class of claims under a plan accepts the plan if the plan is accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims in the class that actually vote on the plan.  A class of interests accepts the plan if the plan is accepted by holders of interests that hold at least two-thirds in amount of the allowed interests in the class that actually vote on a plan.

41

A class that is not "impaired" under a plan is conclusively presumed to have accepted the plan. Solicitation of acceptances from such a class is not required. A class is "impaired" unless (i) the legal, equitable and contractual rights to which a claim or interest in the class entitles the holder are not modified, or (ii) the effect of any default is cured and the original terms of the obligation are reinstated.

A plan is fair and equitable as to a class of secured claims that rejects the plan if the plan provides (i)(a) that the holders of claims included in the rejecting class retain the liens securing those claims, whether the property subject to those liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims, and (b) that each holder of a claim of such class receives on account of that claim deferred cash payments totaling at least the allowed amount of that claim, of a value, as of the effective date of the plan, at least equal to the value of the holder's interest in the estate's interest in such property; (ii) for the sale, subject to Bankruptcy Code § 363(k), of any property that is subject to the liens securing the claims included in the rejecting class, free and clear of the liens, with the liens to attach to the proceeds of the sale, and the treatment of the liens on proceeds under clause (i) or (ii) of this paragraph; or (iii) for the realization of the indubitable equivalent of such claims.

A plan is fair and equitable as to a class of unsecured claims that rejects the plan if the plan provides (i) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim, or (ii) that the holder of any claim or interest that is junior to the claims of such rejecting class will not receive or retain on account of such junior claim or interest any property at all.

A plan is fair and equitable as to a class of equity interests that rejects a plan if the plan provides (i) that each holder of an interest included in the rejecting class receive or retain on account of that interest property that has a value, as of the effective date of the plan, equal to the greater of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (ii) that the holder of any interest that is junior to the interest of such rejecting class will not receive or retain under the plan on account of such junior interest any property at all. The Debtors believe the Plan to be both fair and equitable.

# ARTICLE XIII

## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The following discussion summarizes certain federal income tax consequences expected to result from the consummation of the Plan. This discussion is only for general information purposes and only describes the expected tax consequences to Holders entitled to vote on the Plan. It is not a complete analysis of all potential federal income tax consequences and does not address any tax consequences arising under any state, local or foreign tax laws or federal estate or gift tax laws. This discussion is based on the Internal Revenue Code of 1986, as amended, Treasury Regulations promulgated thereunder, judicial decisions, and published rulings and

42

administrative pronouncements of the IRS, all as in effect on the date of the Disclosure Statement.  These authorities may change, possibly retroactively, resulting in federal income tax consequences different from those discussed below.  No ruling has been or will be sought from the IRS, and no legal opinion of counsel will be rendered, with respect to the matters discussed below.  There can be no assurance that the IRS will not take a contrary position regarding the federal income tax consequences resulting from the consummation of the Plan or that any contrary position would not be sustained by a court.

This discussion does not address all federal income tax considerations that may be relevant to a particular Holder in light of that Holder's particular circumstances or to Holders subject to special rules under the federal income tax laws, such as financial institutions, insurance companies, brokers, dealers or traders in securities, commodities or currencies, tax-exempt organizations, tax-qualified retirement plans, partnerships and other pass-through entities, foreign corporations, foreign trusts, foreign Estate, Holders who are not citizens or residents of the U.S., Holders subject to the alternative minimum tax, and Holders who have a functional currency other than the U.S. dollar.

HOLDERS SHOULD CONSULT THEIR TAX ADVISORS REGARDING THE U.S. FEDERAL INCOME TAX CONSEQUENCES TO THEM OF THE CONSUMMATION OF THE PLAN, AS WELL AS ANY TAX CONSEQUENCES ARISING UNDER ANY STATE, LOCAL OR FOREIGN TAX LAWS, OR ANY OTHER FEDERAL TAX LAWS.

**TO COMPLY WITH INTERNAL REVENUE SERVICE CIRCULAR 230, TAXPAYERS ARE HEREBY NOTIFIED THAT (a) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THE DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED BY ANY TAXPAYER, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER UNDER THE INTERNAL REVENUE CODE, (b) ANY SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN, AND (c) TAXPAYERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

Payments of interest, dividends and certain other payments are generally subject to backup withholding at the applicable withholding rate unless the payee of such payment furnishes such payee's correct taxpayer identification number (social security number or employer identification number) to the payor.  The Debtors may be required to withhold the applicable percentage of any payments made to a Holder who does not provide his, her or its taxpayer identification number.  Backup withholding is not an additional tax, but an advance payment that may be refunded to the taxpayer by the IRS to the extent that the backup withholding results in an overpayment of tax by such taxpayer in such taxable year.

