IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| iON Worldwide Inc., et al., | Case No. 16-11543 (LSS) |
| Debtors.[1] | (Jointly Administered) |

## DECLARATION OF CHRIS OATWAY IN SUPPORT OF CONFIRMATION OF THE DEBTORS' FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION

I, Chris Oatway do hereby declare, under penalty of perjury, that:

1.      I serve as Chief Financial Officer of iON Worldwide Inc. ("iON," or, together with iON America LLC, the "Debtors").

2.      I submit this declaration in support of confirmation of the Debtors' First Amended Chapter 11 Plan of Reorganization, dated September 20, 2016 (as may be modified and/or amended, the "Plan").[2]

3.      In my capacity as Chief Financial Officer, I am familiar with the day-to-day operations and the business and financial affairs of the Debtors. I am familiar with the Debtors' financing activities, restructuring and development of the Plan.

4.      Except as otherwise indicated, all facts set forth herein are based upon my personal knowledge or the personal knowledge of employees who report to me, my review of the Debtors' business records or my opinion based upon my familiarity with the Debtors' business operations and financial condition. If I were called upon to testify, I could and would testify competently as to the facts set forth herein

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: iON Worldwide Inc. (3211) and iON America LLC (2612). The Debtors' corporate headquarters is located at, and the mailing address for each Debtor is, 513 South Cenola Road, Suite 208, Moorestown, NJ 08057.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**I      BACKGROUND OF THE DEBTORS' CASES**

      A.    The Debtors' Business Operations

          5.    iON Worldwide is a Delaware corporation with offices located at 513 South Lenola Road, Moorestown, New Jersey, 08057.  iON Worldwide was formerly a Delaware limited liability company.  Currently, the iON Worldwide owns the trademark "iON" and is a licensee for certain other intellectual property used in its business.

          6.    iON America is a New Jersey corporation and performs supply chain management, manages inventory, customer support and marketing in the United States.

          7.    Prior to the filing, the Debtors were actively engaged in the design, development, manufacturing and sale of wearable, point of view (POV) action cameras and related products and accessories, under the brand names of iON and Contour.

          8.    The Debtors' brands offered a full range of connected and wearable cameras, including products for the higher end of the camera markets, as well as camera hardware and software solutions to enable consumers to shoot, edit, share, live stream and store their video/photo content in the cloud as simply as possible. The Debtors' product line includes home security solutions; dash cams; tiny, wearable, "lifestyle" cameras; and action/adventure cameras.

          9.    The Debtors' current products include iON AIR PRO, iON AIR PRO PLUS, iON AIR PRO WIFI, iON Air Pro 2, iON Air Pro 3, CamoCam, Speed-Pro, iON the Game, iON Adventure, iON the home, and SnapCam.

      B.    Background of the Chapter 11 Cases

          10.    On June 24, 2016 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Since the Petition Date, the Debtors have continued in management of their business as

3869508-3

debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On July 6,

2016, the Office of the United States Trustee formed an official committee of unsecured

creditors (the "Creditors' Committee").

         11.     On September 21, 2016, the Bankruptcy Court entered an order (the

"Disclosure Statement Order") approving the disclosure statement related to the Plan (the

"Disclosure Statement").  Thereafter, the Debtors with the assistance of Parcels, Inc. commenced

the solicitation process, including, without limitation, providing notice of the Confirmation

Hearing and transmitting solicitation materials to the Holders of Claims entitled to vote to accept

or reject the Plan.

        C.     <u>Formulation of the Plan</u>

         12.     Prior to filing the Plan, the Debtors and their advisors engaged in

negotiations with two of the Debtors' key creditor constituencies (Contour and Stabilis) to ensure

their business would continue to operate as a going concern.  These arms-length negotiations that

followed were successful, and culminated in a consensual Restructuring Support Agreement

("RSA") with one of them (SkyLight as Assignee to Stabilis) and an integrated Settlement

Agreement with the other (Contour).  The RSA contemplated an expedited restructuring

premised on the Plan Sponsors commitment to support the Plan subject to the conditions set forth

in the RSA.  In short, the RSA enabled the Debtors to enter into chapter 11 with financing and

the confidence to promulgate a plan and look for a quick and successful exit.  Concurrently, the

Settlement Agreement with Contour paved the way for the Debtor to continue to sign a new

license with Contour for the use of its intellectual property in manufacture and use of certain

iON's products.  I believe that the Plan that incorporates the foregoing maximizes the value of

the Debtors' estates and provides the best recovery to the Debtors' stakeholders.

