**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| iON Worldwide Inc., et al., | Case No. 16-11543 (LSS) |
| Debtors.[1] | (Jointly Administered) |

**MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION OF FIRST AMENDED**
**CHAPTER 11 PLAN OF REORGANIZATION FOR ION WORLDWIDE INC.**

Dated: October 26, 2016

**OLSHAN FROME WOLOSKY LLP**
1325 Avenue of the Americas
New York, New York 10019
Telephone:  (212) 451-2300
Facsimile:  (212) 451-2222

**A.M. SACCULLO LEGAL, LLC**
27 Crimson King Drive
Bear, Delaware 19701
Telephone: (302) 836-8877
Facsimile: (212) 451-2222

*Counsel to the Debtors and Debtors-in-Possession*

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' tax identification number, are: iON Worldwide Inc. (3211) and iON America LLC (2612). The Debtors' corporate headquarters is located at, and the mailing address for each Debtor is, 513 South Cenola Road, Suite 208, Moorestown, NJ 08057.

Table of Contents

Page

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT ..........................................................................................................4

**I.**      **THE PLAN COMPLIES WITH THE CONFIRMATION STANDARDS SET FORTH IN SECTION 1129(a) OF THE BANKRUPTCY CODE**................4

         1.      The plan complies with the applicable provisions of title 11 (section 1129(a)(1)); ...........................................................4

         2.      The proponent of the plan complies with the applicable provisions of title 11 (section 1129(a)(2)); ....................................4

         3.      The plan has been proposed in good faith and not by any means forbidden by law (section 1129(a)(3)); ...............................4

         4.      Any payment made or to be made by the proponent, by the debtors, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the cases, or in connection with the plan and incident to the cases, has been approved by, or is subject to the approval of, the court as reasonable (section 1129(a)(4)); ........................................................4

         5.      The proponent of the plan has: (i)(A) disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtors, an affiliate of the debtors participating in a joint plan with the debtors, or a successor to the debtors under the plan, and (B) the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy; and (ii) the proponent has disclosed the identity of any insider that will be employed or retained by the reorganized debtors and the nature of any compensation for such insider (section 1129(a)(5)); ......................4

         6.      To the extent that the debtors are subject to the jurisdiction of any regulatory commission, any rate change provided for in the plan has been approved by, or is subject to the approval of, such regulatory commission (section 1129(a)(6)); ...................................................................4

i

Table of Contents
(continued)

Page

7. With respect to each impaired class of claims or interests, each holder of a claim or interest of such class has either accepted the plan or will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtors were liquidated under chapter 7 of the Bankruptcy Code on such date (section 1129(a)(7));...........................................4

8. Each class of claims or interests has either accepted the plan or is not impaired under the plan (section 1129(a)(8));...........5

9. The treatment of administrative expense and priority claims under the plan complies with the provisions of section 1129(a)(9);.......................................................................5

10. If a class of claims is impaired under the plan, at least one impaired class of claims has accepted the plan, determined without including the acceptances by any insiders holding claims in such class (section 1129(a)(10));.....................................5

11. Confirmation of the plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor or any successor to the debtor, unless such liquidation or reorganization is proposed in the plan (section 1129(a)(11));.......................................................5

12. The plan provides for payment on the effective date of all fees payable under 28 U.S.C. § 1930 (section 1129(a)(12)); and.................................................................................5

13. The plan provides, if applicable, for the continued payment of certain retiree benefits for the duration of the period that the debtors have obligated themselves to provide such benefits (section 1129(a)(13)).........................................................5

A. The Plan Satisfies the Requirements of Section 1129(a)(1) of the Bankruptcy Code. ........................................................................6

1. The Plan Complies with Section 1122 of the Bankruptcy Code. ....................................................................................6

2. The Plan Satisfies the Requirements of Section 1123(a) of the Bankruptcy Code.......................................................8

3867889-3

Table of Contents
(continued)

Page

(a)   The Plan Designates Classes of Claims — 11 U.S.C. § 1123(a)(1)..............................................8

(b)   The Plan Specifies Unimpaired Classes — 11 U.S.C. § 1123(a)(2)..............................................9

(c)   The Plan Adequately Specifies the Treatment of Impaired Classes — 11 U.S.C. § 1123(a)(3). ......................9

(d)   The Plan Provides the Same Treatment for Claims or Interests Within Each Class — 11 U.S.C. § 1123(a)(4). ........................................9

(e)   The Plan Provides Adequate Means for its Implementation — 11 U.S.C. § 1123(a)(5). ......................9

(f)   The Plan Does Not Provide for the Issuance of Non-Voting Equity Securities — 11 U.S.C. § 1123(a)(6). ........10

(g)   The Plan Contains Appropriate Provisions Respecting the Selection of Post-Confirmation Directors and Officers — 11 U.S.C. § 1123(a)(7)..............11

3.   The Plan Complies with Section 1123(b) of the Bankruptcy Code. ...........................................................11

B.   The Debtors Have Complied With the Provisions of Title 11 as Required by Section 1129(a)(2) of the Bankruptcy Code. ........................12

C.   Section 1129(a)(3) Has Been Satisfied Because the Plan Has Been Proposed in Good Faith and not by any Means Forbidden by Law...........14

D.   The Plan Provides for Bankruptcy Court Approval of Payment for Services and Expenses — 11 U.S.C. § 1129(a)(4). ...................................16

E.   The Debtors Have Complied with Section 1129(a)(5) by Disclosing all Necessary Information Regarding Managers and Officers of the Reorganized Debtors. ..........................................17

F.   The Plan Does not Contain Rate Changes Subject to the Jurisdiction of any Governmental Regulatory Commission — 11 U.S.C. § 1129(a)(6)..................................................................18

G.   The Plan Is in the Best Interests of Creditors — 11 U.S.C. § 1129(a)(7). ..................................................................18

Table of Contents
(continued)

Page

H.    The Plan Satisfies Section 1129(a)(8) With Respect to all Classes Except Class 5................................................................................................19

I.    The Plan Provides for Payment in Full of all Allowed Priority Claims — 11 U.S.C. § 1129(a)(9). ..........................................................20

J.    The Plan Has Been Accepted by at Least One Impaired Class of Claims that Is Entitled to Vote — 11 U.S.C. § 1129(a)(10).....................22

K.    The Plan Is Feasible — 11 U.S.C. § 1129(a)(11). ....................................22

L.    The Plan Provides For Full Payment of all Statutory Fees as Required by 11 U.S.C. § 1129(a)(12). ........................................................23

M.    The Plan Provides for the Continuance of Retiree Benefit Obligations as Required by 11 U.S.C. § 1129(a)(13). ...............................23

II.    THE PLAN MEETS THE REQUIREMENTS FOR CRAMDOWN UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE ..........................24

A.    The Plan Does not Discriminate Unfairly with Respect to Class 5. ..........25

B.    The Plan Is Fair and Equitable With Respect to Class 5. .........................25

C.    Section 1129(d) – The Plan's Purpose Is Consistent with the Bankruptcy Code ......................................................................................26

III.    THE POST-EFFECTIVE DATE PROTECTIONS AFFORDED TO THE DEBTORS AND CERTAIN THIRD PARTIES THAT MADE CONTRIBUTIONS TO THE CONFIRMATION PROCESS ARE APPROPRIATE AND CONSISTENT WITH ESTABLISHED PRECEDENT ..........................................................................................27

A.    The Discharge, Injunction, Release and Exculpation Provisions Embodied in the Plan Are Permissible and Should Be Approved............27

B.    The Injunction and Discharge Provisions Set Forth in Article X of the Plan Comply with the Bankruptcy Code................................................28

C.    The Releases by the Debtors in Section 10.06 of the Plan Are Fair, Reasonable, and in the Best Interests of the Estates. ................................28

D.    The Third-Party Releases Set Forth in Section 10.06 of the Plan Are Appropriate and Consistent with Established Precedent and Therefore Should Be Approved. ..............................................................32

iv

Table of Contents
(continued)

Page

E.    The Exculpation Provision Set Forth in Section 10.07 of the Plan
Are Appropriate and Consistent with Established Precedent and
Therefore Should Be Approved. ................................................................34

F.    Request for Authority to Consummate and Implement the Plan
Immediately Upon the Entry of the Confirmation Order
Notwithstanding 14-day Stay of the Confirmation Order Imposed
by Operation of Bankruptcy Rule 3020(E) ...............................................34

CONCLUSION ............................................................................................................35

Table of Cases

Page

*Acequia, Inc. v. Clinton (In re Acequia, Inc.)*,
   787 F.2d 1352 (9th Cir. 1986) ...................................................................................10

*Great W. Bank & Trust v. Entz-White Lumber & Supply, Inc. (In re Entz-White Lumber &*
   *Supply, Inc.)*,
   850 F.2d 1338 (9th Cir. 1988) ...................................................................................18

*In re 11,111, Inc.*,
   117 B.R. 471 (Bankr. D. Minn. 1990) ..........................................................................6

*In re Abbotts Dairies of Pa., Inc.*
   788 F.2d 143 (3d Cir. 1986)........................................................................................13

*In re AG Consultants Grain Div., Inc.*,
   77 B.R. 665 (Bankr. N.D. Ind. 1987)...........................................................................7

*In re Armstrong World Indus.*,
   348 B.R. 136 (Bankr. D. Del. 2006) ...........................................................................13

*In re Burns & Roe Enter.*,
   2009 U.S. Dist. LEXIS 13574 (D.N.J. Feb. 20, 2009) ...........................................13