THE FOREGOING DISCUSSION OF FEDERAL INCOME TAX CONSIDERATIONS IS FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. EACH HOLDER SHOULD CONSULT ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN DESCRIBED HEREIN.  NEITHER THE DEBTORS NOR THEIR PROFESSIONALS WILL HAVE ANY

43

LIABILITY TO ANY PERSON OR HOLDER ARISING FROM OR RELATED TO THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN OR THE FOREGOING DISCUSSION.

### 1.    Federal Income Tax Consequences to Holders of Kim POV Claims

In accordance with the Plan, each Holder of an Allowed Kim POV Claim against the Debtors shall be entitled to receive his, her or its Pro Rata Share of the Kim POV Claim Distribution. Each Holder of an Allowed General Unsecured Claim may recognize gain or loss upon receipt of such Pro Rata Share equal to the difference between the "amount realized" by such Creditor and such Creditor's adjusted tax basis in his, her or its Claim. The amount realized is equal to the value of such Creditor's Pro Rata Share of the proceeds of the Debtors' Property. Any gain or loss realized by an Unsecured Creditor should constitute ordinary income or loss to such creditor unless such Claim is a capital asset in the hands of such holder of the Kim POV Claim. If a Kim POV Claim is a capital asset and it has been held for more than one year, such holder of a Kim POV Claim Lender will realize long-term capital gain or loss.

The federal income tax consequences to such Creditors will differ and will depend on factors specific to each such Kim POV Holder, including, but not limited to: (i) whether the Kim POV Claim (or a portion thereof) constitutes a Claim for principal or interest, (ii) the origin of the Kim POV Claim, (iii) the type of consideration received by the Creditor in exchange for the Claim, (iv) whether the holder of the Kim POV Claim is a United States person or a foreign person for United States federal income tax purposes, (v) whether the holder of the Kim POV Claim reports income on the accrual or cash basis method, and (vi) whether the holder of the Kim POV Claim has taken a bad debt deduction or otherwise recognized a loss with respect to the Claim.

### 2.    Federal Income Tax Consequences to Holders of General Unsecured Claims

In accordance with the Plan, each Holder of an Allowed General Unsecured Claim against the Debtors shall be entitled to receive his, her or its Pro Rata Share of the General Unsecured Claim Distribution. Each Holder of an Allowed General Unsecured Claim will recognize gain or loss upon receipt of such Pro Rata Share equal to the difference between the "amount realized" by such Creditor and such Creditor's adjusted tax basis in his, her or its Claim. The amount realized is equal to the value of such Creditor's Pro Rata Share of the proceeds of the Debtors' Property. Any gain or loss realized by an Unsecured Creditor should constitute ordinary income or loss to such creditor unless such Claim is a capital asset in the hands of such Unsecured Creditor. If a Claim is a capital asset and it has been held for more than one year, such Creditor will realize long-term capital gain or loss.

The federal income tax consequences to such Creditors will differ and will depend on factors specific to each such Creditor, including, but not limited to: (i) whether the Creditor's Claim (or a portion thereof) constitutes a Claim for principal or interest, (ii) the origin of the Creditor's Claim, (iii) the type of consideration received by the Creditor in exchange for the Claim, (iv) whether the Creditor is a United States person or a foreign person for United States federal income tax purposes, (v) whether the Creditor reports income on the accrual or cash basis

44

method, and (vi) whether the Creditor has taken a bad debt deduction or otherwise recognized a loss with respect to the Claim.

### 3.    Withholding and Reporting

Payments of interest, dividends and certain other payments are generally subject to backup withholding at the rate at the applicable withholding rate unless the payee of such payment furnishes such payee's correct taxpayer identification number (social security number or employer identification number) to the payor. The Debtor may be required to withhold the applicable percentage of any payments made to a Holder who does not provide his, her or its taxpayer identification number. Backup withholding is not an additional tax, but an advance payment that may be refunded to the taxpayer by the IRS to the extent that the backup withholding results in an overpayment of tax by such taxpayer in such taxable year.

**THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX CONSEQUENCES TO EACH SUCH CREDITOR. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND IN SOME CASES UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH CREDITOR OBTAIN HIS, HER OR ITS OWN PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AS A RESULT OF THE PLAN**

THE FOREGOING DISCUSSION OF FEDERAL INCOME TAX CONSIDERATIONS IS FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. EACH HOLDER SHOULD CONSULT ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN DESCRIBED HEREIN. NEITHER THE DEBTORS NOR THEIR PROFESSIONALS WILL HAVE ANY LIABILITY TO ANY PERSON OR HOLDER ARISING FROM OR RELATED TO THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN OR THE FOREGOING DISCUSSION.