3869508-3

13.     As noted above, the Debtors have spent considerable time negotiating these agreements to maximize the business opportunities for the Debtors' business and stakeholders. As a result of its restructuring efforts to date, the Debtors have streamlined their operations, improved its secured financing and its working capital. In my opinion these changes increase the Debtors' chances of returning to sustained profitability and provide the best result for the Stakeholders.

14.     The Plan, when "Effective", should enable the Debtors to emerge from bankruptcy on sound financial footing and allow for a successful restructuring of the whole enterprise for years to come.

## II     NOTICE AND SOLICITATION PROCEDURES

15.     As noted in Paragraph 11, the Debtors with the assistance of Parcels, Inc. conducted the solicitation process, which included, without limitation, providing notice of the Confirmation Hearing to all holders of Claims and Interests.

16.     Again, as noted, the Debtor's with the assistance of Parcel, Inc. transmitted to holders of Claims the Ballots for Classes 2, 3 and 4 (the "Voting Classes") parties in accordance with the Disclosure Statement Order entered by this Court.

## III     REQUIREMENTS FOR PLAN CONFIRMATION

A.     Classification of Claims and Interests.

17.     Articles II and III of the Plan set forth the classification of Claims and Interests and provide for treatment of all Classes of Claims and Interests. Section 2.04 of the Plan specifies the Classes of Claims that are unimpaired under the Plan. Each Class under the Plan contains similarly situated Claims and Interests and treats identically each Claim and Interest within a particular Class.

4

3869508-3

B.    Implementation of the Plan.

18.    Article V of the Plan sets forth the means for implementation of the Plan including, but not limited to:

- Corporate Action;

- Effective Date Transactions;

- Securities Registration Exemption;

- Corporate Governance;

- Cancellation of Existing Securities and Agreements;

- Incentive Stock Option Plan;

- Intercompany Claims

- Obligations Incurred After the Effective Date; and

- Post-Confirmation Operating Reports and United States Trustee Fees.

C.    The Plan Contains Provisions Respecting
the Selection of Post-Confirmation Directors and Officers.

19.    Pursuant to Section 5.04 of the Plan, on the Effective Date, the board of directors of the Reorganized Debtors shall consist of those individuals identified in the Plan Supplement.  I believe that the appointment of these directors is consistent with the interests of creditors and interest holders and with public policy.  These individuals were chosen for their positions in consultation with the Plan Sponsor.  Moreover, 3 classes of creditors have manifested their interests by unanimously voting to support the Plan.  Finally, the interests of public policy are bolstered by allowing companies and their enfranchised stakeholders to determine those individuals who will serve as directors of the enterprise.

5

3869508-3

D.    The Plan Contains Additional Provisions
      Consistent With the Bankruptcy Code.

20.    The Plan also contains provisions regarding (a) the impairment and unimpairment of Classes of Allowed Claims and Interests, (b) the assumption or rejection of executory contracts and unexpired leases, and (c) the terms and manner of the delivery of the New Common Stock.

21.    The Plan also provides for the Bankruptcy Court's retention of jurisdiction as to specified issues (*see* Article XI of the Plan).

E.    Solicitation and Disclosure.

22.    The Debtors, with the assistance of its balloting agent, Parcels, Inc., the Debtors served the Disclosure Statement, the Plan, appropriate Ballots, notices, and all other related documents, as applicable, on all required parties.

F.    The Plan Has Been Proposed in Good Faith
      and Not By Any Means Forbidden by Law.

23.    Throughout these cases, the Debtors and their management have remained cognizant of their fiduciary duties to all stakeholders. The Debtors and their management have worked consistently and diligently toward a successful reorganization that is in the best interests of all creditors. The Plan is the product of extensive, arm's length negotiations among the Debtors and their key constituencies, which is evidenced by the support of the Plan by a majority of the Debtors' creditors.

24.    The Debtors believe that the Plan maximizes the value of the estates for their creditors and interest holders. Prior to and throughout the Plan process, the Debtors continued to negotiate with parties in interest to achieve a consensual plan of reorganization that would maximize recoveries for all creditors.

3869508-3

25.     The Debtors' foremost interest, consistent with their fiduciary duties, has been to maximize the value of the Debtors' assets and the corresponding economic benefit for their constituents. The Debtors and their management have diligently worked to achieve a reorganization that is consistent with those goals.