*In re Cajun Elec. Power Coop., Inc.*,
   150 F.3d 503 (5th Cir. 1998) ......................................................................................22

*In re Cellular Info. Sys. Inc.*,
   171 B.R. 926 (Bankr. S.D.N.Y. 1994) ........................................................................20

*In re Combustion Eng'g, Inc.*,
   391 F.3d 190 (3d Cir. 2004)........................................................................................13

*In re Coram Healthcare Corp.*,
   315 B.R. 321 (Bankr. D. Del. 2004) ...........................................................................31

*In re DBSD North America, Inc.*,
   419 B.R. 149 (Bankr. S.D.N.Y. 2009)........................................................................26

*In re Drexel Burnham Lambert Group Inc.*,
   138 B.R. 714 (Bankr. S.D.N.Y. 1992) ...................................................................6, 20

*In re Exide Techs.*,
   303 B.R. 48 (Bankr. D. Del. 2003) .............................................................................30

*In re Indianapolis Downs, LLC*,
   486 B.R. 286 (Bankr. D. Del. 2013) ......................................................................27, 31

Table of Cases
(continued)

Page

*In re Jartran, Inc.*,
    44 B.R. 331 (Bankr. N.D. Ill. 1984) ...................................................................23

*In re Jersey City Med. Ctr.*,
    817 F.2d 1055 (3d Cir. 1987).........................................................................7

*In re Johns-Manville Corp.*,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in relevant part*, 78 B.R. 407 (S.D.N.Y.
    1987), *aff'd sub nom.*, *Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988).......11, 23

*In re Johnson*,
    69 B.R. 726 (Bankr. W.D.N.Y. 1987) ..............................................................6

*In re Madison Hotel Associates*,
    749 F.2d 410 (7th Cir. 1984) ......................................................................13

*In re Master Mortgage Invest. Fund, Inc.*,
    168 B.R. 903m 935 (Bankr. W.D. Mo. 1994) .......................................................27

*In re Monroe Well Service, Inc.*,
    80 B.R. 324 (Bankr. E.D. Pa. 1987) ...............................................................31

*In re Montgomery Court Apartments, Ltd.*,
    141 B.R. 324 (Bankr. S.D. Ohio 1992) .............................................................14

*In re PWS Holding Corp.*,
    228 F.3d ...................................................................................13, 32

*In re Sound Radio, Inc.*,
    93 B.R. 849 (Bankr. D.N.J. 1988) ................................................................13

*In re T-H New Orleans Ltd. P'ship*,
    116 F.3d 790 (5th Cir. 1997) .....................................................................14

*In re Texaco Inc.*,
    84 B.R. 893 (Bankr. S.D.N.Y. 1988), *appeal dismissed,* 92 B.R. 38 (S.D.N.Y. 1988) ...........6

*In re Toy & Sports Warehouse, Inc.*,
    37 B.R. 141 (Bankr. S.D.N.Y. 1984)..............................................................23

*In re Tribune Co.*,
    2011 Bankr. LEXIS 4128 (Bankr. D. Del. Oct. 21, 2011)............................................27

*In re Wash. Mut., Inc.*,
    442 B.R. ...................................................................................27

Table of Cases
(continued)

Page

*In re West Coast Video Enter., Inc.*,
174 B.R. 906 (Bankr. E.D. Pa. 1994) .................................................................................31

*In re WorldCom, Inc.*,
No. 02–13533, 2003 WL 23861928 (Bankr. S.D.N.Y. Oct. 31, 2003) ..................................11

*In re Zenith Electronics Corp.*,
241 B.R. 92 (Bankr. D. Del. 1999) .............................................................................. passim

*John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs.*,
987 F.2d 154 (3d Cir. 1993)................................................................................................22

*Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*,
800 F.2d 581 (6th Cir. 1986) .............................................................................................7

*U.S. Bank Nat'l Assoc.* v. *Wilmington Trust Co. (In re Spansion, Inc.)*,
426 B.R. 114 (Bankr. D. Del. 2010) ......................................................................26, 27, 31

## PRELIMINARY STATEMENT

iON Worldwide Inc. and iON America LLC (collectively, "iON" or, the "Debtors"), as debtors and debtors in possession, respectfully submit this Memorandum of Law (the "Confirmation Brief") in support of confirmation of the Debtors' First Amended Chapter 11 Plan of Reorganization for iON Worldwide Inc., dated September 20, 2016 (together with all Exhibits and supplements thereto and as may be modified and/or amended from time to time, the "Plan," Dkt. No. 133).[2]

The terms of the Plan are consistent with those of the Debtors' Restructuring Support Agreement by and between the Debtors, the Plan Sponsor (as defined in the Disclosure Statement), pursuant to which the parties to such agreement agreed, subject to certain conditions, to support a plan of reorganization like the Plan that substantially deleverages the balance sheet and positions the Debtors for future success absent the Restructuring Support Agreement recoveries to unsecured creditors would be.  Also with the assistance and cooperation of a number of parties and their advisors, the Debtors have been able to navigate these cases or close to the timeline agreed to and set forth in the Restructuring Support Agreement.  Among other things, the parties worked together to reach agreement on certain matters critical to the reorganization (DIP financing and senior secured position being converted to equity on the Effective Date of the Plan.  The Plan was overwhelmingly accepted by holders of all impaired classes entitled to vote. The acceptance or the Plan demonstrate that the Plan is fair and in the best interests of the Debtors stakeholders.  As will be shown below, the Plan also satisfies all applicable requirements of the bankruptcy code and, thus should be confirmed.  Accordingly, these have been consensual chapter 11 cases between the Debtors and their key constituencies.

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Plan and Disclosure Statement, as applicable.

3867889-3

On June 24, 2016 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  Since the Petition Date, the Debtors have continued to manage their business as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

On July 6, 2016, the Official Committee of Unsecured Creditors of iON Worldwide Inc. (the "Creditors' Committee") was formed.  No trustee or examiner has been appointed in these Cases.

On September 21, 2016, the Bankruptcy Court entered an order (the "Disclosure Statement Order;" Docket No. 141) approving the disclosure statement related to the Plan (the "Disclosure Statement;" Docket No. 134).  In accordance with the Disclosure Statement Order, the Debtors served the Disclosure Statement, the Plan, and appropriate ballots and notices, as applicable, on all required parties.  On September 22, 2016, the Debtors commenced solicitation of votes with respect to the Plan.

Having now successfully completed the solicitation process, the Debtors submit this Confirmation Brief in support of confirmation of the Plan.  Section I of the Confirmation Brief details the Plan's compliance with the general confirmation requirements under section 1129(a) of the Bankruptcy Code.  Section II addresses the Plan's satisfaction of the requirements for "cramdown" under 1129(b) of the Bankruptcy Code.  Section III addresses the appropriateness of the releases contained in the Plan.  In further support of confirmation of the Plan, the Debtors have filed the declaration of Chris Oatway in support of confirmation (the "Oatway Confirmation Declaration"), and the declaration of Joseph King regarding solicitation and tabulation of votes in connection with the Plan (the "Voting Certification").

As set forth in the Voting Certification, the Plan has been overwhelmingly accepted by the Holders of Claims in the three Classes that were entitled to vote on the Plan — Class 2 (Sky Light Secured Claim), Class 3 (KIM POV Secured Claim) and Class 4 (General Unsecured Claims).  Specifically, voting is as follows:

| Classes & Case Nos. | Number Accepting (% of Number Voted) | Number Rejecting (% of Number Voted) | Amount Accepting (% of Amount Voted) | Amount Rejecting (% of Amount Voted) |
|---|---|---|---|---|
| Class 2 (16-11543-LSS) | 1 (100%) | 0 (0%) | $5,389,300.00 (100%) | $0.00 (0%) |
| Class 2 (16-11544-LSS) | 1 (100%) | 0 (0%) | $5,389,300.00 (100%) | $0.00 (0%) |
| Class 3 (16-11543-LSS) | 1 (100%) | 0 (0%) | $5,097,725.00 (100%) | $0.00 (0%) |
| Class 3 (16-11544-LSS) | 1 (100%) | 0 (0%) | $5,097,725.00 (100%) | $0.00 (0%) |
| Class 4 (16-11543-LSS) | 7 (100%) | 0 (0%) | $2,156,122.25 (100%) | $0.00 (0%) |
| Class 4 (16-11544-LSS) | 11 (100%) | 0 (0%) | $6,663,748.69 (100%) | $0.00 (0%) |

It is clear that the Holders of Claims that were entitled to vote on the Plan occupy common ground with the Debtors: these creditors overwhelmingly endorse confirmation of the Plan without delay.  To this end, and as set forth below, the Plan satisfies each of the requirements for confirmation set forth in section 1129 of the Bankruptcy Code and other applicable provisions of the Bankruptcy Code.  In particular, the Plan has been proposed in good faith, is feasible, serves the best interests of the Debtors' creditors, and is fair and equitable.  The solicitation results validate the Debtors' belief that the Plan represents the best reorganization path available.  Accordingly, the Plan should be confirmed by the Bankruptcy Court.

## ARGUMENT

### I.     THE PLAN COMPLIES WITH THE CONFIRMATION STANDARDS SET FORTH IN SECTION 1129(a) OF THE BANKRUPTCY CODE

Section 1129 of the Bankruptcy Code governs confirmation of a plan of reorganization

and sets forth the requirements that must be satisfied in order for a plan to be confirmed.