### Section 13.02.    Consequences to the Debtors.

Subject to certain exceptions, a debtor recognizes cancellation of debt ("COD") income upon satisfaction of its outstanding indebtedness equal to the excess of (i) the amount of the indebtedness discharged, over (ii) the issue price of any new indebtedness issued, the amount of cash paid, and the fair market value of any other consideration (including stock of the debtor) given in satisfaction of the indebtedness. As discussed below, there is an insolvency exception to the recognition of COD income which will apply to the Reorganized Debtors in connection with the Plan.

The Reorganized Debtors will not be required to include COD income to the extent Reorganized Debtors are insolvent at the time of the discharge. IRC § §108(a)(1)(B) and 108(a)(3).

However, under IRC § 108(b)(2), the Reorganized Debtors must reduce certain tax attributes (in general, first its Net Operating Loss carryovers and then certain tax credits, capital

loss carryovers, the tax basis of its assets, and foreign tax credits) by the amount of COD income excluded from gross income by this exception.

## ARTICLE XIV

## SECURITIES LAW MATTERS

### Section 14.01.    General.

The Plan provides for the issuance of the New Common Stock by the Reorganized Debtors. The Debtors believe that the New Common Stock are "securities," as defined in Section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws.

### Section 14.02.    New Common Stock

### 1.    Issuance of the New Common Stock

The Debtor believes that the offer and sale of the New Common Stock pursuant to the Plan will be issued without registration under the Securities Act or any similar federal, state, or local law in reliance upon the exemptions set forth in Section 1145 of the Bankruptcy Code or, if applicable, in reliance on the exemption from registration set forth in Section 4(2) of the Securities Act or Regulation D promulgated under the Securities Act by the SEC.

Section 1145 of the Bankruptcy Code provides that Section 5 of the Securities Act and any state law requirements for the offer and sale of a security do not apply to the offer or sale of stock, options, warrants or other securities by a debtor if (a) the offer or sale occurs under a plan of reorganization, (b) the recipients of the securities hold a claim against, an interest in, or claim for administrative expense against, the debtor, and (c) the securities are issued in exchange for a claim against or interest in a debtor or are issued principally in such exchange and partly for cash and property. In reliance upon section 1145 of the Bankruptcy Code, the Securities Act and similar federal, state or local law, the New Common Stock will not be registered under the Securities Act or any state securities laws.

The Debtors believe that the offer and sale of any securities to be issued in conjunction with the Plan to which the exemption provided under Section 1145 of the Bankruptcy Code is not applicable will be exempt from registration pursuant to the nonpublic offering exemption under Section 4(2) of the Securities Act or Regulation D promulgated under the Securities Act by the SEC or equivalent exemptions under state securities laws.

### 2.    Resale of the New Common Stock: Securities Law Restrictions.

### a.    <u>Section 1145 of the Bankruptcy Code</u>

The Debtors further believes that subsequent transfers of the New Common Stock by the Holders thereof that are not "underwriters," as defined in Section 2(a)(11) of the Securities Act and Section 1145(b)(1) of the Bankruptcy Code, may be exempt from federal and state securities registration requirements under various provisions of the Securities Act, the Bankruptcy Code

46

and applicable state securities laws if certain conditions are met.  In addition, the NewCommon Stock generally may be able to be resold without registration under state securities laws pursuant to various exemptions provided by the respective laws of those states; however, the availability of such exemptions cannot be known unless individual state securities laws are examined. Therefore, recipients of the New Common Stock are advised to consult with their own legal advisors as to the availability of any such exemptions from registration under federal or state law in any given instance and as to any applicable requirements or conditions to such availability.

Section 1145(b)(1) of the Bankruptcy Code defines an "underwriter" as one who, except with respect to "ordinary trading transactions" of an entity that is not an "issuer," (a) purchases a claim against, interest in, or claim for an administrative expense in the case concerning, the debtor, if such purchase is with a view to distribution of any security received or to be received in exchange for such claim or interest, or (b) offers to sell securities offered or sold under a plan for the holders of such securities, or (c) offers to buy securities offered or sold under a plan from the holders of such securities, if such offer to buy is (i) with a view to distribution of such securities and (ii) under an agreement made in connection with the plan, with the consummation of the plan, or with the offer or sale of securities under the plan, or (d) is an issuer of the securities within the meaning of Section 2(a)(11) of the Securities Act.  In addition, a Person who receives a fee in exchange for purchasing an issuer's securities could also be considered an underwriter within the meaning of Section 2(a)(11) of the Securities Act.