G.      The Plan Provides for Bankruptcy Court
        Approval of Payment for Services and Expenses.

26.     Any agreement by which the Debtors retained and/or employed a Professional to provide services to the Debtors in, or in connection with, the Debtors' chapter 11 Cases has been disclosed to the Bankruptcy Court in applications to retain and/or employ such Professionals. Specifically, the Bankruptcy Court has entered an order authorizing the Debtors to retain Olshan Frome Wolosky LLP, as bankruptcy and general counsel; A.M. Saccullo Legal, LLC as local counsel; Parcels, Inc. as Noticing and Balloting Agent and Willamette Management Associates in a limited capacity to provide the Debtors with financial consulting services.

27.     All fees and expenses of the foregoing Professionals are subject to final approval by the Bankruptcy Court. Moreover, Section 3.02 of the Plan sets out procedures for filing Fee Claims and provides that such fees and expenses of Professionals retained in these Cases that have been properly filed and served shall be payable to the extent approved by order of the Bankruptcy Court. In addition, Article XI of the Plan provides for the Bankruptcy Court's retention of jurisdiction to hear and determine all applications for compensation and reimbursement of expenses of professionals.

H.      The Plan Does not Contain Rate Changes.

28.     The Plan does not propose any rate changes subject to the jurisdiction of any governmental regulatory commission.

3869508-3

I.    The Plan Satisfies the "Best Interests Test."

29.    Based on the Liquidation Analysis, annexed as Exhibit C to the Disclosure Statement, my review of the Declaration of Robert Schweihs of Willamette and the Valuation Analysis contained therein, and my review of the Declaration of Joseph King of Parcels, Inc. (the "Voting Certification"), it is my belief that all Impaired Classes have either voted to accept the Plan or will not receive less under the Plan than they would receive in hypothetical chapter 7 liquidation.

J.    Acceptance By Certain Classes.

30.    Class 1 is not Impaired under the Plan and, as I understand, all Holders of Claims in Class 1 are conclusively presumed to have accepted the Plan.  Based on my review of the Voting Certification, and the Holders of Claims in Classes 2, 3 and 4 have voted to accept the Plan by what I understand to be the requisite majority required by the Bankruptcy Code for each such Class.  The Plan treats similarly situated Creditors and Interest Holders in all Classes identically; no Interest Holders junior to the Holders of Allowed Class 4 Claims are entitled to receive a distribution under the Plan on account of their Interests.

K.    The Plan Provides for Payment in Full of Allowed
      Administrative Claims, Fee Claims and Allowed Priority Tax Claims.

31.    Pursuant to Section 3.02 of the Plan, Administrative Expense Claims, Fee Claims, United States Trustee Fees and Priority Tax Claims, respectively, will, to the extent Allowed, be paid in full, or otherwise provided for in the Plan.

L.    To the Extent any Class of Claims Is Impaired Under
      the Plan, at Least One Class of Impaired Claims Has Accepted the Plan.

32.    The Holders of Claims in Classes 2, 3 and 4 are Impaired under the Plan. Nonetheless, as set forth in the Voting Certification, the Holders of Claims in Classes 2, 3 and 4 that were entitled to vote on the Plan have voted to accept the Plan.

8

M.    Feasibility.

33.    The Debtors have been timely paying all valid ordinary course administrative claims throughout the pendency of these cases. Additionally, for the purposes of determining whether the Plan is feasible, the Debtors have projected the future financial performance (annexed to the Plan Supplement as Exhibit D, the "Financial Projections") of the Reorganized Debtors. The Financial Projections are good faith estimates developed by our CEO, Giovanni Tomaselli, that show that the Debtors will be able to make all payments required pursuant to the Plan while conducting ongoing business operations. In analyzing the feasibility of the Plan, nothing has come to my attention to lead me to conclude that reliance on such information is not (a) reasonable or (b) appropriate. In fact, the Plan Sponsor intends to deposit on the Effective Date of the Plan, all forms necessary to the paid out to Creditors.

34.    The Plan is predicated on a standalone reorganization of the Debtors' estates. This reorganization is to be funded through cash on hand and the capital contributions by the Plan Sponsor. In exchange the Plan Sponsor will own 100% of the equity.

35.    In my opinion, confirmation of the Plan will not be followed by a liquidation or the need for further reorganization of the Reorganized Debtors. I also believe that adequate sources and funds described exist to make the distribution provided for under the Plan, and, as such, I believe the Plan is feasible and that it will be consummated.

36.    Further, it is my opinion that, as of the Effective Date, the Reorganized Debtors will have sufficient cash flow to, (a) fund all debt obligations contemplated by the Plan, and (b) not be left with unreasonably small available capital to operate their business as a result of the Plan or any transactions contemplated by the Plan. Accordingly, I believe that confirmation of the Plan is not likely to be followed by the Reorganized Debtors' liquidation or the need for further reorganization.