Pursuant to section 1129(a) of the Bankruptcy Code, a bankruptcy court shall confirm a plan of

reorganization only if all of the following requirements are met:

1.     The plan complies with the applicable provisions of title 11 (section 1129(a)(1));

2.     The proponent of the plan complies with the applicable provisions of title 11 (section 1129(a)(2));

3.     The plan has been proposed in good faith and not by any means forbidden by law (section 1129(a)(3));

4.     Any payment made or to be made by the proponent, by the debtors, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the cases, or in connection with the plan and incident to the cases, has been approved by, or is subject to the approval of, the court as reasonable (section 1129(a)(4));

5.     The proponent of the plan has: (i)(A) disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtors, an affiliate of the debtors participating in a joint plan with the debtors, or a successor to the debtors under the plan, and (B) the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity security holders and with public policy; and (ii) the proponent has disclosed the identity of any insider that will be employed or retained by the reorganized debtors and the nature of any compensation for such insider (section 1129(a)(5));

6.     To the extent that the debtors are subject to the jurisdiction of any regulatory commission, any rate change provided for in the plan has been approved by, or is subject to the approval of, such regulatory commission (section 1129(a)(6));

7.     With respect to each impaired class of claims or interests, each holder of a claim or interest of such class has either accepted the plan or will receive or retain under the plan on account of such claim or interest property of a

4

value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtors were liquidated under chapter 7 of the Bankruptcy Code on such date (section 1129(a)(7));

8.      Each class of claims or interests has either accepted the plan or is not impaired under the plan (section 1129(a)(8));

9.      The treatment of administrative expense and priority claims under the plan complies with the provisions of section 1129(a)(9);

10.     If a class of claims is impaired under the plan, at least one impaired class of claims has accepted the plan, determined without including the acceptances by any insiders holding claims in such class (section 1129(a)(10));

11.     Confirmation of the plan is not likely to be followed by the liquidation or the need for further financial reorganization of the debtor or any successor to the debtor, unless such liquidation or reorganization is proposed in the plan (section 1129(a)(11));

12.     The plan provides for payment on the effective date of all fees payable under 28 U.S.C. § 1930 (section 1129(a)(12)); and

13.     The plan provides, if applicable, for the continued payment of certain retiree benefits for the duration of the period that the debtors have obligated themselves to provide such benefits (section 1129(a)(13)).

11 U.S.C. § 1129(a).

The Plan satisfies each of these requirements except for section 1129(a)(8). Claims in Class 1 are unimpaired. As a result, Holders of such Claims are deemed to have accepted the Plan. *See* 11 U.S.C. § 1126(f) and Plan § 3.02. Claims in Classes 2, 3 and 4 are impaired and each of these Classes has voted to accept the Plan. *See* Voting Certification and Plan at § 2.03. Holders of Interests in Class 5 will receive no distributions nor retain any property under the Plan on account of such Claims. Accordingly, such Holders are deemed to have rejected the Plan. *See* 11 U.S.C. § 1126(g) and Plan at § 2.03.

Notwithstanding the deemed rejection of the Plan by Holders of Interests in Class 5, section 1129(b)(1) of the Bankruptcy Code provides that the Plan may be confirmed pursuant to

5

the "cramdown" provisions thereof, if the Plan does not discriminate unfairly and is fair and equitable with respect to these Interests.  *See* 11 U.S.C. § 1129(b)(1).  No Holder of any Claim or Interest in a Class junior to Class 5 shall receive or retain anything on account of such Claim or Interest under the Plan.  Further, the Plan does not unfairly discriminate against any holder of an Interest in Class 5.  *See* 11. U.S.C. § 1129(b)(1).  As the Plan satisfies the requirements of sections 1129(a) (other than subsection (8) thereof) and 1129(b) of the Bankruptcy Code, the Plan should be confirmed.

      A.      The Plan Satisfies the Requirements
                  of Section 1129(a)(1) of the Bankruptcy Code.

Section 1129(a)(1) of the Bankruptcy Code requires that a plan comply with the applicable provisions of chapter 11 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1).  Although broadly drafted, the legislative history and the case law make clear that this provision is directed at compliance with sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and interests and the contents of a plan, respectively.  *See* H.R. Rep. No. 95-595, at 412 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; *In re Texaco Inc.,* 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In determining whether a plan complies with section 1129(a)(1) [of the Bankruptcy Code], reference must be made to [Bankruptcy] Code §§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of reorganization"), *appeal dismissed,* 92 B.R. 38 (S.D.N.Y. 1988).

      1.      The Plan Complies with
                  Section 1122 of the Bankruptcy Code.

The Plan's classification structure is proper and in accordance with section 1122(a) of the Bankruptcy Code.  Specifically, the Plan divides Claims and Interests as follows:

| Class | Type of Claim or Interest |
|---|---|
| Unclassified | Administrative Expense Claims |
| Unclassified | Fee Claims |

6

| Unclassified | United States Trustee Fees |
| Unclassified | Priority Tax Claims |
| Class 1 | Priority Non-Tax Claims |
| Class 2 | Sky Light Secured Claim |
| Class 3 | KIM POV Secured Claim |
| Class 4 | General Unsecured Claims |
| Class 5 | Existing Equity Interests |

Section 1122(a) of the Bankruptcy Code provides that a plan may place a claim or interest in a particular class if such claim or interest is substantially similar to the other claims or interests of such class. 11 U.S.C. § 1122(a). "Substantially similar" generally has been interpreted to mean similar in legal character to other claims against a debtor's assets or to other interests in a debtor. *See In re Drexel Burnham Lambert Group Inc.,* 138 B.R. 714, 715- 716 (Bankr. S.D.N.Y. 1992), order aff 'd, 140 B.R. 347 (S.D.N.Y. 1992) ("*Drexel Burnham Lambert I*").

Section 1122(a) of the Bankruptcy Code does "not require that similar classes be grouped together, but merely that any group be homogenous." *Drexel Burnham Lambert I*, 138 B.R. at 715. *See also In re Johnson,* 69 B.R. 726, 728 (Bankr. W.D.N.Y. 1987); *In re 11,111, Inc.,* 117 B.R. 471, 476 (Bankr. D. Minn. 1990) ("while § 1122(a) requires that a given class in a plan of reorganization consist of substantially similar claims, all substantially similar claims need not be included in the same class"); *In re AG Consultants Grain Div., Inc.,* 77 B.R. 665, 674 (Bankr. N.D. Ind. 1987) (same).

Importantly, a plan proponent is afforded significant flexibility in classifying claims under section 1122(a) so long as there is a reasonable basis for the classification structure. *See In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987); *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck Co.)*, 800 F.2d 581, 586 (6th Cir. 1986). Here, the Plan's classification structure is straightforward and complies with section 1122(a) of the Bankruptcy Code. The Claims and Interests in each Class described above are substantially

7

similar in nature to the other Claims and Interests in such Class.  Accordingly, the classification structure embodied in the Plan complies with section 1122 of the Bankruptcy Code.

> 2.     The Plan Satisfies the Requirements of
> Section 1123(a) of the Bankruptcy Code.

To satisfy section 1129(a)(1) of the Bankruptcy Code, the Plan must comply with section 1123(a) of the Bankruptcy Code, which sets forth seven mandatory requirements for every chapter 11 plan.

Specifically, this section requires that a plan (i) designate classes of claims and interest; (ii) specify unimpaired classes of claims and interests; (iv) provide equity or treatment within each class; (v) provide adequate means for the Plan's implementation; (vi) provide for prohibition of nominating equity securities and provide and appropriate distinction of voting power among classes or securities; and (vii) certain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized company's officers and directors.  See 11 U.S.C § 1123(A).  As set forth below, the Plan complies with each such requirement.

> (a)     The Plan Designates Classes of
> Claims — 11 U.S.C. § 1123(a)(1).

Section 1123(a)(1) of the Bankruptcy Code requires that a plan designate classes of claims and interests, other than claims of the kinds specified in sections 507(a)(1) (administrative expense claims), 507(a)(2) (claims arising during the "gap" period in an involuntary case), and 507(a)(8) of the Bankruptcy Code (unsecured tax claims).  *See* 11 U.S.C. § 1123(a)(1).  Article II of the Plan designates five (5) Classes of Claims and Interests, not including Claims of the kinds specified in sections 507(a)(1), (2) and (8) of the Bankruptcy Code.  Thus, the Plan complies with the requirements of section 1123(a)(1) of the Bankruptcy Code.

8

(b)    The Plan Specifies Unimpaired
Classes — 11 U.S.C. § 1123(a)(2).

Section 1123(a)(2) of the Bankruptcy Code requires that a plan "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. § 1123(a)(2). Section 2.04 of the Plan specifies the Class of Claims that is unimpaired under the Plan— specifically, Class 1, consisting of all Priority Non-Tax Claims. Therefore, the Plan complies with the requirements of section 1123(a)(2) of the Bankruptcy Code.

(c)    The Plan Adequately Specifies the Treatment
of Impaired Classes — 11 U.S.C. § 1123(a)(3).

Section 1123(a)(3) of the Bankruptcy Code requires that a plan "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. § 1123(a)(3). Article III of the Plan specifies the treatment of Claims and Interests that are impaired under the Plan. Thus, the Plan satisfies the requirements of section 1123(a)(3) of the Bankruptcy Code.

(d)    The Plan Provides the Same Treatment for Claims or
Interests Within Each Class — 11 U.S.C. § 1123(a)(4).

Section 1123(a)(4) of the Bankruptcy Code requires that a plan provide the "same treatment for each claim or interest of a particular class." 11 U.S.C. § 1123(a)(4). The Debtors submit that the Plan does so provide, and thus complies with section 1123(a)(4) of the Bankruptcy Code.