The definition of an "issuer" for purposes of whether a Person is an underwriter under section 1145(b)(1)(D) of the Bankruptcy Code, by reference to Section 2(a)(11) of the Securities Act, includes as "statutory underwriters" all persons who, directly or indirectly, through one or more intermediaries, control, are controlled by, or are under common control with, an issuer of securities.  The reference to "issuer," as used in the definition of "underwriter contained in Section 2(a)(11), is intended to cover "controlling persons" of the issuer of the securities. "Control," as defined in Rule 405 of the Securities Act, means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of voting securities, by contract, or otherwise. Accordingly, an officer or director of a reorganized debtor or its successor under a plan of reorganization may be deemed to be a "controlling person" of such debtor or successor, particularly if the management position or directorship is coupled with ownership of a significant percentage of the reorganized debtor or its successor's voting securities.  Moreover, the legislative history of section 1145 of the Bankruptcy Code suggests that a creditor who owns ten percent (10%) or more of a class of securities of a reorganized debtor may be presumed to be a "controlling person" and, therefore, an underwriter.

Resale of the New Common Stock by Persons deemed to be "underwriters" (which definition includes "controlling person") are not exempted by section 1145 of the Bankruptcy Code from registration under the Securities Act or other applicable law.  Under certain circumstances, holders of the New Common Stock who are deemed to be "underwriters" may be entitled to resell their New Common Stock pursuant to the limited safe harbor resale provisions of Rule 144 of the Securities Act.  Generally, Rule 144 of the Securities Act would permit the public sale of securities received by such person if current information regarding the issuer is publicly available and if volume limitations, manner of sale requirements and certain other conditions are met.  However, the Reorganized Debtor does not presently intend to make

47

publicly available the requisite information regarding the Reorganized Debtor and, as a result, Rule 144 will not be available for resales of the New Common Stock by persons deemed to be underwriters.

Whether any particular Person would be deemed to be an "underwriter" (including whether such Person is a "controlling person") with respect to the New Common Stock would depend upon various facts and circumstances applicable to that Person. Accordingly, the Debtor expresses no view as to whether any Person would be deemed an "underwriter" with respect to the New Common Stock. In view of the complex nature of the question of whether a particular Person may be an underwriter, the Debtor makes no representations concerning the right of any Person to freely resell the New Common Stock.

b.     <u>Section 4(2) of the Securities Act</u>

If the Bankruptcy Court does not find that Section 1145 of the Bankruptcy Code is applicable to the issuance of any such securities under the Plan, the Debtor believes that any such issuance of such securities would be exempt pursuant to Section 4(2) of the Securities Act , or Regulation D promulgated under the Securities Act by the SEC as a transaction by an issuer not involving any public offering, and equivalent exemptions in state securities laws.

Securities issued pursuant to the exemption provided by Section 4(2) of the Securities Act or Regulation D promulgated under the Securities Act by the SEC are considered "restricted securities." As a result, resales of such securities may not be exempt from the registration requirements of the Securities Act or other applicable law.

Securities offered and sold pursuant to Section 4(2) of the Securities Act may be publicly resold if and when they are registered under the Securities Act (and under any state securities law that require registration) or if an exemption from registration is available to the holder of such securities, such as pursuant to the resale provisions of Rule 144 under the Securities Act, and such holder demonstrates the availability of such exemption to the reasonable satisfaction of the issuer of those securities.

**THE DEBTORS STRONGLY RECOMMEND THAT POTENTIAL RECIPIENTS OF THE NEW COMMON STOCK CONSULT THEIR OWN COUNSEL CONCERNING WHETHER THEY MAY FREELY TRADE SUCH SECURITIES WITHOUT COMPLIANCE WITH THE FEDERAL AND STATE SECURITIES LAWS.**

**ARTICLE XV**

**SUMMARY OF VOTING PROCEDURES**

The Disclosure Statement, including all Exhibits hereto and the related materials included herewith, is being furnished to the Holders of Claims in Classes 2, 3, and 4, which are the only Classes entitled to vote on the Plan.

All votes to accept or reject the Plan must be cast by using the ballot (the "Ballot") enclosed with the Disclosure Statement. No other votes will be counted. Consistent with the

48

provisions of Bankruptcy Rule 3018, the Court has fixed [   ] at 4:00 p.m. (prevailing Eastern Time) as the Voting Record Date.  Ballots must be RECEIVED by counsel for the Debtor at the address set forth below (or as otherwise directed) no later than 4:00 p.m. (prevailing Eastern Time) on [   ], unless the Debtor, at any time, subject to the consent of the Plan Sponsors, extends such date by oral or written notice, in which event the period during which Ballots will be accepted will terminate at 4:00 p.m. (prevailing Eastern Time) on such extended date.

If the Ballot is damaged or lost, you may contact counsel for the Debtor at the number set forth below.

Ballots received by facsimile, telecopy or other means of electronic transmission will not be accepted, except as otherwise agreed by the Debtor with the consent of the Plan Sponsors.

Ballots previously delivered may be withdrawn or revoked at any time prior to the Voting Deadline by the beneficial owner on the Voting Record Date who completed the original Ballot. Only the person or nominee who submits a Ballot can withdraw or revoke that Ballot.  A Ballot may be revoked or withdrawn either by submitting a superseding Ballot or by providing written notice to counsel for the Debtor.