3869508-3

N.     The Plan Provides for Full Payment of all Statutory Fees.

37.     Section 13.12 of the Plan provides that, on the Effective Date, and thereafter as may be required, the Debtors will pay all of the fees payable pursuant to 28 U.S.C. § 1930. Assuming the Plan is confirmed, the Debtors will have sufficient funds to pay any and all such fees in full.

O.     Principal Purpose of the Plan.

38.     The Plan has not been filed for the purpose of avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

P.     Legal Standard for Plan Confirmation.

39.     I am informed there are a number of legal requirements relating to the solicitation of acceptances under the Plan, which are discussed in the confirmation brief to be filed contemporaneously herewith. In this regard, it is significant that the Plan was accepted by the Class 2 creditor, by Class 3 creditors and Class 4 voting creditors by an overwhelming majority in dollar and amount and number of creditors votes, as set forth in the Voting Certification, and tabulation of, ballots accepting and rejecting the Plan.

40.     I must further emphasize that the Plan before the Court reflects numerous compromises and adjustments with various parties in interest. Ultimately, the compromises reached represent a balancing of numerous factors and a decision by all that the Plan was the best available Plan under the circumstances

IV     **THE POST-EFFECTIVE DATE PROTECTIONS**

41.     Pursuant to Article X of the Plan, certain parties are granted releases and exculpations from liability under the Plan. I believe that, in light of the contributions and consideration provided by such parties, the exculpation, indemnification, and release provisions embodied in the Plan are fair and equitable and are critical components of the released parties'

10

3869508-3

support of the Plan. Based on my involvement in various settlement negotiations, I believe that a consensual plan would not have been possible without the exculpation, indemnification and releases. I am not aware of any meritorious claims that are being waived as a result of the exculpation and releases embodied in the Plan.

42.    The Debtors' election to grant releases is a sound exercise of business judgment and is warranted by the facts and circumstances of these Cases.

**V    THE PLAN PROVIDES FOR LIMITED SUBSTANTIVE CONSOLIDATION OF THE DEBTORS ONLY FOR PURPOSES OF VOTING, CONFIRMATION AND DISTRIBUTION ONLY.**

43.    The Plan provides for the limited substantive consolidation of the Debtors' Estates, solely for purposes of voting, confirmation, and making distributions to the Holders of Allowed Claims under the Plan. Despite any confusion or assertions to the contrary, as set forth in section 2.01 of the Plan, such substantive consolidation shall not affect (a) the legal and corporate structure of the Reorganized Debtors, or (b) any obligations under any leases or contracts assumed in the Plan or otherwise after the Petition Date.

44.    In other words, it is the intention of the Debtors that each Debtor entity will emerge from the bankruptcy process in form and function identical to that of the pre-bankruptcy entity. The overall corporate structure of the Debtors will not be affected by these Chapter 11 Cases.

45.    Thus, I believe the Debtors' Plan is clear that consolidation of the Debtors' Estates will occur only for plan distribution purposes, and will not effectuate a post-Effective Date substantive consolidation of the Debtors' estates and operations.

**VI.    ADVERSE CONSEQUENCES OF NON-CONFIRMATION**

46.    If the Plan is not confirmed, it is unlikely that the Debtors would be able to provide the same recoveries to their creditors. Additionally, there can be no guarantee that Plan

3869508-3

Sponsor or the Creditors' Committee would support an alternative plan. Without the support of the Debtors' creditors it may be difficult to confirm an alternative plan of reorganization. Accordingly, it is imperative that the Plan be confirmed and that the Debtors emerge from chapter 11 quickly as possible.

## VII.    CONCLUSION

47.    Based upon the facts set forth herein and law as I understand it, I believe that the Plan satisfies all of the applicable confirmation requirements contained in the Bankruptcy Code, and that due and adequate notice of the Confirmation Hearing, the Voting Deadline, and the deadline for objecting to confirmation of the Plan was properly given. I further believe that the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or the Reorganized Debtors. After the Effective Date, the Reorganized Debtors should have adequate capital to meet its ongoing obligations. Therefore, I respectfully request that the Court (a) enter the Confirmation Order, and (b) grant the Debtors such other and further relief as is just or proper.

I hereby declare pursuant to 28 U.S.C. § 1746 under the penalty of perjury of the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: October [25], 2016
        Moorestown, New Jersey

Chris Oatway,
**Chief Financial Officer**

12

3869508-3