(e)    The Plan Provides Adequate Means for
its Implementation — 11 U.S.C. § 1123(a)(5).

Section 1123(a)(5) of the Bankruptcy Code requires that a plan "provide adequate means for the plan's implementation." 11 U.S.C. § 1123(a)(5). Article V of the Plan sets forth the means for implementation of the Plan, which the Debtors submit are more than adequate. Certain of these implementation mechanisms include, for example, procedures for or respecting:

9

      i.        Corporate Action;[3]

      ii.      Effective Date Transactions, including the issuance of the New Common Stock and Effective Date Funding;[4]

      iii.     Cancellation of Existing Securities and Agreements;[5]

      iv.     Incentive Stock Option Plan;[6] and

      v.      Intercompany Claims.[7]

Further, the conditions precedent to confirmation have been satisfied and/or waived in accordance with Article XII of the Plan, as applicable.

Based upon the foregoing, the Debtors respectfully submit that the Plan contains appropriate implementation provisions and complies with the requirements of section 1123(a)(5) of the Bankruptcy Code.

      (f)      The Plan Does Not Provide for the Issuance of Non-Voting Equity Securities — 11 U.S.C. § 1123(a)(6).

Section 1123(a)(6) of the Bankruptcy Code provides that a plan must:

> provide for the inclusion in the charter of the debtor, if the debtor is a corporation, . . . of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

11 U.S.C. § 1123(a)(6).[8]  Accordingly, the holders of new stock issued under a plan of reorganization must have voting rights.  *See Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 787

---

[3] *See* Plan, § 5.01.

[4] *See* Plan, § 5.02.

[5] *See* Plan, § 5.05.

[6] *See* Plan, § 5.06.

[7] *See* Plan, § 5.07.

F.2d 1352, 1361 (9th Cir. 1986).  Here, holders of the New Common Stock will have voting

rights, and the Plan satisfies the requirements of section 1123(a)(6) of the Bankruptcy Code.

(g)    The Plan Contains Appropriate Provisions
Respecting the Selection of Post-Confirmation
Directors and Officers — 11 U.S.C. § 1123(a)(7).

Section 1123(a)(7) of the Bankruptcy Code requires that a plan "contain only provisions

that are consistent with the interests of creditors and equity security holders and with public

policy with respect to the manner of selection of any officer, director, or trustee under the plan

and any successor to such officer, director or trustee."  11 U.S.C. § 1123(a)(7).  This provision is

supplemented by Section 1129(a)(5) of the Bankruptcy Code, which directs the scrutiny of the

Court to the manner by which management of the reorganized corporation is to be chosen to

provide adequate representation of those whose investments are involved in the organization.

Pursuant to Section 5.04 of the Plan, on the Effective Date, the board of directors of the

Reorganized Debtors shall consist of those individuals identified in the Plan Supplement.

Accordingly, the Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy

Code, as it does all of the other requirements of section 1123(a) of the Bankruptcy Code.

3.    The Plan Complies with
Section 1123(b) of the Bankruptcy Code.

Section 1123(b) of the Bankruptcy Code specifies certain provisions that may be included

in a plan of reorganization.  The Plan contains certain of the provisions specifically contemplated

by section 1123(b) of the Bankruptcy Code, including provisions regarding (a) the impairment

and unimpairment of Classes of Claims and Interests as provided for in section 1123(b)(1) of the

Bankruptcy Code (*see* Article II of the Plan), (b) the assumption or rejection of executory

---

[8] The purpose of section 1123(a)(6) is to "assure that creditors who are forced to take stock in a reorganized company will be entitled to exercise full voting control and have a voice in the selection of management that will protect their interests."  Ronald W. Goss, Chapter 11 of the Bankruptcy Code: An Overview for the General Practitioner, 4 Utah B.J. 6, 10 (1991).

11

contracts and unexpired leases as provided for in section 1123(b)(2) of the Bankruptcy Code (*see* Article IX of the Plan), and (c) the distribution of the proceeds of the Debtors' estates' assets as provided for in section 1123(b)(4) of the Bankruptcy Code (*see* Article VIII of the Plan).

Other provisions of the Plan are permissible pursuant to the authority granted in section 1123(b)(6) of the Bankruptcy Code, which permits a plan to include other provisions not inconsistent with the applicable provisions of the Bankruptcy Code. *See* 11 U.S.C. § 1123(b)(6). These include the Bankruptcy Court's retention of jurisdiction as to specified issues, as well as the Bankruptcy Court's power to enjoin actions against non-debtor third parties when such injunction is integral to the confirmation of the Plan. No party in interest has objected to confirmation of the Plan on the basis that it does not comply with section 1123(b) of the Bankruptcy Code.

Because the Plan meets all of the requirements of sections 1122 and 1123 of the Bankruptcy Code, it complies with section 1129(a)(1) of the Bankruptcy Code.

B.     The Debtors Have Complied With the Provisions of
       Title 11 as Required by Section 1129(a)(2) of the Bankruptcy Code.

Section 1129(a)(2) of the Bankruptcy Code requires that a plan proponent — the Debtors, here — "compl[y] with the applicable provisions of [title 11]." 11 U.S.C. § 1129(a)(2). Generally, the inquiry under section 1129(a)(2) of the Bankruptcy Code focuses on whether the plan proponent has complied with the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code. *See In re WorldCom, Inc.*, No. 02–13533, 2003 WL 23861928, at 25-26 (Bankr. S.D.N.Y. Oct. 31, 2003); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the Code. These sections provide for the appropriate manner of disclosure and solicitation of plan votes.")

(internal citations omitted), *aff'd in relevant part*, 78 B.R. 407 (S.D.N.Y. 1987), *aff 'd sub nom.*, *Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988); H.R. Rep. No. 95-595, at 412 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6368; S. Rep. No. 95-989, at 126 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5912 (section 1129(a)(2) of the Bankruptcy Code "requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure").

As required by section 1129(a)(2) of the Bankruptcy Code, the Debtors have complied fully with the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code and the applicable Bankruptcy Rules. The Disclosure Statement Order conditionally approved, *inter alia*, the adequacy of information contained in the Disclosure Statement and approved the procedures to be used by the Debtors in soliciting and tabulating votes regarding the Plan.[9]  In accordance with the Disclosure Statement Order, the Debtors served the Disclosure Statement, the Plan, appropriate ballots and notices, as applicable, on all required parties.  On September 22, 2016, the Debtors, through their balloting agent, Parcels, Inc., commenced solicitation of votes with respect to the Plan.

Accordingly, the Debtors respectfully submit that they have complied with the provisions of the Bankruptcy Code and, in particular, the provisions of section 1125, and therefore have satisfied the requirements of section 1129(a)(2) of the Bankruptcy Code.  [No party in interest has objected to confirmation of the Plan on the basis that the Plan fails to meet the requirements of section 1125 of the Bankruptcy Code].

---

[9] The Solicitation Procedures Orders established October 21, 2016, at 4:00 p.m. (prevailing Eastern time) (the "Voting Deadline"), as the deadline for the submission of ballots to accept or reject the Plan.

C.    Section 1129(a)(3) Has Been Satisfied Because the Plan Has
      Been Proposed in Good Faith and not by any Means Forbidden by Law.

Section 1129(a)(3) of the Bankruptcy Code requires that the Plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  Although the term "good faith" is not defined in the Bankruptcy Code, courts within this Circuit and elsewhere have indicated that "for purposes of determining good faith under section 1129(a)(3) . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code" in light of the particular facts and circumstances of the case.  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 247 (3d Cir. 2004); *In re Armstrong World Indus.*, 348 B.R. 136, 147 (Bankr. D. Del. 2006); *In re PWS Holding Corp.*, 228 F.3d at 242 (quoting *In re Abbotts Dairies of Pa., Inc.* 788 F.2d 143, 150 n. 5 (3d Cir. 1986) & *In re Madison Hotel Associates*, 749 F.2d 410, 424-25 (7th Cir. 1984)); *In re Burns & Roe Enter.*, 2009 U.S. Dist. LEXIS 13574, at *78 (D.N.J. Feb. 20, 2009).  This inquiry typically focuses on whether a plan has been proposed with a legitimate purpose and with a basis for expecting that reorganization consistent with the Bankruptcy Code's objectives can be effectuated.  *See*, *e.g.*, *Zenith*, 241 B.R. 92 (Bankr. D. Del. 1999) 107-08 (quoting *In re Sound Radio, Inc.*, 93 B.R. 849, 853 (Bankr. D.N.J. 1988)) (finding good faith where the plan was "proposed with the legitimate purpose of restructuring [the Debtor's] finances to permit [the debtor] to reorganize successfully…exactly what chapter 11 of the Bankruptcy Code was designed to accomplish)."

"[D]enial of confirmation for failure to satisfy section 1129(a)(3) should be reserved for only the most extreme of cases." 7 Collier on Bankruptcy § 1129.02; *see also In re Sound Radio, Inc.*, 93 B.R. 849 at 853 ("To find a lack of 'good faith' courts have examined whether the debtor intended to abuse the judicial process and the purposes of the reorganization provisions. A

14

finding of a lack of good faith is especially appropriate when no realistic possibility of an effective reorganization exists and it is evident that the debtor seeks to delay or frustrate the legitimate efforts of secured creditors to enforce their rights").  Good faith is not lacking simply because a plan "may not be one which the creditors would themselves design and indeed may not be confirmable." *In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 803 (5th Cir. 1997) (bankruptcy court's finding of good faith upheld against allegations that debtor did not effectively market the property so as to produce a bidder who would compete against lender at confirmation hearing); *In re Montgomery Court Apartments, Ltd.*, 141 B.R. 324, 329 (Bankr. S.D. Ohio 1992) ("The Court fails to see how Greyhound's unhappiness with the Plan's terms can give rise to a finding of bad faith on the part of the Debtor under 11 U.S.C. § 1129(a)(3). Chapter 11 plans routinely alter the contractual rights of parties"); *Zenith*, 241 B.R. at 107 (fundamental fairness not offended by one group receiving better treatment than another under plan).