Acceptances or rejections may be withdrawn or revoked prior to the Voting Deadline by delivering a written notice of withdrawal or revocation to counsel for the Debtor.  To be effective, notice of revocation or withdrawal must: (a) be received on or before the Voting Deadline by counsel for the Debtors at its address specified below; (b) specify the name of the Holder of the Claim whose vote on the Plan is being withdrawn or revoked; (c) contain the description of the Claim as to which a vote on the Plan is withdrawn or revoked; and (d) be signed by the Holder of the Claim who executed the Ballot reflecting the vote being withdrawn or revoked, in the same manner as the original signature on the Ballot.  The foregoing procedures should also be followed with respect to a person entitled to vote on the Plan who wishes to change (rather than revoke or withdraw) its vote.

## ARTICLE XVI

## CERTAIN FACTORS TO BE CONSIDERED REGARDING THE PLAN

Holders of Claims and Interests against the Debtors should read and consider carefully the factors set forth below, as well as the other information set forth in the Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference), prior to voting to accept or reject the Plan.  These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and its implementation.

### Section 16.01.    Certain Bankruptcy Considerations.

#### 1.    General.

Although the Plan is designed to minimize the length of time remaining in the Chapter 11 Cases, it is impossible to predict with certainty the amount of time that the Debtors may spend in bankruptcy or to assure parties-in-interest that the Plan will be confirmed.

Even if the Plan is confirmed on a timely basis, the Chapter 11 Cases could have an adverse effect on the Debtors' businesses. Among other things, it is possible that any delays could adversely affect the Debtors' relationships with its key vendors and suppliers, customers and employees. If the Debtors are unable to obtain confirmation of the Plan on a timely basis because of a challenge to confirmation of the Plan or a failure to satisfy the conditions to consummation of the Plan, the Debtors may be forced to continue the Chapter 11 Cases for an extended period while the Debtors try to develop a different reorganization plan that can be confirmed. That would increase both the probability and the magnitude of the potentially adverse effects described herein.

## 2.      Failure to Receive Requisite Acceptances.

Classes 2, 3 and 4 are the only Classes that are entitled to vote to accept or reject the Plan. If the requisite acceptances are not received by at least one Impaired Class, the Debtors will not be able to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code, because at least one Impaired Class will not have voted in favor of the Plan as required by section 1129(a)(10) of the Bankruptcy Code. Further, if the requisite acceptances are not received, the Debtors may seek to accomplish an alternative restructuring of their capitalization and obligations to creditors and obtain acceptances to an alternative plan of reorganization for the Debtor, or otherwise, the Debtor may be required to liquidate the Estate under chapter 7 or 11 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to the Debtors' creditors as those proposed in the Plan.

## 3.      Failure to Confirm the Plan.

Even if the requisite acceptances are received, the Bankruptcy Court, which, as a court of equity may exercise substantial discretion, may decide not to confirm the Plan. Section 1129 of the Bankruptcy Code requires, among other things, a showing that confirmation of the Plan will not be followed by liquidation or the need for further financial reorganization of the Debtors, and that the value of distributions to dissenting Holders of Claims and Interests may not be less than the value such Holders would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. Although the Debtors believe that the Plan meets such test, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

Additionally, the contemplated solicitation must comply with the requirements of section 1125 of the Bankruptcy Code and the applicable Bankruptcy Rules with respect to the length of the solicitation period and the adequacy of the information contained in the Disclosure Statement.

## 4.      Failure to Consummate the Plan.

There can be no assurance that conditions to consummation will be satisfied or waived. Accordingly, even if the Plan is confirmed by the Bankruptcy Court, there can be no assurance that the Plan will be consummated and the restructuring completed.

5.        **Objections to Classification of Claims.**

Section 1122 of the Bankruptcy Code provides that a plan of reorganization may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests in such class.  The Debtors believe that the classification of Claims and Interests under the Plan complies with the requirements set forth in the Bankruptcy Code. However, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

**Section 16.02.        Certain Tax Consequences of the Plan Raise Unsettled and Complex Legal Issues and Involve Factual Determinations.**

The federal income tax consequences of the Plan are complex and are subject to significant uncertainties.  The Debtor currently does not intend to seek any ruling from the IRS on the tax consequences of the Plan.  Even if the Debtor decides to request a ruling, there would be no assurance that the IRS would rule favorably or that any ruling would be issued before the Effective Date.  In addition, in such case, there would still be issues with significant uncertainties, which would not be the subject of any ruling request.  *Thus, there can be no assurance that the IRS will not challenge the various positions the Debtors have taken, or intends to take, with respect to the tax treatment in the Plan, or that a court would not sustain such a challenge.*

As a result of the consummation of the Plan and the transactions contemplated thereby, the Reorganized Debtors believe they will be subject to the fresh-start accounting rules.  Fresh-start accounting allows for the assessment of every balance sheet account for possible fair value adjustment, resulting in the emergence of a new company recapitalized and revalued.  This process is guided by purchase price allocation standards under GAAP.