Throughout these cases, the Debtors and their management have honored and upheld their fiduciary duties to all stakeholders.  Prior to and throughout the Plan process, the Debtors continued to negotiate with its key constituencies to achieve a consensual plan of reorganization that would maximize recoveries for all creditors.  As a result, the Plan provides an enhanced recovery for the holders of Allowed Claims.

The Debtors believe that the Plan maximizes the value of their estates for their creditors and all other stakeholders.  Accordingly, the Plan has been proposed in "good faith" and not by any means forbidden by law, and satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.  The Plan has been proposed with the legitimate purpose of reorganizing and continuing the Debtor's business and maximizing the returns available to creditors and other

parties in interest.  Among other things, the Plan embodies the Restructuring Support Agreement, which, for the reasons discussed above and is the supporting declarations, is in the best interest of creditors or the Debtors estates and all of the Debtors' stockholders.  In addition, as disclosed in the Disclosure Statement, the Debtors believe that creditors will receive significantly greater and more expeditious distinction under the Plan than they would receive through a chapter 7 liquidation.

The Plan is the part of extensive arm's length negotiations among the Debtors, the Restructuring Support Parties and other stakeholders, as well as negotiations with numerous other parties including but not limited Creditors Committee.  The acceptance by all classes entitled to vote demonstrates that the Plan has been proposed in good faith and for proper purposes.

      D.     The Plan Provides for Bankruptcy Court Approval of
            <u>Payment for Services and Expenses — 11 U.S.C. § 1129(a)(4).</u>

Section 1129(a)(4) of the Bankruptcy Code requires that payments for services or costs and expenses incurred in or in connection with a chapter 11 case, or in connection with a plan and incident to the case, either be approved by or be subject to approval of the court as reasonable. *See* 11 U.S.C. § 1129(a)(4).  This section requires that all payments of compensation and reimbursement of expenses to professionals retained in a debtor's case be subject to bankruptcy court review and approval as to the reasonableness of such payments.

Section 3.02 of the Plan provides for payment of Allowed Administrative Expense Claims in full.  Section 3.02 of the Plan also sets forth procedures for filing Fee Claims and procedures for the payment of professional fees.  Moreover, the proposed Confirmation Order contains additional provisions regarding applications of Professionals for final approval of fees and expenses in these cases.  In addition, Article XI of the Plan provides for the Bankruptcy

16

Court's retention of jurisdiction to hear and determine all applications for compensation and reimbursement of expenses of Professionals in these cases.

> E.   The Debtors Have Complied with Section 1129(a)(5)
> by Disclosing all Necessary Information Regarding
> Managers and Officers of the Reorganized Debtors.

Section 1129(a)(5)(A) of the Bankruptcy Code requires that the plan proponent disclose the "identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor . . . or a successor to the debtor under the plan," and requires a finding that "the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy."  11 U.S.C. § 1129(a)(5)(A)(i) & (ii).  Section 1129(a)(5)(B) of the Bankruptcy Code requires a plan proponent to disclose the "identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider."  11 U.S.C. § 1129(a)(5)(B).

Pursuant to Section 5.04 of the Plan, on the Effective Date, the board of directors of the Reorganized Debtors shall consist of those individuals identified in the Plan Supplement.  The appointment to, or continuance in, office of such directors is consistent with the interests of creditors and interest holders and with public policy.  The directors of the Reorganized Debtors are competent, and as former directors of the Debtors, have relevant and solid business and industry expertise, and will give to the Reorganized Debtors their continuing insight into running the business.

The proposed Officers of the Reorganized Debtors are qualified and able and have relevant business and industry experience.  Except with respect to certain employment arrangements to be made between certain existing directors and the Reorganized Debtors, no compensation will be received by any insider (as such term is defined in section 101(31) of the

3867889-3

Bankruptcy Code) pursuant to the Plan.  The appointment of management as provided for in the

Plan is consistent with the interest of the holders of Claims and Interests and with public policy

Accordingly, the Plan complies with the requirements of section 1129(a)(5) of the Bankruptcy

Code.

       F.       The Plan Does not Contain Rate Changes Subject to the Jurisdiction
               of any Governmental Regulatory Commission — 11 U.S.C. § 1129(a)(6).

Section 1129(a)(6) of the Bankruptcy Code requires that any governmental regulatory

commission having jurisdiction over the rates charged by the post-confirmation debtor in the

operation of its business approve any rate change provided for in the plan.  Because the Plan

does not propose any such rate changes, the provisions of section 1129(a)(6) of the Bankruptcy

Code have been satisfied.

       G.       The Plan Is in the Best Interests
               of Creditors — 11 U.S.C. § 1129(a)(7).

Section 1129(a)(7) of the Bankruptcy Code requires that:

> With respect to each *impaired* class of claims or interests --
>
> (A)     each holder of a claim or interest of such class --
>
>      (i)     has accepted the plan; or
>
>      (ii)    will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title . . . on such date.

11 U.S.C. § 1129(a)(7) (emphasis added).

This section is commonly known as the "best interests" test.  By its terms, it applies only

to those impaired classes that have not accepted a plan of reorganization.  11 U.S.C.

§ 1129(a)(7).  Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of a Claim in a

Class that is not impaired is conclusively presumed to have accepted the Plan.  Under the Plan,

Class 1 is unimpaired under section 1124 of the Bankruptcy Code, and conclusively presumed to have accepted the Plan.

Impaired Classes 2, 3 and 4 have voted to accept the Plan.  With respect to Class 5 – Interests – the Disclosure Statement and Exhibit C thereto contain an appropriate liquidation analysis (the "Liquidation Analysis") that establishes that the best interests test is satisfied by the Plan. *See* Disclosure Statement, Exhibit C and Oatway Confirmation Declaration.  The Liquidation Analysis demonstrates that in a hypothetical chapter 7 liquidation, Class 5 – Interests would be cancelled.  A Court, in consideration whether a Plan is in the "best interest" of creditors, is not required to consider any alternative to the Plan other than the dividers projected in a liquidation of all of the debtor's assets.

Thus, the Plan satisfies the best interests test as to Class 5 that are impaired and deemed to reject the Plan because, as the Liquidation Analysis demonstrates, the recovery under the Plan for Class 5 is not less than the estimated recovery that would be available to Class 5 in a chapter 7 liquidation.   *See* Disclosure Statement, Exhibit C and Oatway Confirmation Declaration.

H.    The Plan Satisfies Section 1129(a)(8) With
        <u>Respect to all Classes Except Class 5.</u>

Pursuant to section 1129(a)(8) of the Bankruptcy Code, each class of claims and interests under a plan must either (a) have accepted the plan, or (b) be rendered unimpaired under the plan.  11 U.S.C. § 1129(a)(8).  Whether a class of claims is impaired under a plan is determined by section 1124 of the Bankruptcy Code.

Under the Plan, Class 1 is not impaired under the Plan and all Holders of Claims in such Class are conclusively presumed to have accepted the Plan.  *See* 11 U.S.C. §§ 1124 and 1126(f); *Great W. Bank & Trust v. Entz-White Lumber &  Supply, Inc. (In re Entz-White Lumber & Supply, Inc.)*, 850 F.2d 1338, 1340 n.3 (9th Cir. 1988).  Class 2 is deemed to accept the Plan, and

19

Classes 3 and 4 have voted to accept the Plan by the majority required by the Bankruptcy Code

for each such Class.  Notwithstanding the fact that Class 5 is deemed to reject the Plan, the Plan

may be confirmed pursuant to section 1129(b) of the Bankruptcy Code as set forth in Section II

*infra*.

      I.      The Plan Provides for Payment in Full of all
                  Allowed Priority Claims — 11 U.S.C. § 1129(a)(9).

Section 1129(a)(9) of the Bankruptcy Code requires that, except to the extent that the

holder of a particular claim agrees to a different treatment of such claim, the plan provide that:

      (A)      with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of [the Bankruptcy Code], on the effective date of the plan, the holder of such claim will receive . . . cash equal to the allowed amount of such claim;

      (B)      with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of [the Bankruptcy Code], each holder . . . will receive -- (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

      (C)      with respect to a claim of a kind specified in section 507(a)(8) of [the Bankruptcy Code], the holder of such claim will receive . . . regular installment payments in cash -- (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief . . . and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan . . . .

*See* 11 U.S.C. § 1129(a)(9).