In addition, the contents of the Disclosure Statement should **not** be construed as legal, business or tax advice.  Each Holder of a Claim or Interest should consult his, her, or its own legal counsel and accountant as to legal, tax and other matters concerning his, her, or its Claim or Interest.

The Disclosure Statement is **not** legal advice to you.  The Disclosure Statement may **not** be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

**Section 16.03.        Risks Associated with the Business.**

1.        **The Debtors' Chapter 11 Cases May Negatively Impact the Debtors' Future Operations.**

While the Debtors believe they will be able to emerge from chapter 11 relatively expeditiously, there can be no assurance as to timing for approval of the Plan or the Debtors' emergence from chapter 11.

51

2.       **The Debtors Rely on a Limited Number of Key Suppliers and Vendors to Operate its Business.**

Currently, the shipments of the Debtors' suppliers are adequate to supply the Debtors' needs.  However, if the Debtor experience future problems with the suppliers, the Debtors could become unable to operate its business successfully.

3.       **The Loss of One or More of the Debtors' Key Personnel Could Disrupt Operations and Adversely Affect Financial Results.**

The Debtors are highly dependent upon the availability and performance of their senior management.  Accordingly, the loss of services of any of the Debtors' senior management could materially adversely affect the Debtors' business, financial condition and operating results.

## ARTICLE XVII

## MISCELLANEOUS PROVISIONS

**Section 17.01.       Binding Effect of Plan.**

The provisions of the Plan shall be binding upon and inure to the benefit of the Debtors, any Holder of any Claim or Interest treated herein and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

**Section 17.02.       Severability.**

Should the Bankruptcy Court determine prior to entry of the Confirmation Order, that any provision of the Plan is either illegal or unenforceable on its face or illegal or unenforceable as applied to any Claim or Interest, such provision shall be unenforceable as to all Holders of Claims or Interests or to the specific Holder of such Claim or Interest, as the case may be, as to which the provision is illegal.  Unless otherwise determined by the Bankruptcy Court, such a determination shall in no way limit or affect the enforceability and operative effect of any other provisions of the Plan.  The Debtors reserve the right not to proceed with Confirmation and/or consummation of the Plan if any such ruling occurs.

**Section 17.03.       Governing Law.**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to conflicts of law principles which would apply the law of a jurisdiction other than the State of Delaware or the United States of America.

**Section 17.04.        Notices**

Any notice required or permitted to be provided under the Plan shall be in writing and served by either prepaid (i) certified mail, return receipt requested, (ii) hand delivery, or (iii) overnight delivery service, to be addressed as follows:

If to the Debtors or Reorganized Debtors
Olshan Frome Wolosky LLP
Counsel for iON Worldwide, Inc.
1325 Avenue of the Americas
New York, New York 10019
Attn:    Michael S. Fox, Esq.
            Jonathan T. Koevary, Esq.

With a copy to:

A M Saccullo Legal, LLC
27 Crimson King Drive
Bear, DE 19701
Attn:  Anthony M. Saccullo, Esq.


If to the Plan Sponsor

Whiteford Taylor & Preston LLC
The Renaissance Centre
405 N. King Street, Ste. 500
Wilmington, Delaware 19801
Attn: Chris Samis, Esq.

**Section 17.05.        Filing of Additional Documents.**

On or before substantial consummation of the Plan, or such later time as may be authorized by the Bankruptcy Court, the Debtors are authorized to issue, execute, deliver or File with the Bankruptcy Court or record any agreements and other documents, and take any action as may be necessary or appropriate to effectuate, consummate and further evidence implementation of the terms and conditions of the Plan.

**Section 17.06.        Time**

Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the day of the act or event from which the designated period begins to run shall not be included.  The last day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding day that is a Business Day. Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

### Section 17.07.    Exhibits/Schedules.

All exhibits and schedules to the Plan and any Plan Supplement are incorporated into and constitute a part of the Plan as if fully set forth herein.

### Section 17.08.    Defenses with Respect to Impaired or Unimpaired Claims.

Except as otherwise specifically provided in the Plan, nothing shall affect the parties' rights and/or legal and equitable defenses with respect to any Impaired or Unimpaired Claim, including but not limited to all rights relating to legal and equitable defenses to setoffs or recoupments against any Unimpaired Claim.

### Section 17.09.    No Injunctive Relief.

No Claim shall be entitled to specific performance or other injunctive, equitable or other prospective relief except as may be specified in the Plan.