Section 3.02 of the Plan provides that, except to the extent that a Holder of an Allowed

Administrative Claim agrees to less favorable treatment, or as otherwise provided for in the Plan,

the Debtors shall pay to each Holder of an Allowed Administrative Claim Cash in an amount

equal to the amount of such Allowed Administrative Claim on, or as soon thereafter as is reasonably practicable, the later of (i) the Effective Date, and (ii) the first Business Day after the date that is thirty (30) calendar days after the date an Administrative Claim becomes an Allowed Administrative Claim, or as soon thereafter as is reasonably practicable; provided, however, that Allowed Ordinary Course Administrative Claims may be paid by the Debtors in the ordinary course of business of the Reorganized Debtors consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

Section 3.02 of the Plan provides that, except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment, or the Bankruptcy Court has previously ordered otherwise, each Holder of an Allowed Priority Tax Claim shall receive, in full and complete satisfaction, settlement, and release of, and in exchange for such Allowed Priority Tax Claim, at the sole option of the Reorganized Debtors, (a) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Allowed Priority Tax Claim, or (b) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled to be calculated in accordance with section 511 of the Bankruptcy Code).  All Allowed Priority Tax Claims which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business.  The Reorganized Debtors shall retain the right to pay any Allowed Priority Tax Claim, or any remaining balance of such claim, in full at any time without premium or penalty.

Therefore, the Debtors respectfully submit that the Plan satisfies section 1129(a)(9) of the

Bankruptcy Code.

J.      The Plan Has Been Accepted by at Least One Impaired Class
        of Claims that Is Entitled to Vote — 11 U.S.C. § 1129(a)(10).

Section 1129(a)(10) of the Bankruptcy Code requires that, if a class of claims is impaired

under a plan, at least one class of impaired claims must have voted to accept the plan, as

determined without including any acceptance of the plan by any insider.  11 U.S.C.

§ 1129(a)(10).

As set forth in the Voting Certification, each Class that was entitled to vote (i.e., Classes

2, 3 and 4) voted to accept the Plan without including any acceptance by any insider.

Accordingly, the requirements of section 1129(a)(10) of the Bankruptcy Code are satisfied.  No

party in interest has objected to the Plan on the basis that the Plan has not been accepted by at

least one Impaired Class of Claims entitled to vote on the Plan.

K.      The Plan Is Feasible — 11 U.S.C. § 1129(a)(11).

Section 1129(a)(11) of the Bankruptcy Code requires the Court to determine that:

> Confirmation of the plan is not likely to be followed by the
> liquidation, or the need for further financial reorganization, of the
> debtor or any successor to the debtor under the plan, unless such
> liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11).  This requirement, commonly known as the "feasibility" standard,

requires that "the Plan is workable and has a reasonable likelihood of success."  *Drexel Burnham

Lambert II*, 138 B.R. at 762.  "It is not necessary that success be guaranteed, but only that the

plan present a workable scheme of organization and operation from which there may be a

reasonable expectation of success."  *Id*. (quoting 5 COLLIER ON BANKRUPTCY ¶ 1129.02[1

1], at 1129-54 (15th Ed. 1991)); *see also In re Cellular Info. Sys. Inc*., 171 B.R. 926, 945 (Bankr.

S.D.N.Y. 1994) ("the plan proponent need only demonstrate that there exists the reasonable

probability that the provisions of the Plan can be performed.")  (internal citation omitted).

      For the purposes of determining whether the Plan is feasible, the Debtors have, among

other things, projected the future financial performance (the "Financial Projections") of the

Reorganized Debtors. *See* Disclosure Statement, Exhibit B.  As set forth in the Oatway

Confirmation Declaration, the Debtors attest that they will have sufficient cash and availability

under their capital commitments and exit financing to meet their obligations under the Plan.  *See*

Disclosure Statement, Exhibit B and Oatway Confirmation Declaration.  However, all of the

monetary obligations necessary to satisfy the payments to general unsecured creditors and

priority creditors have already been advanced to the Debtors.  These funds are being held in

escrow pending the Effective Date of the Plan.  Therefore, the Debtors respectfully submit that

the Plan satisfies the feasibility standard and requirements of section 1129(a)(11) of the

Bankruptcy Code.

      L.      The Plan Provides For Full Payment of all
                Statutory Fees as Required by 11 U.S.C. § 1129(a)(12).

      Section 1129(a)(12) of the Bankruptcy Code requires that fees payable under 28 U.S.C.

§ 1930, as determined by the court at a hearing on confirmation of a plan, have been paid or are

provided under the plan to be paid on its effective date.  Section 13.12 of the Plan provides that,

on the Effective Date, and thereafter as required, the Reorganized Debtors shall pay all fees

payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.  Thus, the

Plan complies with the requirements of section 1129(a)(12) of the Bankruptcy Code.

      M.     The Plan Provides for the Continuance of Retiree
                Benefit Obligations as Required by 11 U.S.C. § 1129(a)(13).

      Section 1129(a)(13) of the Bankruptcy Code requires a Plan to provide for the

continuation of retiree benefits at levels established pursuant to section 1114 of the Bankruptcy

Code.  The Debtors do not have retiree benefits to pay (within the meaning of section 1114 of the Bankruptcy Code).  Accordingly, the Plan meets the requirements of section 1129(a)(13) of the Bankruptcy Code.

## II.      THE PLAN MEETS THE REQUIREMENTS FOR CRAMDOWN UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE

Section 1129(b) of the Bankruptcy Code provides a mechanism (known colloquially as "cramdown") for confirmation of a plan in circumstances where the plan is not accepted by all impaired classes of claims.  Section 1129(b) provides in pertinent part:

> Notwithstanding section 510(a) of [the Bankruptcy Code], if all of the applicable requirements of [section 1129(a) of the Bankruptcy Code] other than [the requirement contained in section 1129(a)(8) that a plan must be accepted by all impaired classes] are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph *if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.*

11 U.S.C. § 1129(b)(1) (emphasis added).

Section 1129(a)(8) of the Bankruptcy Code requires that each Class of Claims or Interests either (a) has accepted the Plan, or (b) is not impaired under the Plan.  As set forth above, Class 5 is impaired and is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Accordingly, the Debtors request that the Court invoke the "cramdown" provisions of section 1129(b) of the Bankruptcy Code with respect to such Class.

Under section 1129(b), a bankruptcy court may cramdown a plan over the rejection of an impaired class or classes of claims or interests as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to the non-accepting class.  *See  In re Cajun Elec. Power Coop., Inc.*, 150 F.3d 503, 519 (5th Cir. 1998); *John Hancock Mut. Life Ins.  Co. v. Route 37 Bus. Park Assocs.*, 987 F.2d 154, 157 n.5 (3d Cir. 1993).

A.    The Plan Does not Discriminate
       Unfairly with Respect to Class 5.

Section 1129(b) of the Bankruptcy Code does not prohibit all discrimination between a

dissenting class and other classes under a plan.  To the contrary, the very premise of any chapter

11 plan with multiple impaired classes is to differentiate among such classes.  Thus, the

Bankruptcy Code permits discrimination in classification, but does not permit "unfair"

discrimination with respect to a dissenting impaired class.

Consistent with the foregoing, applicable case law provides that the prohibition against

unfair discrimination bars less favorable treatment of a dissenting class than that accorded to

another class of similarly situated claims or interests.  *See Johns-Manville Corp.*, 68 B.R. at 636

(the 'unfair discrimination' standard "ensures that a dissenting class will receive relative value

equal to the value given to all other similarly situated classes"); *In re Toy & Sports Warehouse,

Inc.*, 37 B.R. 141, 151-52 (Bankr. S.D.N.Y. 1984) ("In a nutshell, if the plan protects the legal

rights of a dissenting class in a manner consistent with the treatment of other classes whose legal

rights are intertwined with those of the dissenting class, then the plan does not discriminate

unfairly with respect to the dissenting class."); *In re Jartran, Inc.*, 44 B.R. 331, 381-84 (Bankr.

N.D. Ill. 1984) (holding that there is no unfair discrimination solely because separate classes

contain different types of claims).

With respect to the Holders of Allowed Interests in Class 5 there are no other Classes of

Claims or Interests under the Plan that are similarly situated to Class 5.  Accordingly, there is no

unfair discrimination.

B.    The Plan Is Fair and Equitable
       With Respect to Class 5.

For the Plan to be "fair and equitable" with respect to Class 5, no Holder of a Claim or

Interest junior to the Holders of Claims or Interests in such Classes may receive or retain any

property under the Plan on account of such junior Claim or Interest, as the case may be.  *See* 11

U.S.C. §§ 1129(b)(2)(B)(ii) and 1129(b)(2)(C)(ii).[10]  In addition, no Class of Claims senior to

Class 5 may receive more than the full value of its Claims or Interests under the Plan.  *See* H.R.

Rep. No. 95-595 at 414 (requirement for any cramdown is that "[n]o class may be paid more

than in full").

Here, no Holder of an Interest junior in status to Class 5 Interests is entitled to, or will

receive, any recovery under the Plan on account of their Interests because there is not sufficient

value to provide for payment in full of the Allowed General Unsecured Claims (Class 4).

Therefore, because no senior Classes are being paid more than 100% on account of their Claims,

and no Class junior to Class 5 is receiving a distribution on account of its Claims and Interests in

such Classes, the Plan is fair and equitable as to Class 5 pursuant to section 1129(b) of the

Bankruptcy Code.

C.     Section 1129(d) – The Plan's Purpose
       Is Consistent with the Bankruptcy Code

Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if

the principal purpose of the plan is to avoid taxes or the application of Section 5 of the Securities

Act of 1933.  The  Plan meets these requirements because the principal purpose of the  Plan is

not avoidance of taxes or avoidance of the requirements of Section 5 of the Securities Act of

1933, and there has been no filing by any governmental agency asserting such avoidance.