### Section 17.10.    No Admissions.

Notwithstanding anything herein to the contrary, prior to the Effective Date, nothing contained in the Plan shall be deemed an admission by any party with respect to any matter set forth herein, including, without limitation, liability on any Claim or the propriety of any classification of any Claim; provided, however, that the provisions of the Plan shall be treated as admissions under the Federal Rules of Evidence upon the Effective Date.

### Section 17.11.    Extension of Time

Any period of time or deadline under the Plan may be extended by agreement of the parties affected thereby, or by order of the Bankruptcy Court upon good cause shown.

### Section 17.12.    Payment of Statutory Fees

All fees payable on or before the Effective Date pursuant to section 1930 of title 28 of the United States Code, and any applicable interest thereon, shall be paid by the Debtors on or before the Effective Date, and all such fees payable after the Effective Date shall be paid by the applicable Reorganized Debtors as and when such fees become due. Any deadline for filing Administrative Claims shall not apply to fees payable pursuant to section 1930 of title 28 of the United States Code.

### Section 17.13.    Conflict

To the extent that terms of Confirmation Order or the Plan are inconsistent with the Disclosure Statement or any agreement entered into between any of the Debtors and any other party, the terms of the Plan control the Disclosure Statement and any such agreement, and the provisions of the Confirmation Order (and any Final Orders entered by the Bankruptcy Court after the date of the Plan) control the terms of the Plan.

**Section 17.14.        Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Plan shall be or shall be, deemed to be, an admission or waiver of any rights of the Debtors with respect to any Claims or Interests prior to the Effective Date.

**Section 17.15.        Modifications and Amendments**

The Debtors may, with the consent of the Plan Sponsor, alter, amend, or modify the Plan or any Plan Document under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.

The Debtors shall provide parties-in-interest with notice of such amendments or modifications as may be required by the Bankruptcy Rules or order of the Bankruptcy Court.  A Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified, or clarified, if the proposed alteration, amendment, modification, or clarification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

After the Confirmation Date and prior to substantial consummation (as defined in section 1101(2) of the Bankruptcy Code) of the Plan, the Debtors or Reorganized Debtors, as applicable, may, under section 1127(b) of the Bankruptcy Code and with the consent of the Plan Sponsors, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement approved with respect to the Plan, or the Confirmation Order, and such matters as may be necessary to carry out the purpose and effect of the Plan so long as such proceedings do not adversely affect the treatment of Holders of Claims or Interests in the Debtors under the Plan; provided, however, that, to the extent required, prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or an order of the Bankruptcy Court.  A Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, modified or clarified, if the proposed alteration, amendment, modification or clarification does not materially and adversely change the treatment of the Claim or Interest of such Holder.

**Section 17.16.        Continuing Exclusivity and Solicitation Period**

Subject to further order of the Bankruptcy Court, until the Effective Date, the Debtors shall, pursuant to section 1121 of the Bankruptcy Code, retain the exclusive right to amend the Plan and to solicit acceptances thereof, and any modifications or amendments thereto.

**Section 17.17.        Compromises and Settlements**

NOTWITHSTANDING ANYTHING CONTAINED IN THE PLAN TO THE CONTRARY, THE ALLOWANCE, CLASSIFICATION, AND TREATMENT OF ALL ALLOWED CLAIMS AND ALLOWED INTERESTS AND THEIR RESPECTIVE RELATIVE PRIORITY AND RIGHTS OF THE CLAIMS AND INTERESTS IN EACH

CLASS IN CONNECTION WITH ANY CONTRACTUAL, LEGAL AND EQUITABLE SUBORDINATION RIGHTS RELATING THERETO.  AS OF THE EFFECTIVE DATE, ANY AND ALL SUCH RIGHTS DESCRIBED IN THE PRECEDING SENTENCE ARE SETTLED, COMPROMISED AND RELEASED PURSUANT TO THE PLAN.  THE CONFIRMATION ORDER SHALL CONSTITUE THE BANKRUPTCY COURT'S FINDING AND DETERMINATION THAT THE SETTLEMENTS REFLECTED IN THE PLAN, ARE (1) IN THE BEST INTERESTS OF THE DEBTORS AND THEIR ESTATES, (2) FAIR, EQUITABLE AND REASONABLE, (3) MADE IN GOOD FAITH, AND (4) APROVED BY THE BANKRUPTCY COURT PURSUANT TO SECTIONS 363 AND 1123 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019.  IN ADDITION, THE ALLOWANCE, CLASSIFICATION AND TREATMENT OF ALLOWED CLAIMS TAKES WHETHER UNDER THE BANKRUPTCY CODE OR OTHERWISE UNDER APPLICABLE LAW, THAT MAY EXIST BETWEEN THE DEBTORS AND THE RELEASING PARTIES; AND AS BETWEEN THE RELEASING PARTIES AND THE RELEASED PARTIES.  AS OF COUNTERCLAIMS ARE SETTLED, COMPROMISED AND RELEASED PURSUANT TO THE PLAN AND THE CONFIRMATION ORDER.