---

[10] The "fair and equitable" requirement may also be met: (a) with respect to a dissenting impaired class of unsecured claims if the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim, 11 U.S.C. § 1129(b)(2)(B)(i); and (b) with respect to a dissenting impaired class of interests, if the plan provides that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, and fixed redemption price to which such holder is entitled, or the value of such interest. 11 U.S.C. § 1129(b)(2)(C)(i).  However, such subsections need not be invoked in this instance because the Plan meets other applicable requirements of the "fair and equitable" standard.

26

III.    **THE POST-EFFECTIVE DATE PROTECTIONS AFFORDED
TO THE DEBTORS AND CERTAIN THIRD PARTIES THAT MADE
CONTRIBUTIONS TO THE CONFIRMATION PROCESS ARE
APPROPRIATE AND CONSISTENT WITH ESTABLISHED PRECEDENT**

A.    The Discharge, Injunction, Release and Exculpation Provisions Embodied
in the Plan Are Permissible and Should Be Approved.

Article X of the Plan includes customary discharge, release, exculpation, and injunction

provisions that are typically afforded to debtors, reorganized debtors and certain third parties.

These discretionary provisions are appropriate because, among other things, they are (i) integral

to the terms, conditions and settlements contained in the Plan; (ii) fair, equitable and reasonable

and in the best interests of the Debtors and their estates; (iii) the product of extensive arm's

length negotiations among sophisticated parties; and (iv) supported by fair consideration.

Furthermore, creditors support the Plan overwhelmingly and no party has objected to these

provisions of the Plan. [With limited exceptions,[11]] the releases were consented to by all Voting

Classes – the only creditors who would stand to benefit from any potential litigation among the

Debtors and the Released Parties.  Such support further justifies approval of these provisions.

The Plan's release, exculpation and injunction provisions will eliminate the costs and

risks of litigation and allow, among other things, the principals of the Reorganized Debtors to

focus entirely on operations after emergence.  The release, exculpation and injunction provisions

have been critical to obtaining the support of the Debtors' lenders and plan sponsors [and no

party has objected to them]. The Debtors submit that the release, exculpation and injunction

provisions of the Plan are necessary and appropriate under the circumstances and are not

inconsistent with the Bankruptcy Code.  As such, the requirements of section 1123(b) of the

Bankruptcy Code are satisfied.

---

[11] As set forth in the Voting Certification, the [_] voting Class 3 Claim and [_] Class 4 Claims in the aggregate
amount of $[_] (or [_]%) yes-voting claims opted out of the third-party releases.

B.      The Injunction and Discharge Provisions Set Forth in Article X
        of the Plan Comply with the Bankruptcy Code.

Section 10.05 of the Plan provides for an injunction which, in general, enjoins all Persons

that have held, currently hold, or may hold a Claim or other debt or liability that is discharged or

an Interest or other right of an equity security holder that is terminated pursuant to the Plan from

taking certain actions against the Debtors, the Reorganized Debtors or their respective property

on account of such Claims, Equity Interests or other obligations.  This injunction is necessary to

preserve and enforce the releases in the Plan and the exculpation provisions, and it is narrowly

tailored to achieve that purpose.  Accordingly, the Debtors submit that the injunction provision

should be approved.

Section 10.04 of the Plan provides for the broad discharge contemplated by section 1141

of the Bankruptcy Code, which provides, in relevant part:

> the provisions of a confirmed plan bind the debtor, any entity
> issuing securities under the plan, any entity acquiring property
> under the plan, and any creditor, equity security holder, or general
> partner in the debtor, whether or not the claim or interest of such
> creditor, equity security holder, or general partner is impaired
> under the plan and whether or not such creditor, equity security
> holder, or general partner has accepted the plan.

11 U.S.C. § 1141(a).

As evidenced by the votes accepting the Plan, the Debtors respectfully submit that the

discharge and injunction provisions contained in the Plan are reasonable and appropriate,

consistent with the Bankruptcy Code, and should be approved.

C.      The Releases by the Debtors in Section 10.06 of the Plan Are
        Fair, Reasonable, and in the Best Interests of the Estates.

Section 10.06 of the Plan provides for releases of Claims and causes of action belonging

to the Debtors, the Reorganized Debtors and their estates (the "Debtors' Releases"), as of the

3867889-3

Effective Date, by such parties against the Released Parties.[12] A debtor may release claims in a plan "if the release is a valid exercise of the Debtors' business judgment, is fair, reasonable, and in the best interests of the estate." *U.S. Bank Nat'l Assoc.* v. *Wilmington Trust Co. (In re Spansion, Inc.)*, 426 B.R. 114, 143 (Bankr. D. Del. 2010) (citing *In re DBSD North America, Inc.*, 419 B.R. 149, 217 (Bankr. S.D.N.Y. 2009)). *See also* 11 U.S.C. § 1123(b)(3)(A). In determining whether the exercise of that business judgment is valid, courts consider the "specific facts and equities of each case," typically by reference to the five factors outlined in *In re Zenith Electronics Corp.,* 241 B.R. 92 (Bankr. D. Del. 1999). *See Spansion*, 426 B.R. at 142-43 (citing *Zenith*, 241 B.R. at 110).

Those factors are: (i) an identity of interest between the debtor and non-debtor, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete the assets of the estate; (ii) a substantial contribution to the plan by the non-debtor; (iii) the necessity of the release to the reorganization; (iv) the overwhelming acceptance of the plan and release by creditors and interest holders; and (v) the payment of all or substantially all of the claims of the creditors and interest holders affected by the releases under the plan. *See Zenith,* 241 B.R. at 110; *see also In re Wash. Mut., Inc*., 442 B.R. at 348-50. This five-factor test is not a list of conjunctive requirements, nor is it an exhaustive list of considerations. *In re Master Mortgage Invest. Fund, Inc.,* 168 B.R. 903, 935 (Bankr. W.D. Mo. 1994). *See also In re Indianapolis Downs, LLC*, 486 B.R. 286, 304 (Bankr. D. Del. 2013) (approving the releases although the third and fifth *Zenith* factors were not met where the record reflects overwhelming creditor support of the plan);

---

[12] The "Released Parties" are the Debtor-Released Parties (collectively, the Debtors' directors, officers, employees, agents, members, shareholders, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons), each solely in their capacity as such, and to the extent such Persons occupied any such positions at any time on or after the Petition Date) and the Plan Sponsor, Sky Light, and each of their advisors, professionals (including any attorney's financial advisors, investment bankers and other professionals retained by such persons), affiliates and subsidiaries..

29

*Spansion*, 426 B.R. at 143, n. 47 (referring to the *Master Mortgage* factors as "helpful in weighing the equities of the particular case after a fact-specific review").

Here, each of the *Zenith* factors is satisfied. *First*, there is an identity of interest among the Debtors and their non-Debtor Released Parties arising out of the shared "common goal" of confirming the Plan and implementing the Plan.[13]  Moreover, the Debtors submit that, to the extent of any contractual indemnity such Released Parties may have against the Debtors, they share an identity of interest with the Debtors such that a claim against any of the Released Parties would be, in essence, a claim against the Debtors.  Therefore, any such claim, even if ultimately unsuccessful, would further deplete the estate's finite resources. Accordingly, the Released Parties all have an identity of interest with the Debtors.

*Second*, the Released Parties all made important contributions to these chapter 11 Cases including, among other things, negotiating and formulating the Plan and agreeing to various compromises necessary to achieve consensus regarding its terms.  In addition, each of the Released Parties has provided other specific and substantial consideration to the cases:

- The Debtors' officers, directors and employees have made extraordinary efforts on behalf of the Debtors both prior to and during the chapter 11 Cases to navigate the Debtors to this juncture. These efforts go well beyond their regular duties in operating the business, and constitute significant and meaningful contributions to the chapter 11 Cases.  In addition, the Debtors' officers and directors have agreed to remain with the Debtors after emergence from chapter 11.  In light of their institutional knowledge of the Debtors' business operations and the contemplated post-emergence structure of the Reorganized Debtors, these Released Parties are essential to the Reorganized Debtors' success and this agreement therefore constitutes a substantial contribution.[14]

---

[13] The *Zenith* Court granted the releases sought by the debtor, holding that the various released parties had an identity of interest on the basis that they were instrumental in formulating the plan of reorganization. *Zenith*, 241 B.R. at 110; *see also In re Tribune Co.*, 2011 Bankr. LEXIS 4128, at *153 (Bankr. D. Del. Oct. 21, 2011) (holding that the debtors and their secured lenders "share the common goal of confirming the [] Plan" and implementing the consummation thereof, thus giving rise to an identity of interest between those parties).

[14] *See Zenith*, 241 B.R. at 111 (officers and directors made substantial contributions by designing and implementing the operational restructuring and negotiating the financial restructuring with the party who funded the plan).

- The Debtors' key constituencies, including the Plan Sponsor and its lender, made a significant contribution to the Debtors' chapter 11 Cases by negotiating a variety of agreements in their capacity as stakeholders, providing capital and means necessary, including through lending, capital contributions, provision of DIP financing and the use of cash collateral to navigate through and emerge successfully out of chapter 11.

Without the releases, many of the Released Parties would have been unwilling to contribute to the Plan process, which would have reduced the enterprise value available for distribution to creditors and would have negatively impacted the Debtors' restructuring.

*Third*, the discharges, injunctions, releases, and exculpations are integral to the Plan as a whole, which will ultimately result in meaningful distributions to the Debtors' creditors. The threat of litigation – and any litigation that ultimately came to fruition, no matter how baseless – would be a significant distraction to the Released Parties, the result of which would be the incurrence of potentially tremendous cost, time and labor, all of which would be better spent on developing the Debtors' business post-emergence. Indeed, without the Releases, the Debtors' officers and directors would be unable to focus the appropriate attention on exercising their fiduciary duties and returning the Reorganized Debtors to a profitable and successful enterprise. Moreover, the Debtors, who have a fiduciary obligation to maximize value for their estates, have determined after reasonable inquiry that, to the best of their knowledge, information and belief, no valid claims or causes of action exist against any of the Released Parties for which releases are being granted.