### Section 17.18.      Revocation, Withdrawal, or Non-Consummation

The Debtors reserve the right to revoke or withdraw the Plan at any time prior to the Confirmation Date and to File subsequent plans of reorganization.  If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, or if the Confirmation or the Effective Date does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and not acts taken in preparation for consummation of the Plan, shall (i) constitute or to be deemed to constitute a waiver or release of any Claims against, or any Interests in, the Debtors, or any Avoidance Actions or other claims by or against Debtors or any Person or Entity, (ii) prejudice in any manner the rights of the Debtors or any Person or Entity in any further proceedings involving the Debtors, or (iii) constitute an admission of any sort by the Debtors or any other Person or Entity.

## ARTICLE XVIII

## ALTERNATIVES TO CONFIRMATION OF THE PLAN

If the Plan is not consummated, the Debtors' capital structure will remain over-leveraged and the Debtors will remain unable to service their debt obligations.  Accordingly, if the Plan is not confirmed and consummated, the alternatives include:

### 1.      Liquidation Under the Bankruptcy Code.

The Debtor could be liquidated under chapter 7 of the Bankruptcy Code.  The Debtor believes that liquidation would result in lower aggregate distributions being made to creditors than those provided for in the Plan, which is demonstrated by the Liquidation Analysis set forth in Article XIV and attached as Exhibit C to the Disclosure Statement.

56

### 2. Alternative Plan(s) of Reorganization.

The Debtors believe that failure to confirm the Plan will lead inevitably to expensive and protracted Chapter 11 Cases.  In formulating and developing the Plan, the Debtors have explored numerous other alternatives and engaged in an extensive negotiating process with the Plan Sponsor.

The Debtors believes that not only does the Plan fairly adjust the rights of various Classes of Claims, but also that the Plan provides superior recoveries to the Debtors' creditors over any alternative capable of rational consideration (such as a chapter 7 liquidation), thus enabling many stakeholders to maximize their returns.  Rejection of the Plan in favor of some alternative method of reconciling the Claims and Interests will require, at the very least, an extensive and time consuming process (including the possibility of protracted and costly litigation) and will not result in a better recovery for any Class of Claims or Interests.

THE DEBTORS BELIEVE THAT CONFIRMATION OF THE PLAN IS PREFERABLE TO ANY ALTERNATIVE BECAUSE THE PLAN MAXIMIZES THE AMOUNT OF DISTRIBUTIONS TO ALL HOLDERS OF CLAIMS AND INTERESTS AND ANY ALTERNATIVE TO CONFIRMATION OF THE PLAN WILL RESULT IN SUBSTANTIAL DELAYS IN THE DISTRIBUTION OF ANY RECOVERIES. **THEREFORE, THE DEBTORS RECOMMEND THAT ALL HOLDERS OF IMPAIRED CLAIMS ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.**

### 3. Dismissal of the Debtors' Chapter 11 Cases.

Dismissal of the Debtors' Chapter 11 Cases would have the effect of restoring (or attempting to restore) all parties to the status quo ante.  Upon dismissal of the Debtors' Chapter 11 Cases, the Debtors would lose the protection of the Bankruptcy Code, thereby requiring, at the very least, an extensive and time consuming process of negotiation with the creditors of the Debtors, and possibly resulting in costly and protracted litigation in various jurisdictions.  The Debtors believe that these actions would seriously undermine its ability to obtain financing and could lead ultimately to the liquidation of the Debtor under chapter 7 of the Bankruptcy Code. Therefore, the Debtors believe that dismissal of the Debtors' Chapter 11 Cases is not a viable alternative to the Plan.

### ARTICLE XIX

### CONCLUSION

The Debtor believes that confirmation and implementation of the Plan is preferable because it will provide the greatest recovery to Holders of Claims.  Other alternatives could involve significant delay, uncertainty and substantial administrative costs and are likely to reduce any return to creditors who hold Claims. The Debtor urges the Holders of Impaired Claims in Classes 2, 3 and 4 who are entitled to vote on the Plan, to vote to accept the Plan and to evidence such acceptance by returning their Ballots to counsel for the Debtor so that they will be received not later than 4:00 p.m. (prevailing Eastern Time) on [VOTING DEADLINE].

## ARTICLE XX

## DEBTORS' RECOMMENDATION

The Debtors believe that confirmation and implementation of the Plan is preferable because it will provide the greatest recovery to Holders of Claims and Interests.  All Holders of Impaired Classes are urged to vote to accept the Plan and to evidence such acceptance by returning the ballots in accordance with the Procedures set forth herein.

58

Dated: Moorestown, New Jersey
       September __, 2016

Respectfully submitted,

**iON WORLDWIDE INC.**
on behalf of itself and its affiliated Debtor

By: _____