*Fourth*, the Debtors' creditors overwhelmingly accepted the Plan. As set forth in the Voting Certification, the sole voting Class 2 claimant, the sole voting Class 3 claimant, and 100% by amount and over 100% by number of 100% voting Class 4 claimants voted to accept the Plan. As noted above, the Debtors' Voting Classes are the only parties that are arguably affected by the release of any underlying claims or causes of action and have accepted the Plan

31

and the Releases.  Consequently, the fourth *Zenith* factor weighs in favor of granting the

Debtors' Releases.

*Fifth*, the Plan provides for distributions on account of all or substantially all of the

Claims held by the Released Parties, including all Unclassified Claims, along with all other

Claims in Classes 1 through 4.  Furthermore, through the Plan, holders of Allowed General

Unsecured Claims will receive a meaningful distribution, which, as set forth herein, would not be

available in a liquidation.[15]

Accordingly, the Debtors believe that, under the specific facts and equities of these

chapter 11 Cases, the Debtors' Releases constitute a valid exercise of the Debtors' business

judgment and should be approved.

>    D.    The Third-Party Releases Set Forth in Section 10.06 of the Plan Are Appropriate
>          <u>and Consistent with Established Precedent and Therefore Should Be Approved.</u>

The Plan does not include non-consensual, third-party releases of Claims against the

Released Parties.  Rather, Section 10.06 of the Plan provides for consensual releases only by

those holders of Claims who (i) actually voted to accept the Plan and did not mark their ballots to

indicate a refusal to grant such releases or (ii) are presumed to have voted to accept the Plan under

section 1126(f) of the Bankruptcy Code.  Thus, the releases in Section 10.06 of the Plan do not apply

to any Person that exercised its election in accordance with Section 10.06 of the Plan to withhold

granting a release in favor of those Released Parties by checking the appropriate box on its respective

Ballot.

---

[15]  *See Zenith*, 241 B.R. at 111 (explaining that the fifth factor was met because "the Plan does provide a distribution to the creditors in exchange for the Releases" and supporting that conclusion by explaining that creditors received more under the plan than they would have in a liquidation); *see also In re Exide Techs.*, 303 B.R. 48, 74 n.37 (Bankr. D. Del. 2003) (noting that the fifth factor may be satisfied "upon presentation of a consensual plan, in the absence of objection to the release/injunction provisions, or upon a [] meaningful distribution to unsecured creditors").

Courts have held that an "affirmative agreement" from an affected creditor will render a release consensual. *See Zenith*, 241 B.R. at 111.  Although the parameters of what constitutes "affirmative agreement" are fact specific, courts have held that by simply voting in favor of a plan with non-debtor releases a creditor will be found to have affirmatively agreed to such releases.[16]

As noted above, the Plan goes one step further and provides the members of the Voting Classes with an express right to opt out of the releases. *See, e.g., Indianapolis Downs, LLC*, 486 B.R. at 305-06 ("yes" votes deemed consensual where creditors had opportunity with detailed instructions to opt-out).  Indeed, the release in Section 10.06 of the Plan does not apply to those creditors that received a Ballot if they elected, in accordance with Section 10.06 of the Plan, to withhold granting a release in favor of those Released Parties.  By checking the appropriate box, which 21 creditors did in fact check in these Cases, such creditor is deemed to preserve whatever direct (and therefore, non-derivative) claims it may have against the non-debtor third parties under applicable law.  With respect to those creditors that received a Ballot and did not exercise the option to preserve any direct claims they may have against third parties, the releases are consensual.  *See*, *e.g.*, *id. at* 306; *In re Monroe Well Service, Inc*., 80 B.R. 324, 334-35 (Bankr. E.D. Pa. 1987) (noting that releases were consensual when creditors had the option of granting them).

---

[16] *See Spansion,* 426 B.R. at 144 ("a third party release may be included in a plan if the release is consensual and binds only those creditors voting in favor of the plan") (citation omitted); *In re Coram Healthcare Corp.*, 315 B.R. 321, 336 (Bankr. D. Del. 2004) ("to the extent creditors or shareholders voted in favor of the Trustee's Plan, which provides for the release of claims they may have against Noteholders, they are bound by that"); *Zenith*, 241 B.R. at 111 (approving non-debtor releases for creditors that voted in favor of plan); *In re West Coast Video Enter., Inc.*, 174 B.R. 906, 911 (Bankr. E.D. Pa. 1994) (stating that "each creditor bound by the terms of the release must individually affirm same, either with a vote in favor of a plan including such a provision or otherwise") (citation omitted).

With respect to holders of Claims who are presumed to have voted to accept the Plan under section 1126(f) of the Bankruptcy Code, such holders are receiving payment in full on account of their Claims as consideration for granting a release in favor of the Released Parties. *See Spansion*, 426 B.R. at 145 ("The unimpaired classes are being paid in full and have received adequate consideration for the release."). Accordingly, the Debtors submit that the third-party releases in Section 10.06 of the Plan should be approved.

      E.      The Exculpation Provision Set Forth in Section 10.07 of the Plan Are Appropriate and Consistent with Established Precedent and Therefore Should Be Approved.

It is well established in the Third Circuit that exculpation is appropriate for fiduciaries in a bankruptcy case, including the debtors' officers, directors, employees and professionals and a creditors' committee, its members and advisors. *In re PWS Holding Corp.*, 228 F.3d 224, 245-47 (3d Cir. 2000). As a result, the exculpation provision set forth in Section 10.07 of the Plan is appropriate with respect to those Released Parties serving as officers, directors and employees of the Debtors and members of the Creditors' Committee, as well as the Debtors' and Creditors' Committee's respective professionals.

      F.      Request for Authority to Consummate and Implement the Plan Immediately Upon the Entry of the Confirmation Order Notwithstanding 14-day Stay of the Confirmation Order Imposed by Operation of Bankruptcy Rule 3020(E)

The Debtors respectfully request that this Court direct that the Confirmation Order shall be effective immediately upon its entry notwithstanding the 14-day stay imposed by operation of Bankruptcy Rule 3020(e). Bankruptcy Rule 3029(e) provides that: "An order confirming a plan is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 3020(e). As such, and as the Advisory Committee notes to Rule 3020(e) states, "the court may, in its discretion, order that Rule 3020(e) is not applicable so that the plan may be implemented and distributions may be made immediately" Id. (emphasis added).

Under the circumstances of the Reorganization Cases,  it is appropriate for the court to exercise its discretion to order that Bankruptcy Rule 3020(e) is not applicable and permit the Debtors to consummate the Plan and commence its implementation without delay after the entry of the Confirmation Code.  As explained above, the RSA contemplates an expeditious chapter 11 process and requires that the Effective Date occur within 110 days of the Petition Date (i.e. by April 19, 2016). Waiver of the 14-day stay of the Confirmation Order will permit the Debtor to proceed expeditiously toward emergence, in compliance with the RSA, and will also reduce the administrative and professional costs to be incurred in connection with these cases prior to emergence.  The Debtors submit that this relief is in the best interests of the Debtors' estates and creditors and will not prejudice any parties in interest.

According to the Advisory Committee notes to the 1999 amendments to the Bankruptcy Rules, the purpose of Bankruptcy Rule 3020(e) is to permit a party in interest to request a stay of the confirmation order pending appeal before the plan is implemented and an appeal becomes moot.  FRBP 3020(e), Adv. Comm. Notes, 1999 Amend.  The Debtors have resolved or expect to resolve all obligations prior to the confirmation hearing.  As a result, the Debtors do not anticipate that any party will be appealing the Confirmation Order.  Therefore, no party in interest will be prejudiced by the consummation of the Plan immediately upon the entry of the conformation Order.

The Debtors, therefore, respectfully request that the Court direct that the Confirmation Order be effective immediately upon its entry notwithstanding the say otherwise imposed pursuant to Rule 3020(e).

## <u>CONCLUSION</u>

The Plan complies with all applicable provisions of the Bankruptcy Code, including those provisions of section 1129(a) and 1129(b).  Moreover, the post-Effective Date provisions of the

Plan, including, without limitation, the Plan Releases and Exculpation Provision, are consistent

with applicable law and essential to the Debtors' successful emergence from chapter 11.  For all

of the foregoing reasons, the Plan should be confirmed.

Dated:  October 26, 2016
       Wilmington, Delaware                A. M. SACCULLO LEGAL, LLC

                                     /s/ Anthony M. Saccullo
                                     Anthony M. Saccullo (Bar No. 4141)
                                     Thomas H. Kovach (Bar No. 3964)
                                     27 Crimson King Drive
                                     Bear, Delaware 19701
                                     (302) 836-8877
                                     (302) 836-8787 (facsimile)
                                     ams@saccullolegal.com
                                     kovach@saccullolegal.com

                                     and

                                     Michael S. Fox, Esquire
                                     Jonathan T. Koevary, Esquire
                                     Olshan Frome Wolosky LLP
                                     1325 Avenue of the Americas
                                     New York, New York 10019
                                     Telephone:  (212) 451-2300
                                     Facsimile:  (212) 451-2222

                                     *Counsel to the Debtors and Debtors-in-Possession*